VICTOR M. SHER (SBN 96197)
vic@sheredling.com
MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
MARTIN D. QUIÑONES (SBN 293318)
marty@sheredling.com
**SHER EDLING LLP**
100 Montgomery St., Suite 1410
San Francisco, CA 94104
Tel:   (628) 231-2500
Fax:   (628) 231-2929

*Attorneys for Plaintiffs ALISU INVESTMENTS, LTD,*
*and KARGO GROUP GP, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALISU INVESTMENTS, LTD. and KARGO GROUP GP, LLC,<br><br>            Plaintiffs,<br><br>      v.<br><br>TRIMAS CORPORATION d/b/a/ NI INDUSTRIES, INC., BRADFORD WHITE CORPORATION, LUPPE RIDGWAY LUPPEN, PAULA BUSCH LUPPEN, METAL PRODUCTS ENGINEERING, DEUTSCH/SDL, LTD., RHEEM MANUFACTURING COMPANY, and INFINITY HOLDINGS, LLC,<br><br>            Defendants.<br><br>AND ALL COUNTERCLAIMS | Case No. 2:16-CV-00686 MWF (PJWx)<br><br>Honorable Michael W. Fitzgerald<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS METAL PRODUCTS ENGINEEARING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date: February 26, 2018<br>Time: 10:00 AM<br><br>Jury Trial: August 13, 2019 |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  RELEVANT FACTUAL ALLEGATIONS .......................................................... 1

III. LEGAL BACKGROUND ................................................................................... 2

IV. ARGUMENT ...................................................................................................... 4

    **A.**   **Plaintiffs' CERCLA Claims Satisfy the Requirements of Rule 8(a)(2).** ................................................................................................. 4

        1.  The Complaint Sufficiently Alleges That a Release of PCE on 3050 Leonis Blvd. Led to the Contamination of Plaintiffs' Property. ........... 4

        2.  The Complaint Sufficiently Alleges Necessary Costs, Consistent with the National Contingency Plan. ........................................................ 8

        3.  The Complaint Alleges Defendants Are Potentially Responsible Parties Under CERCLA. ................................................................... 12

    **B.**   **Plaintiffs Allege a "Release" to Support Their Claim Under Cal. Health & Safety Code § 25363.** ........................................................ 15

    **C.**   **Defendants' Remaining Attacks on the Complaint Have No Foundation.** .................................................................................... 16

        1.  Defendants Misstate the Law for Implied Equitable Indemnity. ......... 16

        2.  Defendants' Liability for Private Nuisance Is Well Pled. ..................... 18

        3.  Plaintiffs Allege a "Disposal" Supporting a Continuing Trespass Claim. ................................................................................................. 19

        4.  Plaintiffs' Allegations Demonstrate Defendants' Negligence. ............. 19

        5.  The Complaint Establishes a Live Controversy Sufficient to Support Declaratory Relief. ................................................................ 20

V.   CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Am. Motorcycle Assn. v. Superior Court*,
20 Cal. 3d 578 (1978) ........................................................................ 17

*Arkema Inc. v. Anderson Roofing Co.*,
719 F. Supp. 2d 1318 (D. Or. 2010) ........................................................ 6

*Ascon Properties, Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ............................................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................... 3, 4, 7, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. passim

*California River Watch v. Fluor Corp.*,
No. 10-CV-05105-WHO, 2014 WL 6679890 (N.D. Cal. Nov. 25, 2014) .......... 21

*Californians for Native Salmon etc. Assn. v. Dep't of Forestry*,
221 Cal. App. 3d 1419 (1990) ............................................................. 21

*Carson Harbor Vill. v. Cty. of Los Angeles*,
433 F.3d 1260 (9th Cir. 2006) .............................................................. 8

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
270 F.3d 863 (9th Cir. 2001) ............................................... 4, 8, 10, 12

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
287 F. Supp. 2d 1118 (C.D. Cal. 2003) *aff'd sub nom. Carson Harbor Vill., Ltd. v. Unocal Corp.*, 433 F.3d 1260 (9th Cir. 2006) ................................ 9

*Chubb Custom Ins. Co. ex rel. Taube-Koret Campus for Jewish Life v. Space Sys./Loral, Inc.*,
No. 5:09-CV-04485 JF PVT, 2010 WL 5069827 (N.D. Cal. Dec. 7, 2010) ....... 11

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
710 F.3d 946 (9th Cir. 2013) ........................................................ 11, 12

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
No. C 09-4485 JF (PVT), 2010 WL 689940 (N.D. Cal. Feb. 23, 2010) ....... 3, 5, 7

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
No. C 09-4485 JF (PVT), 2010 WL 2573386 (N.D. Cal. June 23, 2010) ............ 7

*City of Colton v. Am. Promotional Events, Inc.-W.*,
614 F.3d 998 (9th Cir. 2010) ........................................................ 4, 7, 9

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004) ......................................................................... 10

*Coppola v. Smith*,
  935 F. Supp. 2d 993 (E.D. Cal. 2013) ............................................................ 6, 13

*Coppola v. Smith*,
  982 F. Supp. 2d 1133 (E.D. Cal. 2013) ................................................................ 3

*DeSoto v. Yellow Freight Sys., Inc.*,
  957 F.2d 655 (9th Cir. 1992) ............................................................................ 21

*Downey Venture v. LMI Insurance Co.*,
  66 Cal. App. 4th 478 (1998) ............................................................................. 18

*Foman v. Davis*,
  371 U.S. 178 (1962) .......................................................................................... 21

*Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.*,
  No. CIV. 08-2151 (JAF), 2010 WL 682542 (D.P.R. Feb. 22, 2010) ................. 12

*Greyhound Lines, Inc. v. Viad Corp.*,
  No. 2:13-CV-2305-HRH, 2014 WL 4208403 (D. Ariz. Aug. 26, 2014) .............. 9

*Harwood Inv. Co. v. Wells Fargo Bank, Nat. Ass'n.*,
  No. C-09-3410 EMC, 2009 WL 4251650 (N.D. Cal. Nov. 24, 2009) ............... 11

*HCC Life Ins. Co. v. Managed Ben. Adm'rs LLC*,
  No. 207-CV-02542-MCE-DAD, 2008 WL 2439665 (E.D. Cal. June 12, 2008) 17

*Kantor v. Housing Authority*,
  8 Cal. App. 4th 424 (1992) ............................................................................... 18

*Kotrous v. Goss-Jewett Co. of N. Cal.*,
  523 F.3d 924 (9th Cir. 2008) ............................................................................ 10

*Mangini v. Aerojet-Gen. Corp.*,
  230 Cal. App. 3d 1125 (1991) ..................................................................... 19, 20

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ............................................................................ 3

*NL Indus., Inc. v. Kaplan*,
  792 F.2d 896 (9th Cir. 1986) ............................................................................ 10

*Orange Cty. Water Dist. v. Sabic Innovative Plastics US, LLC*,
  14 Cal. App. 5th 343 (2017), *as modified on denial of reh'g* (Aug. 25,
  2017), *review denied* (Nov. 15, 2017) ......................................................... 15, 16

*Pentair Thermal Mgmt., LLC v. Rowe Indus., Inc.*,
  No. 06-CV-07164 NC, 2013 WL 1320422 (N.D. Cal. Mar. 31, 2013) ............... 9

*People ex rel. Department of Public Works v. Daly City Scavenger Co.*,
  19 Cal. App. 3d 277 (1971) .............................................................................. 17

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;**
**CASE NO. 2:16-CV-00686 MWF (PJWX)**

iii

*Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*,
   39 F. Supp. 3d 1059 (D. Ariz. 2014) ................................................................. 3

*Stonegate Homeowners Ass'n v. Staben*,
   144 Cal. App. 4th 740 (2006) ........................................................................... 17

*United Alloys, Inc. v. Baker*,
   797 F. Supp. 2d 974 (C.D. Cal. 2011) ........................................................... 8, 9

*United States v. Atl. Research Corp.*,
   551 U.S. 128 (2007) ......................................................................................... 10

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ........................................................................................... 14

*United States v. Washington State Dep't of Transp.*,
   665 F. Supp. 2d 1233 (W.D. Wash. 2009) ...................................................... 13

*Zadrozny v. Bank of New York Mellon*,
   720 F.3d 1163 (9th Cir. 2013) ........................................................................... 3

## Statutes

41 U.S.C. § 9607(a)(4)(B) ....................................................................................... 8

42 U.S.C. § 9601(14), (23), (25) .............................................................................. 8

42 U.S.C. § 9606 ................................................................................................... 10

42 U.S.C. § 9607 .............................................................................................. 3, 12

42 U.S.C. § 9607(a) ................................................................................... 4, 10, 12

42 U.S.C. § 9607(a)(1) ........................................................................................... 15

42 U.S.C. § 9607(a)(2) ........................................................................................... 15

42 U.S.C. § 9607(a)(4) ......................................................................................... 4, 7

42 U.S.C. § 9607(n)(1) ........................................................................................... 15

42 U.S.C. §§ 9601(9) ............................................................................................... 4

Cal. Civ. Code § 1714(a) ....................................................................................... 20

Cal. Civ. Code § 3479 ........................................................................................... 18

Cal. Health & Safety Code § 25363 ...................................................................... 15

Cal. Ins. Code § 533 .............................................................................................. 18

## **Federal Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 3

Fed. R. Civ. P. 15(a) ........................................................................................ 21

Fed. R. Civ. P. 8(a) & 12(b)(6) ...................................................................... 1, 2

Fed. R. Civ. P.  8(a)(2) ................................................................................ 2, 4, 5

## **Regulations**

40 C.F.R. § 300.700(c)(3)(i) ............................................................................ 9

40 C.F.R. § 302.4 ............................................................................................. 9

## **Other Authorities**

Judicial Council of California Civil Jury Instruction 3800 ..................................... 16

Restatement (Second) of Torts § 161 (1965) ........................................................ 19

## I.  INTRODUCTION

Plaintiffs Alisu Investments, Ltd. and Kargo Group GP, LLC ("Plaintiffs"), hereby oppose the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion" or "Mot.") filed by Defendants Metal Products Engineering, Luppe Ridgway Luppen, and Paula Luppen ("Defendants"). Doc. 141 (Jan. 26, 2018). Defendants' Motion primarily argues, incorrectly, that the allegations in Plaintiffs' Fourth Amended Complaint ("Complaint" or "Compl.") are conclusory and speculative, and that Plaintiffs must make "detailed allegations" about precisely how and when hazardous chemicals were discharged onto Defendants' property, and how precisely those chemicals migrated through the groundwater onto Plaintiffs' property, among other supposed deficiencies. *See* Mot. at 1, 4–8. Defendants are incorrect that CERCLA imposes a "heightened standard for pleading," however, Mot. at 1, and under the normal standards applicable under Fed. R. Civ. P. 8(a) & 12(b)(6), Plaintiffs have adequately pled all the elements of their CERCLA claims, as well as their state law causes of action.

## II.  RELEVANT FACTUAL ALLEGATIONS

Plaintiffs are the owners of real property totaling 3.65 acres located at the street address of 4901 S. Boyle Avenue., Vernon, California. Compl. ¶ 1. Defendants Luppe Ridgway Luppen and Paula Busch Luppen are co-trustees of the Luppe and Paula Luppen Living Trust, and as co-trustees are the owners of adjacent real property located at the street address 3050 Leonis Blvd. *Id.* ¶ 4. Defendant Metal Products Engineering has operated at 3050 Leonis Blvd. since 1986. *Id.* ¶¶ 5, 20. The property at 3050 Leonis Blvd. is a "Neighboring Propert[y]" that sits in "close proximity" to 4901 S. Boyle Avenue. *Id.* ¶¶ 19, 21.

Defendant Metal Products Engineering purchased the real property located at 3050 Leonis Blvd., and granted it two years later to its founder, Defendant Luppe Luppen. *Id.* ¶ 20. Since 1986, industrial activities at the property have included metal stamping. *Id.* Metal stamping operations in turn include a cleaning step that employs

degreasing with chlorinated solvents, including in particular tetrachloroethylene ("PCE"). *Id.* Here, for example, EPA records show that Defendant Metals Products Engineering manifested approximately 176 gallons of PCE from 1999–2001. *Id.* In 2015, Plaintiffs discovered that the indoor air, soil, and subsurface at the 4901 S. Boyle Avenue property was contaminated with hazardous chemicals including PCE, at concentrations above screening levels developed by the California Department of Toxic Substances Control and EPA for commercial-industrial land use. *Id.* ¶ 18. Testing further showed that PCE and concentrations in the ground water at the property exceeded EPA's established Maximum Contaminant Levels for drinking water. *Id.*

Plaintiffs allege that PCE used in the metal stamping operations have been discharged into the soil and groundwater at 3050 Leonis Blvd., and have migrated to Plaintiffs' property at 4901 S. Boyle Avenue following the flow of groundwater, causing the contamination found in the groundwater, soil, and soil vapor there. *Id.* ¶ 21. Plaintiffs further allege that they have incurred significant costs to conduct environmental investigation and remediation activities at 4901 S. Boyle Avenue related to that PCE contamination, which are still ongoing, and that they will be required to incur additional costs in the future, including the costs of demolition and redevelopment. *Id.* ¶ 29.

## III.   LEGAL BACKGROUND

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under Rule 8(a), the plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1964 (internal citation and quotation marks omitted).

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Supreme Court held in *Ashcroft v. Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 555). In turn, a court applying those standards must "accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013) (citation omitted).

The Ninth Circuit does not impose any "heightened" pleading standard for cost recovery claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and courts apply the normal rules under *Twombly* and *Iqbal* to assess motions to dismiss. *See, e.g.*, *Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 39 F. Supp. 3d 1059, 1065 (D. Ariz. 2014) (describing and applying plausibility standard to a CERCLA cost recovery action, noting that a "[c]omplaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss"); *Coppola v. Smith*, 982 F. Supp. 2d 1133, 1136 (E.D. Cal. 2013) (same). The cases Defendants cite likewise hold that "*Iqbal* provides the correct framework for analyzing the sufficiency of a civil complaint" under CERCLA. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, No. C 09-4485 JF (PVT), 2010 WL 689940, at *4 (N.D. Cal. Feb. 23, 2010) ("*Chubb I*").

## IV.   ARGUMENT

### A.   Plaintiffs' CERCLA Claims Satisfy the Requirements of Rule 8(a)(2).

To state a claim under CERCLA, a private party must allege "that (1) the site on which the hazardous substances are contained is a 'facility' under CERCLA's definition of that term, . . . ; (2) a 'release' or "threatened release' of any 'hazardous substance" from the facility has occurred . . . ; (3) such 'release' or "threatened release" has caused the plaintiff to incur response costs that were 'necessary' and 'consistent with the national contingency plan,' . . . ; and (4) the defendant is within one of four classes of persons subject to the liability provisions of"  42 U.S.C. § 9607(a). *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001) (en banc) (citing 42 U.S.C. §§ 9601(9), 9607(a)(4)–(a)(4)(B)). Defendants assert that the Complaint fails to adequately allege the second, third, and fourth elements. Mot. at 4–8. All of Defendants arguments insist on a level of particularity that is not required by either CERCLA or the Federal Rules, and therefore fail.

### 1.   The Complaint Sufficiently Alleges That a Release of PCE on 3050 Leonis Blvd. Led to the Contamination of Plaintiffs' Property.

Plaintiffs' Complaint alleges sufficient facts that, read together, plausibly assert that PCE released on Defendants' property has contaminated Plaintiffs' property. The second element of a *prima facia* CERCLA claim is that "a 'release' or 'threatened release' of any 'hazardous substance'" from the facility has occurred. *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1002 (9th Cir. 2010) (quoting 42 U.S.C. § 9607(a)(4)). In *Iqbal*, the Supreme Court set forth a two-pronged approach for determining whether a Complaint complies with Rule 8(a)(2) for the purposes of surviving a motion to dismiss. 556 U.S. at 678–79. Under this test, a court discounts allegations that are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," then, "examines the remaining allegations to determine whether they 'state a plausible claim for relief'

with the understanding that such allegations are accepted as being true and any reasonable inferences that arise therefrom are to accorded in the pleader's favor." *Chubb I*, 2010 WL 689940, at *3.

The Complaint provides factual allegations sufficient to establish plausibility under *Twombly* and *Iqbal*. It states:

> 20. Since 1986, industrial activities at the property have included metal stamping. Metal stamping includes a cleaning step which employs degreasing with chlorinated solvents, including PCE. EPA records that show Defendant Metals Products Engineering manifested approximately 176 gallons of PCE from 1999–2001. PCE used in these operations have been discharged into the soil and groundwater and impacted the Property.

> 21. The close proximity to the Property and direction of groundwater flow has led to PCE, originally discharged into the soil and groundwater at 3050 Leonis Blvd., to impact both groundwater and soil vapor at the Property.

Compl. ¶¶ 20–21. These paragraphs, taken as true, establish that PCE was discharged into the soil of 3050 Leonis Blvd. as a result of onsite industrial activities including metal stamping, and that the PCE migrated to Plaintiffs' property from the 3050 Leonis address through groundwater flow. Plaintiffs allege that 3050 Leonis Blvd. and Plaintiffs' property are "Neighboring Properties." *Id.* ¶ 19. These facts, taken together and drawing all inferences in Plaintiffs' favor, sufficiently allege that PCE discharged at 3050 Leonis Blvd. flowed through the groundwater and contaminated Plaintiffs' property. Those allegations in turn "state a plausible claim for relief" under CERCLA, satisfying Rule 8(a)(2).

No case—including those that Defendants cite—demands the level of specificity Defendants argue is required under Rule 8(a)(2). Defendants cite *Chubb I* for the proposition that a plaintiff must allege "the particular manner in which a release . . . of hazardous substance had occurred in order to establish a prima facie case under CERCLA." 2010 WL 689940, at *3. *Chubb I* stands for no such rule, and instead merely applied the general standard expressed by the Supreme Court in

*Iqbal*. In *Chubb I*, the plaintiff brought a CERCLA action against defendant Chevron, which it alleged owned and/or operated a gas station near its property. *Id.* at 1. In a motion to dismiss, Chevron argued that the complaint did not satisfy *Iqbal* and *Twombly* because it contained "mere legal conclusions," and did not allege any facts as to "where, when or how any of the alleged substances were released from the gasoline service station." *Id.* at 3. The plaintiff responded that under *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1153 (9th Cir. 1989), "a plaintiff need ***not*** allege the particular manner in which a release or threatened release of hazardous substance had occurred in order to establish a prima facie case under CERCLA." *Id.* at *3 (emphasis added). The Northern District did not hold that *Ascon Properties* was no longer good law, let alone turn the rule under *Ascon Properties* on its head and require pleading with particularity, as Defendants suggest. The court found that the complaint did not satisfy *Iqbal* because it did not allege "*any* facts that could support an inference connecting the gas station . . . to the clean-up on the parcel [the plaintiff's insured] currently owns." *Id.* (emphasis added).

The *Iqbal* test is consistent with the Ninth Circuit's earlier holding in *Ascon Properties*, that a CERCLA plaintiff "need not allege the particular manner in which a release or threatened release of hazardous substance had occurred." 866 F.2d at 1153. Indeed, after *Iqbal*, courts have continued to cite *Ascon Properties* for precisely that rule, and have denied motions to dismiss relying on the same theory Defendants assert here. *See e.g. Arkema Inc. v. Anderson Roofing Co.*, 719 F. Supp. 2d 1318, 1332 (D. Or. 2010) (citing *Ascon Properties* and denying motion to dismiss where complaint specified the general location of the alleged release, "identifie[d] the kinds of waste involved and indicate[d] that the wastes ha[d] been found in sediments at the site"); *see also Coppola v. Smith*, 935 F. Supp. 2d 993, 1007 (E.D. Cal. 2013) ("A plaintiff need not allege the particular manner in which a 'release' or 'threatened release' has occurred.").

The Complaint does not suffer from the kinds of deficiencies that were fatal in *Chubb I* and *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc*., No. C 09-4485 JF (PVT), 2010 WL 2573386 (N.D. Cal. June 23, 2010) ("*Chubb II*"). In *Chubb I*, the complaint merely alleged that Chevron owned and/or operated a gas station near the site at issue without providing any plausible explanation that the hazardous substance at issue was discharged or contaminated the plaintiff's property. *Id.* at 3–4. In *Chubb II* the plaintiff's amended complaint still failed to allege that the contamination migrated beyond Chevron's facility to Plaintiff's property, only alleging that the hazardous substances were observed emanating from the service station. *Id.* at 10. Unlike *Chubb I* and *Chubb II*, the Complaint alleges that Defendants at various times owned and operated the property; that the properties are neighboring; that Defendants engaged in activities that led to the discharge of PCE, and/or owned the property while those activities were occurring; and that the direction of groundwater flow caused the discharge to flow onto Plaintiffs' property. Compl. ¶¶ 19-21. These factual allegations are not mere legal conclusions, and "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Plaintiffs need not allege that Defendants themselves discharged the PCE as Defendants suggest, Mot. at 5, but only (1) that a "release" or "threatened release" of a "hazardous substance" from a "facility" occurred, and (2) that the defendant is a current owner or operator or was an owner or operator at the time of disposal. *See City of Colton*, 614 F.3d at 1002 (quoting 42 U.S.C. § 9607(a)(4)). Each of these elements has been plausibly alleged. *See discussion supra* at 5:6–24; *infra* Section IV.A.3. Nor is there any need for Plaintiffs to specifically allege whether the properties overlie the same aquifer or allege that the properties are upgradient or downgradient of one another, when those facts can be reasonably inferred from the allegations in the Complaint. The Complaint alleges that the "direction of groundwater flow has led to PCE, originally discharged into the soil and groundwater at 3050 Leonis Blvd., to impact both groundwater and soil vapor at the

Property." Compl. ¶ 21. The paragraph's reference to the direction of groundwater flow "allows the court to draw the reasonable inference" that Defendants' property is upgradient from Plaintiffs', and that PCE flowed from Defendants' property onto Plaintiffs', following the groundwater. *See Twombly*, 550 U.S. at 555.

### 2. The Complaint Sufficiently Alleges Necessary Costs, Consistent with the National Contingency Plan.

A CERCLA plaintiff must allege in pertinent part that the release or threatened release for which the defendant is responsible has caused the plaintiff to incur response costs that are "necessary" and "consistent with the national contingency plan." *Carson Harbor Vill. v. Cty. of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006); 41 U.S.C. § 9607(a)(4)(B). The term "response" means removal and remedial actions, including enforcement activities related to such actions. 42 U.S.C. § 9601(25). The terms "remove" or "removal," in turn, include actions that are necessary to monitor, assess, and evaluate the release of hazardous substances. 42 U.S.C. § 9601(23). A private party's response action is considered "necessary" when "an actual and real threat to human health or the environment exist before initiating a response action." *Carson Harbor Village, Ltd.*, 270 F.3d at 871. Courts in this circuit have expressly held that costs related to PCE and TCE contamination including "investigations, installing and monitoring soil borings and wells, extracting soil, soil vapor, and groundwater samples, and paying consultant fees" are necessary under *Carson Harbor Village* "because PCE and TCE, which are listed as hazardous substances under CERCLA, pose an actual and real threat to public health and the environment." *United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 996 (C.D. Cal. 2011) (citing 42 U.S.C. § 9601(14) (defining "hazardous substance"); 40 C.F.R. § 302.4 (designating TCE and PCE as hazardous substances)).

"Response costs are considered consistent with the NCP 'if the action, when evaluated as a whole, is in substantial compliance' with it." *City of Colton*, 614 F.3d at 1003 (quoting 40 C.F.R. § 300.700(c)(3)(i)). The "as a whole" and "substantial

compliance" language was added to the NCP in 1990, "to create a more flexible standard in order to encourage private parties to clean up hazardous sites without fear of failing to meet all of the NCP criteria." *Pentair Thermal Mgmt., LLC v. Rowe Indus., Inc.*, No. 06-CV-07164 NC, 2013 WL 1320422, at *17 (N.D. Cal. Mar. 31, 2013). "Evaluating a remedial action as a whole reflects CERCLA's preference for a holistic rather than 'a checklist approach,' because the latter could 'defeat cost recovery for meritorious cleanup actions based on a mere technical failure by the private party.'" *Id.* (quoting *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1160 (C.D. Cal. 2003) *aff'd sub nom. Carson Harbor Village*, 433 F.3d 1260). Courts in this district have again held that costs "essential to assessing, evaluating, monitoring, and identifying a remedy for the release of PCE and TCE" are "likewise consistent with the NCP." *United Alloys, Inc.*, 797 F. Supp. 2d at 996.

Plaintiffs allege that they have discovered "PCE and TCE above screening levels developed by the Department of Toxic Substances Control (DTSC) and EPA for commercial-industrial land use" in the Property's "indoor air, soil and subsurface," and has discovered likewise "PCE and TCE concentrations in the ground water at the Property exceeded the Maximum Contaminant Levels (MCLs) established for drinking water." Compl. ¶ 18. Plaintiffs have further alleged that they have incurred costs for "environmental investigation and remediation" at the Property, which is still ongoing, due to the PCE and TCE contamination. *Id.* ¶ 29. Those allegations are sufficient to satisfy Plaintiff's pleading burden under *Iqbal* and *Carson Harbor Village. See, e.g., Greyhound Lines, Inc. v. Viad Corp.*, No. 2:13-CV-2305-HRH, 2014 WL 4208403, at *5 (D. Ariz. Aug. 26, 2014) (denying motion to dismiss and finding plaintiff's allegations that it incurred costs including "investigation, removal and/or remedial actions" related to arsenic, chromium, and hazardous chemicals, "read together, create a reasonable inference that plaintiff has incurred necessary costs and that it has complied with CERCLA when remediating" those contaminants).

Defendants' implied argument that a plaintiff must allege "agency oversight" to state a CERCLA claim, Mot. at 5–6, is not supported by the statute or binding Ninth Circuit authority. The Ninth Circuit has squarely held the opposite:

> In determining whether response costs are "necessary," we focus not on whether a party has a business or other motive in cleaning up the property, but on whether there is a threat to human health or the environment and whether the response action is addressed to that threat. . . . . The issue is not why the landowner decided to undertake the cleanup, but whether it was necessary. To hold otherwise would result in a disincentive for cleanup.
>
> **Nor must a plaintiff show agency action as a prerequisite to cost recovery. Agency inaction is not dispositive of the question whether contamination presents an environmental risk worthy of response**. . . . Whether the [Regional Water Quality Control Board] would have ordered remediation is not a definitive determination of whether there is a health or environmental risk.

*Carson Harbor Village, Ltd.*, 270 F.3d at 872 (emphasis added); *see also NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) (holding that response costs can be "necessary" even though the agency that required cleanup never approved the response actions taken). To the contrary, a party "that incurs costs voluntarily, without having been subject to an action under [42 U.S.C. § 9606 or § 9607], may bring a suit for recovery of its costs" under § 9607(a). *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 933 (9th Cir. 2008) (citing *United States v. Atl. Research Corp.*, 551 U.S. 128, 140–41 (2007)) *see also Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161 (2004) ("Various courts [have] held that § [9607](a)(4)(B) and its predecessors authorized such a cause of action." (collecting cases)).

Defendants' cited cases do not support their position. In *Harwood Inv. Co. v. Wells Fargo Bank, Nat. Ass'n.*, No. C-09-3410 EMC, 2009 WL 4251650, at *2 (N.D. Cal. Nov. 24, 2009), the court granted the defendant's motion to dismiss not because the plaintiffs' complaint was insufficient under CERCLA's statutory scheme, but because the plaintiffs' "wholly conclusory allegations of injury" were so indefinite

that they failed to sufficiently allege standing under Article III of the Constitution. While the plaintiffs' CERCLA complaint alleged that they incurred CERCLA-related costs, it contained "no allegation that Plaintiffs are neighbors, prior owners, or in the chain of title, and the allegations that they have a possessory interest appear contradictory"; the complaint "fail[ed] to explain any interest that Plaintiffs may have in the property," and therefore did not meet the Constitutional minimum to plead any cause of action. *See id.* at *1–2. The reasoning and facts bear no resemblance to this case.

*Chubb Custom Ins. Co. ex rel. Taube-Koret Campus for Jewish Life v. Space Sys./Loral, Inc.*, No. 5:09-CV-04485 JF PVT, 2010 WL 5069827, at *5 (N.D. Cal. Dec. 7, 2010) ("*Chubb III*"), the plaintiff insurer and subrogee apparently argued that money it paid to its insured was necessary and consistent with the NCP because the proceeds were used to implement a risk management plan that was required by the regional water quality control board. The court held that that allegation was sufficient with respect to one property that was directly subject to a regional water quality control board order, but insufficient with respect to a different property that was not subject to the same order. *Id.* at *5–*6. On appeal, however, the Ninth Circuit reiterated that "[r]esponse costs are deemed 'necessary' when 'an actual and real threat to human health or the environment exist[s],'" and did not adopt the lower court's reasoning with respect to the necessity of agency involvement.  of agency involvement. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 961 (9th Cir. 2013).[1] The court instead affirmed dismissal of the plaintiff's claims because § 9607(a) does not create a subrogation action in insurers, which must instead be pled under other CERCLA provisions with different requirements. *See id.*

---

[1] Even absent the Ninth Circuit's express statement in the *Chubb* case, to the extent *Chubb III* purports to hold that state or federal agency involvement is a prerequisite to stating a claim under CERCLA, it directly conflicts with the Ninth Circuit's holding in *Carson Harbor Village*, that a plaintiff need not "show agency action as a prerequisite to cost recovery," 270 F.3d at 872, and was to that degree wrongly decided.

at 962 (an insurer cannot state a subrogation claim under § 9607 because "an insurer that is only obligated to reimburse the insured for cleanup costs does not itself incur response costs" within the meaning of the statute).

Lastly, *Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.*, No. CIV. 08-2151 (JAF), 2010 WL 682542, at *4 (D.P.R. Feb. 22, 2010), is inapposite. The counterclaiming defendant there alleged, unadorned, that it had "incurred necessary costs of response consistent with the [NCP] to address the release or disposal of hazardous substances," which the court found "conclusory with respect to the manner in which such measure conforms with the NCP, because we have no details from which to infer Defendant's compliance with CERCLA." *Id.* at *4. Here, in contrast, Plaintiffs have incurred costs to investigate and remediate PCE and TCE contamination in the soil and groundwater underneath the Property.

### 3.     The Complaint Alleges Defendants Are Potentially Responsible Parties Under CERCLA.

CERCLA identifies four classes of persons subject to its liability provisions, called "potentially responsible parties" or "PRPs": (1) a current owner or operator; (2) a past owner or operator at the time of the disposal; (3) a person who "arranged for disposal"; or (4) a transporter.  42 U.S.C. § 9607(a); *Carson Harbor Village, Ltd.*, 270 F.3d at 871. The Complaint alleges that Defendant Metal Products is a former owner and current operator and that Defendants Luppe and Paula Luppen are current owners of the property as co-trustees of the Luppen Living Trust. Compl. ¶¶ 5, 20. Thus, the Complaint establishes that moving defendants are PRPs under CERCLA.

**Defendant Metal Products.** The Complaint alleges Defendant Metal Products owned the 3050 Leonis Blvd. from 1986 to 1988, and has operated the property from 1986 to present. Compl. ¶¶ 5, 20. Defendants argue that the Complaint fails to allege that any degreasing involving PCE, or any other source of discharge, occurred between 1986–1988 on 3050 Leonis Blvd. *See* Mot. at 6. This is false. The

Complaint expressly alleges that "[s]ince 1986, industrial activities at [3050 Leonis Blvd.] have included metal stamping. Metal stamping includes a cleaning step which employs degreasing" through the use of PCE, and "PCE used in these operations have been discharged into the soil and groundwater and impacted the Property." Compl. ¶ 20. These allegations, taken as true, establish that degreasing has occurred on 3050 Leonis Blvd. since 1986, and the discharge took place during that period. This range of time is sufficient for the purposes of pleading. *See, e.g.*, *Coppola*, 935 F. Supp. 2d at 1009 ("At the pleading stage, a time frame need not be alleged with pinpoint precision, but a general time frame, to the best of Plaintiff's ability, should be included."); *United States v. Washington State Dep't of Transp.*, 665 F. Supp. 2d 1233, 1236, 1242 (W.D. Wash. 2009) (CERCLA complaint was sufficient where it stated that the defendant moved hazardous substances when it conducted dredging of a particular waterway from 1902 until 1949, permitted others to perform dredging between 1975 and 1983, and deposited the dredged material in specific locations where it could cause further contamination). Moreover, Defendants' argument ignores the fact that the Complaint alleges that Metal Products are current operators of 3050 Leonis Blvd and have been since 1986. Compl. ¶ 5. Thus, even if the discharge took place after 1988, Defendant Metal Products would still be a PRP as an operator.

> The Supreme Court has held that for the purposes of CERCLA:
>
> an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. . . [A]n operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998). Defendant Metal Products Engineering has operated at 3050 Leonis Blvd. since 1986 and conducted metal stamping activities since that time that involved the handling of PCE, which has been discharged into the soil. Compl. ¶¶ 5, 20. Citing EPA manifests, Plaintiffs identify

that Metal Products' handled of approximately 176 gallons of PCE from 1999–2001. *Id.* ¶ 20. These allegations connect the activities on the site that resulted in the discharge of PCE directly to Defendant Metal Products' handling of the pollutant, i.e. PCE. These facts taken together create plausible grounds from which the court could infer the Defendant Metal Products "manage, direct, or conduct operations specifically related to pollution" and is thus the operator of 3050 Leonis Blvd. As the Court emphasized in *Twombly*, "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" sufficient to prove the cause of action. *Twombly*, 550 U.S. 545.[2] The allegations in the Complaint provide enough factual support to meet the plausibility standard imposed under *Twombly*.

**The Luppens.** The Complaint alleges that in 1988, Defendant Metal Products granted the property to Defendant Luppe Luppen. Compl. ¶ 20. The Complaint also alleges that Defendants Luppe Ridgway Luppen and Paula Busch Luppen are the current owners of 3050 Leonis Blvd. as co-trustees of the Luppe and Paula Luppen Living Trust. Compl. ¶ 4. There is no allegation that Defendant Luppe Luppen is a current owner of 3050 Leonis Blvd. as an individual, only as a trustee. Thus, a reasonable reading of these two allegations is that, at some point since 1988, Defendant Luppe Luppen transferred ownership of the property from himself as an individual to the trust, which is the current owner. (Indeed, Plaintiffs intend to provide evidence to this effect.) Because these two allegations are not contradictory, *Hazel Green Ranch, LLC v. U.S.,* 2010 U.S. Dist. LEXIS 37733 (E.D. Cal. Apr. 5,

---

[2] Plaintiffs do not allege that Defendant Metal Products is a current or former arranger. Nor is that allegation necessary, since at all relevant times Defendant Metal Products was the owner and/or operator for purposes of CERCLA.

2010) and *Harwood Inv.*, 2009 U.S. Dist. LEXIS 109872, cited by Defendants, are inapposite.[3]

### B. Plaintiffs Allege a "Release" to Support Their Claim Under Cal. Health & Safety Code § 25363.

Defendants' only challenge to Plaintiffs' Third Claim for Relief under the California Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25363, is that the complaint does not allege that Defendants "disposed" of PCE at their property. Mot. at 9:14–19. But, as Defendants point out, HSAA liability triggers off a "release" to the environment. *Orange Cty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 371 (2017), *as modified on denial of reh'g* (Aug. 25, 2017), *review denied* (Nov. 15, 2017) (elements of both CERCLA and HSAA actions are (1) a facility, (2) a threatened or actual release, (3) necessary response costs consistent with the national contingency plan, and (4) defendant is in the class of liable persons under CERCLA). A "release" is any "spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or *disposing* into the environment." Cal. Health & Safety Code § 25320 (emphasis added). *Orange County Water District* establishes only that a "disposal" is sufficient to establish a release, but does not hold that it is a necessary condition for HSAA liability. 14 Cal. App. 5th at 371. As discussed in detail in Section IV.A.1., *supra*, the allegations plausibly establish a "release" of a

---

[3] Because the allegations of ownership history are not contradictory, they do not "muddy the waters as to whether [Luppe Luppen] is being sued as a trustee (with liability only in his fiduciary role) or as an individual (with personal liability)," as Defendants assert. *See* Mot. at 8. To the extent releases occurred while Mr. Luppen owned the property in his personal capacity, he may be personally liable as a past owner. *See* 42 U.S.C. § 9607(a)(2). To the extent he owns the property today in his capacity as a trustee, he may be liable as a current owner. *See* 42 U.S.C. § 9607(a)(1). Defendants assert that the extent of Mr. Luppen's liability is capped by the trust assets to the extent his is being sued in his capacity as trustee, *see* 42 U.S.C. § 9607(n)(1), but that issue, which may arise should Plaintiffs prevail, is irrelevant to the issue of whether Plaintiffs have stated a legally cognizable claim for relief. For the reasons stated above, Plaintiffs' claims are not contradictory and state plausible claims for relief against Mr. Luppen.

hazardous waste at Defendants' property, namely via discharge of PCE. The Court must not dismiss the Third Claim for Relief.

## C. Defendants' Remaining Attacks on the Complaint Have No Foundation.

Defendants cram attacks on the remaining five of Plaintiffs' claims into a scant two pages. Unsurprisingly, these shallow arguments suffer from misconception of the relevant law, misapprehension of the relevant allegations, and an utter lack of analysis. None forms the basis for dismissal of the Plaintiffs' claims.

### 1. Defendants Misstate the Law for Implied Equitable Indemnity.

Defendants mischaracterize the elements for an equitable indemnity claim, which are (1) that indemnitee was required to pay a liability, (2) that indemnitor was negligent or otherwise acted tortiously toward indemnitee, and (3) that indemnitor's tortious conduct was a substantial factor in causing the underlying harm. *See* Judicial Council of California Civil Jury Instruction 3800. Here, Plaintiffs' remediation activities arose out of Defendants' negligent property management and failure to prevent contaminant discharges, which substantially contributed to the need for remediation. Compl. ¶¶ 51–53. These underlying wrongs support an action for equitable indemnity.

Defendants cite to *People ex rel. Department of Public Works v. Daly City Scavenger Co.*, 19 Cal. App. 3d 277 (1971), for the abrogated proposition that Plaintiff must be innocent of all wrongdoing in order to make a claim for equitable indemnity. *See* Mot. at 10:10–13. However, partial indemnity is a viable claim under California law. *Am. Motorcycle Assn. v. Superior Court*, 20 Cal. 3d 578, 598 (1978) ("[W]e conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis."). Even if the "innocence" element remained, Plaintiffs' allegations would satisfy it. Plaintiffs make plain that they have

never used or handled TCE or PCE at the Property, Compl. ¶ 28; and that the damages, injuries, and obligations Plaintiffs have incurred are exclusively the result of the acts and omissions of Defendants. Compl. ¶ 55.

Second, Defendants misconceive the pertinent wrong in asserting that a prospective indemnitee's statutory liabilities can never form the basis for equitable indemnity claim. Mot. at 9:26–28 ("[I]f the wrong alleged against the plaintiff is a statutory wrong . . . indemnity will not lie."). What matters is "some basis for tort liability against the proposed indemnitor, usually involving breach of a duty owed to the plaintiff." *HCC Life Ins. Co. v. Managed Ben. Adm'rs LLC*, No. 207-CV-02542-MCE-DAD, 2008 WL 2439665, at *5 (E.D. Cal. June 12, 2008), *citing Stonegate Homeowners Ass'n v. Staben*, 144 Cal. App. 4th 740, 751 (2006). As above, Plaintiffs' indemnity claim against Defendants is based on Defendants' negligence that led to Plaintiffs' remediation obligations. Compl. ¶¶ 51-53; *see also Am. Motorcycle Assn.*, 20 Cal. 3d at 607 (permitting equitable indemnity cross-complaints against allegedly negligent third parties).

Defendants are not saved by their citation to *Gonzales v. Harris Ranch Beef Co.*, No. 1:14-cv-00038-LJO, Dkt. 141 (E.D. Cal. Nov. 5, 2014) (Order for Supplemental Briefing), because the issue in *Gonzales* was whether an equitable indemnity claim can be premised on a violation of federal law, under federal contribution principles. *Id.* at 3:5-6; 3:10–12. Plaintiffs here base their equitable indemnity claim on Defendants' negligence, not on a federal statute. Compl. ¶¶ 51–53. *Gonzalez* is therefore inapt.

Defendants' other citations also have no bearing on this matter. In *Kantor v. Housing Authority*, 8 Cal. App. 4th 424 (1992), the issue was whether a state agency's good faith settlement with the plaintiff overrode the agency's statutory obligation to indemnify its employees. The court held that the settlement agreement would thwart the purpose of the indemnity statute. *Id.* at 431. Here, there is no settlement agreement and no indemnity statute at issue. Similarly, *Downey Venture*

*v. LMI Insurance Co.*, 66 Cal. App. 4th 478 (1998) is irrelevant. There, an insurance policy purporting to indemnify a law firm in a lawsuit for willful malicious prosecution of a third party was found void for public policy and violation of Cal. Ins. Code § 533. Here, there is no indemnification agreement at issue, and certainly not one that indemnifies willful injurious or illegal conduct.

### 2. Defendants' Liability for Private Nuisance Is Well Pled.

Defendants argue that Plaintiffs fail to allege a release or disposal of the subject contaminants to support their prima facie claim for private nuisance. Mot. at 10:17–18. This argument fails for two reasons. First, as discussed in detail in Section IV.A.1., *supra*, the allegations establish that Defendants released PCE at 3050 Leonis Blvd.

Second, Plaintiffs allege the requisite elements of nuisance, and specifically interference with Plaintiffs' use and enjoyment of its property. A nuisance is "*[a]nything* which is injurious to health…or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civ. Code § 3479 (emphasis added). The complaint is replete with allegations describing such the interference. Plaintiffs allege that (1) the indoor air, soil, groundwater, and subsurface at the Property [is] contaminated with, *inter alia*, PCE, Compl. ¶ 18; (2) PCE discharges from 3050 Leonis Blvd. have impacted the groundwater and soil vapor at the Property, Compl. ¶ 21; and (3) that Plaintiffs have conducted, and will conduct additional, environmental investigation and remediation activities at the Property that will require demolition and redevelopment at the Property, Compl. ¶ 29. Plaintiffs describe the "release and disposal" of hazardous materials at Defendants' property to establish the Defendants' causal relationship to the nuisance. These allegations, and reasonable inferences drawn therefrom, demonstrate with plausibility that Defendants have caused contamination at the Property, that Plaintiffs must remediate the contamination, and that both the contamination and remediation

interfere with Plaintiffs' ability to use and enjoy the property as they could or would have in the absence of the contamination.

### 3. Plaintiffs Allege a "Disposal" Supporting a Continuing Trespass Claim.

The elements of continuing trespass are (1) a defendant's failure to remove (2) from the land in the possession of another (3) a thing which defendant has tortiously placed the land." *Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125, 1148–49 (1991), *citing* Restatement (Second) of Torts § 161 (1965). The allegations plausibly demonstrate these elements: (1) Defendants placed PCE onto the Property by releasing it to groundwater, and they have not removed that PCE from the Property, Compl. ¶¶ 20, 21, 69; (2) Plaintiffs own and possess the Property, Compl. ¶¶ 1, 67; and (3) Defendants, through their negligence, tortiously placed the PCE on the Property. Compl. ¶¶ 20, 21, 77–81. Defendants' argument that the allegations do not describe "a release or disposal," Mot. at 11:2–4, is immaterial because Plaintiffs establish the elements of continuing trespass. It is also wrong. *See* Section IV.A.1, *supra*.

### 4. Plaintiffs' Allegations Demonstrate Defendants' Negligence.

Defendants attack the duty and breach elements of Plaintiffs' negligence claim as "vague" without any analysis of the complaint, and that attack fails. *See* Mot. at 11:8–12. Defendants are property operators, Compl. ¶¶ 4, 5, who owe a duty of care and skill in the management of their property under Cal. Civ. Code § 1714(a) ("Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person"). Defendants are clearly on notice of the nature of the duty alleged under the negligence cause of action: "Defendants, and each of them, owed a duty to plaintiffs to exercise due care . . . ." Compl. ¶ 78.

Similarly, Plaintiffs also plausibly allege that Defendants breached their duty of ordinary care. Plaintiffs describe the existence and use of PCE at Defendants'

property, and the presence of PCE in the groundwater and soil vapor at Plaintiffs' property. Compl. ¶¶ 20, 21. Moreover, Plaintiffs allege the transmission vector: PCE discharged to the subsurface at Defendants' property flowed via groundwater to Plaintiffs' adjacent property. *Id.* Defendants, by releasing hazardous substances including PCE at their property, breached the duty of due care Defendants owed to Plaintiffs, which resulted in the complained-of injuries. Compl. ¶¶ 78–81.

### 5. The Complaint Establishes a Live Controversy Sufficient to Support Declaratory Relief.

Defendants' only challenge to the claim for declaratory relief is that Plaintiffs' failure to prove liability *before* raising their claim for declaratory relief leaves that claim unduly vague. Mot. at 11:14–19. This argument puts the cart before the horse. Plaintiffs need not prove liability at the pleading stage; all that matters is that the pleadings provide sufficient factual context to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 662, quoting *Twombly*, 550 U.S. at 570. Moreover, it is an abuse of discretion to dismiss a claim for declaratory relief where the pleadings demonstrate an actual controversy. *Californians for Native Salmon etc. Assn. v. Dep't of Forestry*, 221 Cal. App. 3d 1419, 1426–27 (1990). Plaintiffs demonstrate with plausibility the live controversy here: there is ongoing contamination, flowing to the Property via groundwater from Defendants' neighboring properties, causing a host of injuries to Plaintiffs at the Property. Compl. ¶¶ 20–21, 29. These injuries are ongoing in that they will require future expenditures and additional remedial efforts at the property. Compl. ¶ 29. Defendants' citation to *California River Watch v. Fluor Corp.*, No. 10-CV-05105-WHO, 2014 WL 6679890 (N.D. Cal. Nov. 25, 2014) is inapposite, as that case considered preemption, an argument that Defendants do not raise here.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety. To the extent the Court does not believe

1  Plaintiffs have met their burden, Plaintiffs request an opportunity to conduct

2  discovery and/or leave to amend.[4]

3

4                                    Respectfully submitted,

5  Dated: February 16, 2018    **SHER EDLING LLP**

6                           By:  */s/ Martin D. Quiñones*

7                                VICTOR M. SHER
                                 MATTHEW K. EDLING
8                                MARTIN D. QUIÑONES

9                                *Attorneys for Plaintiffs ALISU*
                                 *INVESTMENTS, LTD., and*
10                               *KARGO GROUP GP, LLC*

11

12

13                         **ECF CERTIFICATION**

14         The undersigned certifies that on February 16, 2018, the foregoing document

15  was filed with the Clerk of the Court via CM/ECF.  Notice of this filing will be

16  sent by email to all registered parties by operation of the Court's electronic filing

17  systems.

18     Dated: February 16, 2018     By:    */s/ Martin. D. Quiñones*

19                                         MARTIN D. QUIÑONES

20

21

22

23

24

25  ---

26  [4] A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of

27  . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only when it is clear the deficiencies

28  of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).