**CROCKETT & ASSOCIATES**
   Robert D. Crockett (Bar No. 105628)
      *bob@bobcrockettlaw.com*
   Lisa Dearden Trépanier (Bar No. 156302)
      *lisatrepanier@bobcrockettlaw.com*
23929 Valencia Boulevard, No. 303
Valencia, CA  91355
Telephone:  (323) 487-1101
Facsimile:  (323) 843-9711

Attorneys for Defendants Metal Products Engineering, Luppe Ridgway Luppen, and Paula Busch Luppen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALISU INVESTMENTS, LTD. and KARGO GROUP GP, LLC,<br><br>             Plaintiffs,<br><br>v.<br><br>TRIMAS CORPORATION d/b/a NI INDUSTRIES, INC., BRADFORD WHITE CORPORATION, LUPPE RIDGWAY LUPPEN, PAULA BUSCH LUPPEN, METAL PRODUCTS ENGINEERING, DEUTSCH/SDL, LTD., RHEEM MANUFACTURING COMPANY, and INFINITY HOLDINGS, LLC,<br><br>             Defendants.<br><br>AND ALL COUNTERCLAIMS | CASE NO.: 2:16-cv-00686 MWF (PJWx)<br><br>**DEFENDANTS METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Date:  July 2, 2018<br>Time:  10:00 a.m.<br>Judge:  Honorable Michael W. Fitzgerald<br><br>Jury Trial:  August 13, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### INTRODUCTION

This Court warned Plaintiffs that to survive another motion to dismiss, they must allege details "concerning the timing and circumstances of the alleged release(s) on/from" 3050 Leonis Boulevard, Vernon, California ("Luppen Property"). Dkt. 153 at 10. The Court asked Plaintiffs to answer specific questions about *when* and *how* any PCE was released. *Id.* at 9. Plaintiffs claim they "add[ed] more than ten pages of factual allegations related to each Defendant" to their Fifth Amended Complaint ("5AC"). Opposition ("Opp.") at 1. That is simply not true. All Plaintiffs added to their allegations against Metal Products Engineering, Luppe Ridgway Luppen, and Paula Busch Luppen ("Moving Defendants") in the 5AC are two conclusory paragraphs about a storage shed used by Norris Industries, Inc. ("Norris") at the Luppen Property from 1967 to 1986 (5AC ¶¶ 37-38), more words to describe Metal Products' lawful disposal of solution from 1994 to the present (*Id.* ¶ 40), and a vague description of all ways solvents *might* have been spilled at *all* eight Defendants' properties since the 1920's (*Id.* ¶¶ 25-26, 41).

Plaintiffs claim they have "investigat[ed]" and learned "information . . . in discovery [and] in public records" to add "new allegations." Opp. at 1. Norris, the predecessor-in-interest to Defendant TriMas Corporation ("TriMas") has been a defendant since 2016 and was alleged in the Fourth Amended Complaint ("4AC") to be a prior owner of the Luppen Property. 4AC ¶ 20. Plaintiffs have had at least seven months since they learned their property was contaminated with perchlorate (5AC ¶ 21) to obtain discovery from Norris regarding any discharge of perchlorate at the Luppen Property. The only concrete fact Plaintiffs have is one record from the City of Vernon Public Works Department showing that in 1967, Norris had a small metal shed where it stored sodium nitrate which sometimes contains

1  perchlorate. *Id.* ¶ 37.  Despite seven months for discovery, Plaintiffs have no
2  evidence of any release, so they resort to the conclusory allegation that perchlorate
3  was discharged through "spilling, dissolving, or another manner of discharge." *Id.*
4  ¶ 38.  That is little more than cutting and pasting words from the CERCLA statute
5  defining a "release."  42 U.S.C. § 9601(22).

6        As in the 4AC, Plaintiffs rely on Hazardous Waste Manifests showing that
7  Metal Products "uses an aqueous solution containing small amounts of PCE in a
8  self-contained system," which solution is then lawfully "transported off-site."
9  5AC ¶ 40.  The "new allegations" are simply more words describing Metal
10 Products' "disposal of a hazardous substance in a controlled, EPA-approved
11 manner and registration of that disposal with the EPA." Dkt. 153 at 8.  Plaintiffs
12 have no evidence of any release of PCE, so they resort to referencing a list of
13 possible solvent releases at "the Neighboring Properties at various times from the
14 1920s to the present." 5AC ¶ 25.  This laundry list describes ways in which these
15 discharges *might* occur, not ways in which any discharges *did* occur at the Luppen
16 Property. *Id.* ¶ 26.  There are no allegations that PCE was discharged in any of the
17 listed ways at the Luppen Property. *Id.* ¶¶ 25-26.

18       Such allegations are mere possibilities and do not plausibly suggest any
19 discharge of perchlorate or PCE at the Luppen Property.  As such, it is "unfair to
20 require [Moving Defendants] to be subjected to the expense of discovery and
21 continued litigation." *Coppola v. Smith*, 935 F. Supp. 2d 993, 1005 (E.D. Cal.
22 2013) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

23

24                     **II.**
25                     **ARGUMENT**

26 **A.**    **The CERCLA Claims (Nos. 1 and 2)**
27     **1.**    **Pleading Required for CERCLA**
28       The law requires Plaintiffs to allege "sufficient factual matter . . . to 'state a

claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must disregard legal conclusions, even when disguised as facts. *Iqbal*, 556 U.S. at 681. The allegation that perchlorate was discharged by "spilling, dissolving, or another manner of discharge" (5AC ¶ 38) is nothing more than legal conclusions disguised as facts.

Even where there are specific factual allegations, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," plaintiffs have failed to meet their burden. *Iqbal*, 556 U.S. at 679. Plaintiffs must include "sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted). The laundry list of possible ways that solvents are discharged (5AC ¶ 26) is not "sufficient 'factual enhancement'." The list is nothing more than "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Plaintiffs continue to cite *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 39 F. Supp. 3d 1059 (D. Ariz. 2014) for the proposition that "CERCLA plaintiffs . . . 'need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.'" Opp. at 2. The facts held to be sufficient in *Roosevelt Irrigation* contain significantly more detail than the facts Plaintiffs allege here. The court there found the release allegations to be sufficient where, "in addition to alleging that [defendant] used [hazardous substances in connection with its business operations] . . ., [plaintiff] also alleged that [hazardous substances] were detected in the soil gas samples beneath [defendant's] facility . . . [and] that groundwater investigations conducted at the [defendant's] facility . . . confirm the presence of [hazardous substances] in the groundwater beneath the facility. Thus, [plaintiff] did not merely allege that [hazardous substances] were used, but also included facts alleging a release." *Id*. at 1077. Further, all seven

defendants' properties had documented solvent and VOC contamination consistent with historical usage at each property. *Id.* at 1068.[1] Here, there is no allegation that the Luppen Property is contaminated with any chemical. Nor is there any allegation as to where, when, or in what quantity any solution was discharged on the Luppen Property.

Plaintiffs attempt to distinguish *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, No. C 09-4485 JF (PVT), 2010 U.S. Dist. LEXIS 62332 (N.D. Cal. Jun. 23, 2010) (*Chubb II*) by carefully parsing out which chemicals were where. There is no such discussion in the court's opinion. The court held that the allegation that "[e]levated concentrations of [certain hazardous substances] were observed near and emanating from the former Chevron gasoline service station" was insufficient to establish a connection between the Chevron site and the subject site. *Id.* at *29. Plaintiff tried to include allegations *in its opposition* to the motion to dismiss that the "contamination continued to migrate beyond Chevron's facility as elevated levels of hazardous substances were found on Parcel 2 and determined to be emanating from Chevron's former facility." *Ibid.* The court rejected these allegations because they were in the opposition, but not in the complaint. *Id.* at *29-30. *Chubb II* continues to stand for the proposition that "release" allegations must go beyond the mere presence of hazardous substances at a location.

---

[1] Alcoa used solvents in its aluminum facility and its soil and soil gas was contaminated with PCE. 39 F. Supp. 3d at 1068. PCE used as a dry cleaning solvent between 1982 and 1992 was detected in soil and soil gas samples beneath a majority of the Prudential's site. *Ibid.* Kinder Morgan's evaporation pond and process water contained VOC contaminants at its former tank farm. *Ibid.* Solvents were discharged to floor drains and cesspools for subsurface disposal at Meritor's property and PCE was present in the soil and soil gas beneath its facility. *Id.* at 1069. Arizona Public Service used PCE which regulatory reports found was released into groundwater. *Ibid.* Several gallons of solvent were released into a drywell at Semiray in 1989; sediment samples at the drywell contain solvents. *Id.* at 1069-1070. High concentrations of solvents used in manufacturing operations from 1959 to 1965 found in Nucor/Textron's septic tank, soil, and soil gas samples. *Id.* at 1070.

CROCKETT & ASSOCIATES
LOS ANGELES

4

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

### 2. Plaintiffs Have Not Alleged a General Time Frame for Release of Either PCE or Perchlorate

The Court in *Coppola v. Smith* held that allegations that PCE was released from defendant's dry cleaning business during its ownership (1995-2013) were insufficient. 935 F. Supp. 2d at 1004, 1009. The Court further held that allegations that PCE was released by a prior owner of the property beginning in 1959 were also insufficient. *Ibid.* Plaintiffs here have the same problem. They allege that Metal Products "released PCE-containing Safety-Kleen solution . . . between 1994 and the present," which is the entire time Metal Products has operated at the Luppen Property. 5AC ¶¶ 40-41. Plaintiffs further allege that the prior owner, Norris, released perchlorate "between approximately 1967 and 1986," one year shy of the entire time Norris operated at the Luppen Property. *Id.* ¶¶ 37-38. As the court in *Coppola* held: "At the pleading stage, a time frame need not be alleged with pinpoint precision, but a general time frame, to the best of [plaintiff's] ability, should be included." 935 F. Supp. 2d at 1009. The court held that allegations of a release occurring during the entire time of ownership or operation over decades was "inadequately pled." *Ibid.*

Plaintiffs can plead facts "upon information and belief" (Opp. at 5) only where "the facts are peculiarly within the possession and control of the defendant." *Keegan v. American Honda Motor Co.*, 838 F. Supp. 2d 929, 961, n.85 (C.D. Cal 2012). That is not the case here. Plaintiffs have had seven months to obtain facts about perchlorate from Defendant TriMas/Norris. There is no allegation that Moving Defendants have any knowledge of Norris' operations at the Luppen Property from 1967 to 1986. Further, Plaintiffs have gathered "information learned in discovery," including from Moving Defendants, yet they have no facts to support any PCE release. 5AC ¶ 40. Notably, despite Plaintiffs' gathering of "information available in public records" (Opp. at 1), there is no allegation of any permits for vapor degreasing, AQMD notices to comply, DTSC investigation,

agency-ordered testing, or contamination at the Luppen Property. The only alleged public information is one City of Vernon Public Works Department record showing a 720 cubic foot metal shed in 1967. 5AC ¶ 37. It is not plausible that "large volumes" of anything were stored in a 720 cubic foot shed. *Ibid.*

This Court required Plaintiffs to allege "when . . . over the course of the past 32 years, PCE has been released on or from the Luppen Property." Dkt. 153 at 9. Plaintiffs merely narrowed the time frame to 24 years for PCE usage and added a 19 year time period for potential perchlorate storage. That is not sufficiently narrow.

### 3. Plaintiffs Have Not Alleged a General Circumstance of PCE Release Other than in Conclusory, Broad Terms

Plaintiffs allege that Metal Products uses a solution "containing small amounts of PCE in a self-contained system," which solution is then lawfully "transported off-site." 5AC ¶ 40. This Court found that was not a "release." Dkt. 153 at 8-9.

As Plaintiffs have no facts to support any release, they resort to a broad and vague allegation that all eight Defendants discharged two different solvents at five different properties in seven different ways. 5AC ¶¶ 25-26. Plaintiffs do not divide out which Defendants used which solvents or which Defendants had "corrosion or breaching of piping" or which "intentional[]ly" disposed of solvents or which used "vapor degreasing" or which have "sumps." *Id.* ¶ 26. Nor do Plaintiffs allege which Defendants engaged in which "industrial activities . . . at various times from the 1920s to the present." *Id.* ¶ 25. Instead, Plaintiffs leave the Court and the Defendants to guess which alleged discharges apply to which solvents and which Defendants and when in the last 98 years.

The Court in *Voggenthaler v. Maryland Square, LLC*, No. 2:08-CV-1618-RCJ-GWF, 2010 U.S. Dist. LEXIS 74232 (D. Nev. Jul. 22, 2010) dismissed a complaint with exactly such allegations. In *Voggenthaler*:

> [t]here is no indication of which tenants allegedly used, spilled, discharged or released which materials or chemicals, when or where this occurred, or what circumstances surrounded these events. . . . By referring to Sears collectively with other entities, . . . . the allegations . . . make it difficult, if not impossible to tell which conduct is being alleged against Sears specifically.

*Id.* at *23 (internal quotations omitted). The court dismissed the Complaint:

> because the allegations asserted are speculative in nature. . . . [T]here are insufficient factual allegations from which the Court could infer that a release or threatened release from . . . Sears caused the [Third-Party Complainant's] response costs. All that can be derived, is that the [Third Party Complainants] have incurred response costs . . . and that Sears and other collective third party defendants "may" have used and/or spilled solvents and other chemicals at another location.

*Id.* at *23-24. The court dismissed the action because the "factual content" did not "raise the right to relief above the speculative level." *Id.* at *24.

Although Plaintiffs here do not use the word "may," their laundry list allegation is the same. Plaintiffs allege that discharge of solvents is an "inevitable occurrence." 5AC ¶ 25. They do not allege any facts to support this bald assertion. Further, they allege that "[s]uch discharges occur in several ways, including, but not limited to:" a list of various ways solvents might get into soil, none of which are specifically alleged against Moving Defendants. *Id.* ¶ 26. Plaintiffs have essentially alleged that because their own property is contaminated with PCE, TCE, and perchlorate (*Id.* ¶¶ 15-16), and they have found eight Defendants who used those chemicals at nearby properties in the last 98 years, those eight Defendants *may* have spilled chemicals at their properties which *may* have migrated to Plaintiffs' property. That is precisely why the *Voggenthaler* court dismissed the action. That is not "plausibility"; that is "possibility." *Eclectic*

*Properties*, 751 F.3d at 995. As such, there is nothing "to render plaintiffs' allegations plausible." *Id.* at 996-97.

Plaintiffs attempt to "connect[] the dots" by asserting, for the first time in their Opposition, that "Metal Products discharged the PCE-containing solution to the Luppen Property's subsurface, intentionally or unintentionally, through spillage, leakage, drag out, or other dumping onto the ground." Opp. at 12. That is not what the 5AC alleges. Instead, Plaintiffs lump all Defendants, properties, and solvents into a list of possibilities. 5AC ¶¶ 26, 41. Plaintiffs do not allege that Metal Products ever spilled, leaked, dragged out, or dumped any chemical.

### 4. Plaintiffs Have Not Alleged a General Circumstance of Perchlorate Release Other than in Conclusory, Broad Terms

Plaintiffs allege that perchlorate was released by "spilling, dissolving, or another manner of discharge." 5AC ¶ 38. That is nothing more than "labels and conclusions," reciting words from the CERCLA statute defining a "release." *Twombly*, 550 U.S. at 555; 42 U.S.C. § 9601(22).

## B. Third Claim under California Health & Safety Code section 25363

As discussed above, Plaintiffs do not adequately allege any release or discharge of PCE or perchlorate from the Luppen Property. As such, Plaintiffs' claim under section 25363 of the California Health & Safety Code fails.

## C. Fourth Claim for Implied Equitable Indemnity

Plaintiffs accurately state that the first element of an equitable indemnity claim is "that the indemnitee was required to pay a liability." Opp. at 16. "[A] fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." *Coppola v. Smith*, 935 F. Supp. 2d at 1020-21 (citing *Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 110 [32 Cal. Rptr. 2d 263] (1994)). Without an allegation that Plaintiffs "actually paid a judgment or settlement . . . there is no claim for equitable indemnity." 935 F. Supp. 2d at 1021. Plaintiffs

make no such allegation.

Further, Moving Defendants have not breached any duty as Plaintiffs have not adequately alleged they allowed or permitted the discharge or release of any hazardous substances. 5AC ¶ 86. Plaintiffs' cause of action for equitable indemnity therefore fails.

### D. Fifth Claim for Private Nuisance

Plaintiffs have not adequately alleged that Moving Defendants have done anything that would impact Plaintiffs' property, including releasing or discharging any hazardous substances. 5AC ¶ 94.

### E. Sixth Claim for Continuing Trespass

Plaintiffs have not adequately alleged that Moving Defendants caused any release of hazardous substances. 5AC ¶ 102.

### F. Eighth Claim for Negligence

Plaintiffs have not adequately alleged that Moving Defendants have breached any duty, released or discharged any perchlorate or PCE, or done any other negligent act. 5AC ¶ 114.

### G. Ninth Claim for Declaratory Relief

Plaintiffs have shown no "actual" or "live" controversy. Without a showing of liability under CERCLA or the pendent state claims in the first place, declaratory relief is not available. *Chubb Custom Ins. Co. v. Space Systems/Loral Inc.*, No. C 09-4485 JF (PVT), 2010 U.S. Dist. LEXIS 15624, at *27 (N.D. Cal. Feb. 23, 2010) ("*Chubb I*") ("until a substantive claim against defendant is alleged sufficiently, plaintiff cannot pursue a claim for declaratory relief").

## III.

## PLAINTIFFS SHOULD NOT BE ALLOWED DISCOVERY OR LEAVE TO AMEND

Plaintiffs' request for an opportunity to conduct discovery (Opp. at 21) "is unsupported and defies common sense. The purpose of Fed. R. Civ. P. 12(b)(6) is

to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  As such, Plaintiffs' request for discovery should be denied.

Plaintiffs cannot demonstrate that any potential amendment would include the required allegations that there was any discharge of PCE or perchlorate at the Luppen Property.  *Zadrozny v. Bank of New York Mellon*, 720 F. 3d 1163, 1173 (9th Cir. 2013) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile.") (citation omitted).  As such, Plaintiffs' request for leave to amend (Opp. at 21) should be denied.

## IV.
### CONCLUSION

Plaintiffs have had two chances to allege releases of any hazardous substances at the Luppen Property.  They have failed to do so and have demonstrated that they will be unable to do so.  For the reasons set forth above, Moving Defendants respectfully request that the Court dismiss the Plaintiffs' Fifth Amended Complaint against them with prejudice.

DATED: June 18, 2018

CROCKETT & ASSOCIATES

By _/s/ Lisa D. Trépanier_
Robert D. Crockett
Lisa Dearden Trépanier
Attorneys for Metal Products Engineering, Luppe Ridgway Luppen, and Paula Busch Luppen

4815-7052-0170, v. 1