UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 16-686-MWF (PJWx)           **Date:**  July 13, 2018
**Title:**    Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

**Present:**  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                    Court Reporter:
Rita Sanchez                     Not Reported

Attorneys Present for Plaintiff:     Attorneys Present for Defendant:
None Present                         None Present

**Proceedings (In Chambers):**   ORDER RE: DEFENDANTS METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) [170]

   Before the Court is the Motion to Dismiss Pursuant to FRCP 12(b)(6) (the "Motion") (Docket No. 170) filed by Defendants Metal Products Engineering ("MPE"), Luppe Ridgway Luppen, and Paula Luppen (collectively, the "Moving Defendants") on May 21, 2018.  On June 11, 2018, Plaintiffs Alisu Investments, Ltd. ("Alisu") and Kargo Group GP, LLC ("Kargo") filed an Opposition.  (Docket No. 172).  On June 18, 2018, the Moving Defendants filed a Reply.  (Docket No. 174).  The Court held a hearing on July 9, 2018.

   For the reasons set forth below, the Motion is **DENIED** in its entirety.  The only real argument the Moving Defendants make is that Plaintiffs have still failed to plausibly allege that there has been a "release" of PCE on the Luppen Property that has contributed to the contamination of Plaintiffs' Property.  The Court disagrees.  In their Fifth Amended Complaint, Plaintiffs have added details concerning the proximity of the Luppen Property to Plaintiffs' Property (abutting one another), the natural flow of groundwater and soil vapor (west-southwest, from the Luppen Property toward Plaintiffs' Property), and the frequency and circumstances of the Moving Defendants' use of PCE (using PCE-containing Safety-Kleen solution on a daily basis since 1994, storing and reusing the solution, and periodically transporting old solution offsite).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)	Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

Plaintiffs have plausibly alleged that at least some portion of the PCE contamination on their Property is due to a release of PCE on the Luppen Property and should be permitted to move forward with discovery on their claims.

I.      **BACKGROUND**

   A.      **The Prior Complaints and the April 4 Order**

On February 1, 2016, Plaintiffs filed their original Complaint against TriMas Corporation ("TriMas") and ten "Doe" defendants.  (*See* Complaint (Docket No. 1)).  Plaintiffs alleged that they are the owners (Alisu owning 75%, and Kargo owning 25%) of a 3.65-acre property located at 4901 South Boyle Avenue, Vernon, California, 90058 (the "Property").  (*Id.* ¶ 1).  TriMas is the successor-in-interest to Norris Industries, Inc. ("Norris"), a former tenant and operator of the Property.  (*Id.* ¶ 2).  Plaintiffs alleged that, from 1981 to 1991, Norris operated a munitions manufacturing business at the Property, and in connection with those operations "used various chemicals classified as hazardous substances, such as chlorinated solvents including but not limited to tetrachloroethylene ('PCE') and trichloroethylene ('TCE'), among other hazardous substances, and released those substances on, into and under the Property."  (*Id.* ¶ 14).

Plaintiffs alleged that, as a result of those activities, the Property is currently contaminated with unsafe levels of PCE and TCE, and asserted nine claims for relief against TriMas, including claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and California's Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300 *et seq*.  (*Id.* ¶¶ 15-37).

Between March 2016 and September 2016, Plaintiffs filed their First, Second, and Third Amended Complaints, each of which maintained the same basic factual allegations and claims for relief, and each of which named TriMas as the sole defendant.  (*See* Docket Nos. 12, 16, 37).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)					Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

On September 13, 2017, Plaintiffs filed their Fourth Amended Complaint ("4AC"), in which they for the first time named MPE, Luppe Luppen, and Paula Luppen, among others (in addition to TriMas) as Defendants. (*See* 4AC (Docket No. 82)).

Plaintiffs alleged that Luppe Luppen and Paula Luppen, by way of their status as co-trustees of the Luppe and Paula Luppen Living Trust, are the owners of a "neighboring property" (*i.e.*, neighboring the Plaintiffs' Property) located at 3050 Leonis Blvd., Vernon, California, 90058 (the "Luppen Property"), and that MPE has operated at the Luppen Property since 1986. (*Id.* ¶¶ 4-5). Plaintiffs alleged that Norris sold the Luppen Property to MPE in 1986 and MPE "granted the [Luppen Property] two years later to its founder Defendant Luppe Luppen." (*Id.* ¶ 20).

Plaintiffs alleged in paragraphs 20 and 21 of the Fourth Amended Complaint that activities conducted on the Luppen Property have contributed to PCE contamination on Plaintiffs' Property:

> 20.    … Since 1986, industrial activities at the [Luppen Property] have included metal stamping. Metal stamping includes a cleaning step which employs degreasing with chlorinated solvents, including PCE. EPA records [show that] Defendant Metal[ ] Products Engineering manifested approximately 176 gallons of PCE from 1999-2001. PCE used in these operations have been discharged into the soil and groundwater and impacted [Plaintiffs'] Property.
>
> 21.    The close proximity to [Plaintiffs'] Property and direction of groundwater flow has led to PCE, originally discharged into the soil and groundwater at [the Luppen Property], to impact both groundwater and soil vapor at [Plaintiffs'] Property.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-686-MWF (PJWx)           **Date:** July 13, 2018
**Title:**     Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

(FAC ¶¶ 20-21).

Plaintiffs alleged that they engaged Environmental Audit, Inc. ("EAI"), an environmental consulting firm, to perform testing on their Property. (*Id.* ¶ 18). After EAI completed its "Phase I" and "Phase II" testing in March and July 2015, respectively, "Plaintiffs discovered for the first time that the indoor air, soil and subsurface at the Property was contaminated with, *inter alia*, PCE and TCE, at concentrations above screening levels developed by the Department of Toxic Substances Control (DTSC) and EPA for commercial-industrial land use." (*Id.*).

Plaintiffs alleged that they "have never used or handled PCE or TCE at [their] Property." (*Id.* ¶ 28). "As a result of the releases and threatened releases of hazardous substances on [Plaintiffs'] Property, Plaintiffs have voluntarily incurred significant costs to conduct environmental investigation and remediation activities at the Property, which are still ongoing…" (*Id.* ¶ 29). "In addition, Plaintiffs will be required in the future to expend significant amounts of money in conducting further environmental investigation and remediation activities at the Property, including but not limited to demolition and redevelopment costs." (*Id.*). "Also as a result of Defendants' actions, the Property's value has been severely diminished…" (*Id.*).

Plaintiffs asserted eight of their nine claims for relief against the Moving Defendants (eight claims are asserted against all Defendants; one claim for waste is asserted only against TriMas): (1) liability for response costs under CERCLA; (2) declaratory relief under CERCLA; (3) liability for response costs under section 25363 of the HSAA; (4) "implied equitable indemnity and/or partial implied equitable indemnity"; (5) continuing private nuisance; (6) continuing trespass; (7) negligence; and (8) declaratory relief. (FAC ¶¶ 30-70, 77-84).

The Moving Defendants filed a motion to dismiss the Fourth Amended Complaint on January 26, 2018, arguing, *inter alia*, that Plaintiffs had not plausibly alleged that there had been any release of hazardous substances on/from the Luppen Property that contributed to the contamination on Plaintiffs' Property. (Docket No. 141).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)			Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

In an order dated April 4, 2018 (the "April 4 Order"), the Court granted the Moving Defendants' motion to dismiss the Fourth Amended Complaint with leave to amend.  (Docket No. 153).  The Court reviewed the relatively scarce and non-binding case law addressing the level of specificity required for CERCLA response-cost-liability claims – including *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, No. C 09-4485 JF (PVT), 2010 WL 689940 (N.D. Cal. Feb. 23, 2010) ("*Chubb I*") and *Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, No. C 09-4485 JF (PVT), 2010 WL 2573386 (N.D. Cal. June 23, 2010) ("*Chubb II*") – and determined that the Fourth Amended Complaint lacked sufficient facts to plausibly suggest that hazardous substances had been released on the Luppen Property and ultimately contributed to the contamination of Plaintiffs' Property.

### B.     The Fifth Amended Complaint

On April 23, 2018, Plaintiffs filed the operative Fifth Amended Complaint ("5AC") (Docket No. 159), in which they maintain the key factual allegations from the Fourth Amended Complaint and assert the same claims for relief that they asserted in the Fourth Amended Complaint.

Plaintiffs added the following allegations that are relevant to their claim that hazardous substances released on the Luppen Property have contributed to the contamination of Plaintiffs' Property:

- "The [Luppen Property] abuts the Property immediately to the Property's north, and its southern boundary runs west from S. Boyle Ave. approximately two-thirds the length of the Property.  Because the [Luppen Property] is set north and northeast of the Property, it is upgradient, and any subsurface contaminants beneath the [Luppen Property] will naturally migrate onto and under the [Plaintiffs' Property], following the west southwest direction of groundwater flow and soil gas pressure."  (5AC ¶ 36).  Groundwater in the vicinity of Plaintiffs' Property "has historically moved in the same [west-southwest] direction."  (*Id.* ¶ 23).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)					Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

- "Since 1994, [MPE] has operated at the [Luppen Property] conducting metal stamping, tool and die making, and assembling metal products. Metal stamping, tool and die making, and assembling metal products, like other forms of industrial metal manipulation, necessarily requires degreasing of both the finished workpiece and of the tools involved, which typically involves the use of chlorinated or other solvents. City of Vernon records and Hazardous Waste Manifests show that continuously between 1994 and the present, [MPE] has used high volumes of lubricating oils, and has maintained a proprietary 'Safety-Kleen' tool cleaning unit, which uses an aqueous solution containing small amounts of PCE in a self-contained system to remove oil and grease from parts introduced to the solution. [MPE] has continuously used approximately 1-3 gallons of Safety-Kleen solution per day since 1994 to clean tools, and has stored approximately 20-40 gallons of solution in drums on the [Luppen Property] throughout that time. Because the solution is reused over time but must eventually be replaced, Hazardous Waste Manifests reflect that [MPE] has generated between 20 and 60 gallons of Safety-Kleen solution waste each year that is regularly transported off-site and replaced." (*Id.* ¶ 40).

- "On information and belief, [MPE] has regularly released PCE-containing Safety-Kleen solution to the Property's subsurface between 1994 and present, intentionally or unintentionally, under one or more of the [following] circumstances….": "human error"; "damage to solvent containment structures"; "leakage from joints and connections on solvent-containing equipment"; "'drag out' from degreaser units"; "intentional disposal"; "emission of fugitive solvents used during vapor degreasing"; and "leaks from sumps, floor drains, and sewer lines that convey solvent-containing wastes away from industrial operations." (*Id.* ¶¶ 26, 41).

- Sometime in late 2017, following the installation of groundwater monitoring wells at the direction of the California Department of Toxic Substances Control ("DTSC"), Plaintiffs discovered that, in addition to TCE and PCE,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)					Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

the Property's ground contains elevated concentrations of perchlorate.  (*Id.* ¶¶ 19-21).

- Norris used "chemicals containing perchlorate, and caused that perchlorate to be discharged into the subsurface at the Property and at the [Luppen Property]…." (*Id.* ¶ 16).  Specifically, between 1967 and 1986, Norris stored sodium nitrate in a 720 cubic foot metal shed approximately 50 feet north of the southern boundary of the Luppen Property (which abuts the Plaintiffs' Property).  (*Id.* ¶¶ 36-38).  Sodium nitrate "is largely mined from deposits that contain naturally occurring perchlorate," and "[p]erchlorate contamination is frequently observed in the subsurface areas where sodium nitrate has been used, stored, or disposed." (*Id.* ¶ 37).  When Norris was storing sodium nitrate on the Luppen Property and transporting sodium nitrate to and from its storage shed, "sodium nitrate containing perchlorate escaped to the environment through spilling, dissolving, or another manner of discharge, migrated to the subsurface, and was released to the [Plaintiffs'] Property following the flow of groundwater." (*Id.* ¶ 38).  The release of perchlorate from the Luppen Property to the Plaintiffs' Property, via the subsurface, has "occurred continuously, and [is] occurring today, since 1967." (*Id.* ¶ 38).

## II.    PLEADING STANDARD

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-686-MWF (PJWx)          **Date:** July 13, 2018
**Title:**     Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

### III. DISCUSSION

#### A. CERCLA Claim

To state a viable claim for recovery of response costs under CERCLA, a plaintiff must allege that: "(1) the site on which the hazardous substances are contained is a 'facility' under CERCLA's definition of that term, Section 101(9), 42 U.S.C. § 9601(9); (2) a 'release' or 'threatened release' of any 'hazardous substance' from the facility has occurred, 42 U.S.C. § 9607(a)(4); (3) such 'release' or 'threatened release' has caused the plaintiff to incur response costs that were 'necessary' and 'consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 16-686-MWF (PJWx)          **Date:** July 13, 2018
**Title:**    Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

with the national contingency plan,' 42 U.S.C. §§ 9607(a)(4) and (a)(4)(B); and (4) the defendant is within one of four classes of persons subject to the liability provisions under Section 107(a)." *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1002-03 (9th Cir. 2010) (internal citations and quotation marks omitted).

The Moving Defendants argue that, despite the additional details provided in the Fifth Amended Complaint, Plaintiffs still have not plausibly alleged that there has been any "release" of hazardous substances on the Luppen Property that has contributed to the contamination of Plaintiffs' Property. Plaintiffs, unsurprisingly, argue the opposite. Given the relatively scant case law addressing the level of specificity with which a CERCLA plaintiff must plausibly allege a release on/from a defendant's property, the parties sensibly focus upon a handful of post-*Towmbly*/*Iqbal* district court cases from within the Ninth Circuit that address the issue and attempt to analogize and distinguish those cases.

Among the relevant in-Circuit cases that the parties have cited and the Court has located are:

- *Chubb I*: The plaintiff, an insurance company seeking indemnification from neighboring property owners after funding its insured's environmental cleanup costs, alleged that defendant Chevron "owned and/or operated a gas station near the Site [a 47-acre tract of land in Palo Alto, California] between 1960 and 1977," that Chevron "used unspecified 'hazardous substances'" on its property, and that plaintiff had paid to clean up PCE and TCE from its insured's property. *Chubb I*, 2010 WL 689940, at *1, 4. The district court held that the plaintiff's release-related allegations were insufficient, as the plaintiff had "fail[ed] to allege any facts that could support an inference connecting the gas station, which is not alleged to have been located within the boundaries of the Site, to the clean-up on the parcel [the insured] currently owns," and gave the plaintiff leave to amend. *Id.* at *4.

- *Chubb II*: The plaintiff-insurance company filed a first amended complaint and Chevron again moved to dismiss. *Chubb II*, 2010 WL 2573386, at *1. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)           Date:  July 13, 2018
Title:     Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

plaintiff included certain new allegations concerning releases on the former Chevron service station, including that "[e]levated concentrations of [certain hazardous substances] were observed near and emanating from the gasoline service station."  *Id.* at *10 (internal quotation marks and citations omitted; alterations in original).  Notwithstanding the plaintiff's new allegations (the one just quoted seemingly being the most helpful to the plaintiff), the district court agreed with Chevron's argument that the plaintiff had "fail[ed] to allege sufficient facts to establish a nexus between [the insured's] alleged response costs on [its property] and the alleged release at the former service station," and granted Chevron's motion with leave to amend.  *Id.* at *9, 12.

- ***Coppola***: The plaintiff, the owner and operator of a dry cleaning company whose property was contaminated with PCE, alleged that the contamination was the result of PCE releases from dry cleaning activities on two nearby properties (0.08 and 0.1 miles from plaintiff's property) and from the operation of a nearby sewer system owned by the City of Visalia and a well formerly operated by the California Water Service Company.  *Coppola v. Smith*, 935 F. Supp. 2d 993, 1004-05 (E.D. Cal. 2013).  The owner of one of the nearby properties (on which a dry cleaner previously operated) moved to dismiss, arguing, *inter alia*, that the plaintiff had failed to allege that there had been a release of hazardous substances on its property.  *Id.* at 1006.  The district court agreed, and granted the motion to dismiss with leave to amend.  *Id.* at 1009-11.  The court took issue with the fact that the plaintiff had not alleged even a general time frame for when the releases occurred.  *Id.* at 1009.  "At the pleading stage, a time frame need not be alleged with pinpoint precision, but a general time frame, to the best of [the plaintiff's] ability, should be included."  *Id.*  The court also took issue with the plaintiff's allegation that, in addition to PCE, unspecified "hazardous substances" had been released on the defendant's property.  *Id.*

- ***Roosevelt Irrigation District***: The plaintiff, a municipal owner of groundwater wells, more than 20 of which had been impacted by PCE, TCE, and other hazardous substances, alleged that PCE, TCE, and other industrial contaminants

| **CIVIL MINUTES—GENERAL** | 10 |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No. CV 16-686-MWF (PJWx)**           **Date: July 13, 2018**
**Title:**     Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

emanating from facilities within three nearby superfund sites entered the groundwater table, comingled, and migrated westward, resulting in the contamination of the plaintiff's wells. *Roosevelt Irr. Dist. v. Salt River Project Agricultural Improvement & Power Dist.*, 39 F. Supp. 3d 1059, 1062-64 (D. Ariz. 2014). One of the defendants, APS, moved to dismiss on the basis that the plaintiff "ha[d] merely alleged that APS 'used' chlorinated solvents, but has not pled that APS conducted a 'release.'" *Id.* at 1076. The district court rejected this argument and denied APS's motion. *Id.* at 1076-77. The court noted that, "in addition to alleging that APS used PCE, TCE, and TCA [another hazardous substance] in the maintenance area to repair, maintain, lubricate, degrease and clean automotive parts…, [the plaintiff] also alleged that … PCE and TCE were detected in the soil gas samples beneath [APS's] facility … [and] that groundwater investigations conducted at the APS facility beginning in 1997 confirm the presence of TCE, PCE, and TCA in the groundwater beneath the facility." *Id.* at 1077. The court also noted that the plaintiff had plausibly alleged that contaminants originating at the APS facility migrated westward via the water table to the plaintiff's wells. *Id.*

- ***Tarob***: The plaintiff, a landowner whose property was contaminated with PCE, sued the owner and operator of a neighboring dry cleaning business, seeking contribution for its cleanup costs under CERCLA and the HSAA. *Tarob M & C Investors, LLC v. Herbert*, No. 5:14-cv-04291-PSG, 2015 WL 5728426, at *1 (N.D. Cal. Sept. 30, 2015). The district court denied the defendants' motion to dismiss the CERCLA and HSAA claims. *Id.* at *3. Declining to follow *Coppola*, the court rejected the defendants' argument that the plaintiff's use of the phrase "hazardous substances" at certain points in the complaint (in addition to PCE-specific allegations) rendered the claims impermissibly vague. *Id.* The court also rejected the dry cleaning company operator's argument that the claims against it were insufficiently pled. "[T]he first amended complaint identifies [the operator defendant] as operating a dry cleaning business that released hazardous substances. This sufficiently alleges that [the operator] is a potentially liable party under [CERCLA and HSAA]." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)                    Date:  July 13, 2018
Title:    Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

- ***Estate of Renzel***: The plaintiffs, former owners of property on which a dry cleaning business was located and that was contaminated with PCE and "other solid and hazardous wastes," sued "28 defendants who allegedly operated [the dry cleaning business] from 1947 to 2012," seeking contribution for cleanup costs.  *Estate of Renzel v. Ventura*, No. 5:15-cv-01648-RMW, 2015 WL 8527522, at *1-2 (N.D. Cal. Dec. 11, 2015).  Three defendants who allegedly operated the dry cleaning business from 1986 to 1988 moved to dismiss, arguing that the operative complaint "fails [to] state a claim under CERCLA or the HSAA because it does not allege a general timeframe for when the alleged release of hazardous substances occurred or which specific hazardous substances were released."  *Id.* at *4.  The defendants relied upon *Coppola* for the proposition that "'a general timeframe, to the best of [plaintiff]'s ability, should be included'" in a complaint.  *Id.* (quoting *Coppola*, 935 F. Supp. 2d at 1009).  The court rejected this argument and denied the motion.  *Id.*  "[W]hile it is true that the timeframe covered by the [complaint] spans nearly 70 years, plaintiffs … allege that the [moving defendants] operated a dry cleaning business at the property from approximately 1986 to 1988" and "that PCE, one of the hazardous substances at issue, is used in the dry cleaning industry."  *Id.*  The complaint thus "provide[d] adequate notice regarding when the alleged releases of hazardous substances occurred."  *Id.*

With the release-related allegations in *Chubb I* (motion to dismiss granted) and *Tarob* (motion to dismiss denied) being the least specific, and those in *Roosevelt Irrigation District* (motion to dismiss denied) being the most specific, the Fifth Amended Complaint's release-related allegations concerning the Moving Defendants fall somewhere beyond the middle of the specificity spectrum.  For example, the Fifth Amended Complaint is more specific than *Chubb I, Chubb II*, and *Coppola* (motions to dismiss granted) insofar as it (like the complaint in *Estate of Renzel* (motion to dismiss denied)) provides a general time frame for the alleged release of PCE (continuously since 1994).  Unlike the complaint in *Coppola* and *Tarob* (motion to dismiss denied), the Fifth Amended Complaint specifies the hazardous substance that was allegedly released by the Moving Defendants (PCE), and provides some details concerning how

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)	Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

PCE may have been released (through the persistent use, storage and transportation of PCE-containing Safety-Kleen solution).  And like the complaint in *Roosevelt Irrigation District*, the Fifth Amended Complaint explains how the PCE that has allegedly been released on the Luppen Property could have made its way to the Plaintiffs' Property (via west-southwest-flowing ground water and soil vapor).

The only release-related allegations that are missing from the Fifth Amended Complaint are allegations concerning the precise time(s) and manner(s) of the alleged release(s) on the Luppen Property (*e.g.*, a forklift accidentally punctured a Safety-Kleen solution storage drum on May 10, 2007, spilling 32 gallons of used solution) and allegations that the Luppen Property itself suffers from elevated PCE levels.  But, as to timing and manner, a "plaintiff need not allege the particular manner in which a 'release' or 'threatened release' has occurred" and need only allege "a general time frame, to the best of [its] ability." *Coppola*, 935 F. Supp. 2d at 1007-08.  And there is no reason to presume that Plaintiffs – at this stage of the litigation, before any discovery has occurred – have had the ability to access the Luppen Property to conduct any soil/groundwater testing, or to determine the precise time and manner of any releases.

During the hearing, counsel for the Moving Defendants acknowledged the paucity of on-point case law and argued, more fundamentally, that Plaintiffs should not be permitted to proceed with this action against the Moving Defendants because it is clear that Plaintiffs are "just guessing" that there has been a release of PCE on the Luppen Property.  Putting the handful of in-Circuit CERCLA contribution cases discussed above to one side and focusing on the plausibility standards established in *Twombly*, *Iqbal*, and their Ninth Circuit progeny, the Court disagrees.  Given the nearly 30 years that have allegedly elapsed since PCE-containing substances have been utilized on Plaintiffs' Property (*see* 5AC ¶¶ 34, 59), the Moving Defendants' alleged daily use, storage, and periodic removal of PCE-containing Safety-Kleen solution on the Luppen Property since 1994, and the alleged natural flow of groundwater and soil vapor from the Luppen Property towards the Plaintiffs' Property, it is entirely plausible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)             Date:  July 13, 2018
Title:    Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

that at least some PCE has been "released" on the Luppen Property and has contributed to the contamination of the Plaintiffs' Property.

Plaintiffs have adequately alleged a "release" of PCE on the Luppen Property (the only CERCLA element that the Moving Defendants now challenge) and have thus stated a viable CERCLA response-cost-contribution claim.

It may be that Plaintiffs will ultimately have a difficult time establishing with any certainty that there has been a "release" of PCE on the Luppen Property. But Plaintiffs have alleged enough to move forward with discovery.

Accordingly, the Motion is **DENIED** as to Plaintiffs' CERCLA claim.

### B.    HSAA Claim

"The HSAA is California's counterpart" to CERCLA. *Orange County Water District v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 371, 222 Cal. Rptr. 3d 343 (2017). "Although the HSAA and CERCLA are not identical, the HSAA adopts CERCLA's standards for determining liability." *Id.* "A private cause of action under the HSAA therefore has the same elements as a cause of action under CERCLA." *Id.*; *see also Estate of Renzel*, 2015 WL 8527522, at *4-5 (evaluating CERCLA and HSAA claims together and denying motion to dismiss both).

As with Plaintiffs' CERCLA claim, the Moving Defendants attack Plaintiffs' HSAA claim on the sole basis that Plaintiffs have failed to plausibly allege a "release" of hazardous substances on/from the Luppen Property. (*See* Mot. at 11). As with Plaintiffs' CERCLA claim, the Court disagrees with the Moving Defendants.

Accordingly, the Motion is **DENIED** as to Plaintiffs' HSAA claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)						Date:  July 13, 2018
Title:	Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

### C. Implied Equitable Indemnity Claim

"The doctrine of equitable indemnification permits liability to be apportioned based on the relative culpability of wrongdoers." *HCC Life Ins. Co. v. Managed Ben. Adm'rs LLC*, No. 2:07-cv-02542-MCE-DAD, 2008 WL 2439665, at *5 (E.D. Cal. June 12, 2008) (citing *Miller v. Ellis*, 103 Cal. App. 4th 373, 379, 126 Cal. Rptr. 2d 667 (2002)). "Equitable indemnification 'is premised upon the principle that … *joint tortfeasors* should share in the burden of discharging the legal obligation to the injured party for the damages caused by their mutual negligence.'" *Id.* (quoting *Miller*, 103 Cal. App. 4th at 379-80) (emphasis in original). "As a condition of equitable indemnity, there must be some basis for tort liability against the proposed indemnitor, usually involving breach of a duty owed to the plaintiff." *Id.* (citing *Stonegate Homeowners Ass'n v. Staben*, 144 Cal. App. 4th 740, 751, 50 Cal. Rptr. 3d 709 (2006)).

In the Fifth Amended Complaint, Plaintiffs allege that "Defendants … have breached [their] duties of care and diligence by causing, allowing or permitting the discharge or release of hazardous substances at, on and under the Property or … neighboring properties." (5AC ¶ 86). "As a direct and proximate result of the actions or omissions of Defendants …, Plaintiffs have suffered and are continuing to suffer damages, including without limitation, the costs of investigating and remediating the contamination at the Property." (*Id.* ¶ 87). Plaintiffs allege that "Defendants … are obligated to reimburse and/or indemnify Plaintiffs for all costs and damages, including without limitation, those costs necessarily incurred in investigating and remediating the contamination at the Property and/or for any resultant liability to third parties, including the applicable governmental agencies." (*Id.* ¶ 90).

The Moving Defendants argue that "[e]quitable indemnity cannot be based on any violation of federal law; it can only be based on common law claims." (Mot. at 11-12) (citing *Gonzalez v. Harris Ranch Beef Co.*, No. 1:14-cv-00038-LJO-SAB, 2014 U.S. Dist. LEXIS 157244, at *4 (E.D. Cal. Nov. 5, 2014)). The Moving Defendants therefore argue that the equitable indemnity claim cannot be premised upon an underlying violation of CERCLA, and that the equitable indemnity claim fails because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)                    Date:  July 13, 2018
Title:     Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

the "Fifth Amended Complaint has alleged no negligence on the part of Moving Defendants." (Mot. at 12).

As an initial matter, *Gonzalez* – the sole authority the Moving Defendants cite in support of this argument – is an order directing the parties to file supplemental briefing regarding whether "a California claim of equitable indemnity can ever be premised upon an underlying violation of FACTA [the Fair and Accurate Credit Transactions Act]." *Gonzalez*, 2014 U.S. Dist. LEXIS 157244, at *5-6. It is hardly a clarion endorsement of the Moving Defendants' position that an equitable indemnity claim cannot be premised upon liabilities/expenses that flow from the violation of a statute. In any event, the second component of the Moving Defendants' argument is that the equitable indemnity claim is infirm because Plaintiffs have "alleged no negligence on the part of Moving Defendants." (Mot. at 12). As discussed below, the Court disagrees.

Accordingly, the Motion is **DENIED** as to Plaintiffs' equitable indemnity claim.

### D.    Continuing Private Nuisance Claim

In connection with their private nuisance claim, Plaintiffs allege that "[a]s a result of the unreasonable, negligent and injurious methods of operating their businesses and maintaining the Property or Neighboring Properties, the acts or omissions of Defendants … directly and proximately caused releases of hazardous substances into the environment, including on, at and under the Property or Neighboring Properties which have impacted the Property." (5AC ¶ 94). "The ongoing presence of the contamination from Defendants' releases of hazardous substances constitutes a continuing nuisance which has adversely impacted Plaintiffs' use and enjoyment of the Property." (*Id.* ¶ 96).

As with the CERCLA claim, the Moving Defendants' sole argument in support of dismissing the private nuisance claim is that Plaintiffs have not adequately alleged that there has been a release of hazardous substances on/from the Luppen Property. (*See* Mot. at 12). As with the CERCLA claim, the Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-686-MWF (PJWx)                    Date:  July 13, 2018
Title:    Alisu Investments, Ltd., et al. v. TriMas Corporation, et al.

Accordingly, the Motion is **DENIED** as to Plaintiffs' private nuisance claim.

### E.     Continuing Trespass Claim

The crux of Plaintiffs' continuing trespass claim is that "Defendants' actions and/or omissions have caused the releases of hazardous substances into the soil and subsurface at, on and under the Property or Neighboring Properties," and that, as a result, Plaintiffs' "Property has been contaminated by said releases of hazardous substances."  (5AC ¶ 102).

As with the CERCLA claim, the Moving Defendants' sole argument in support of dismissing the continuing trespass claim is that Plaintiffs have not adequately alleged that there has been a release of hazardous substances on/from the Luppen Property.  (*See* Mot. at 13).  As with the CERCLA claim, the Court disagrees.

Accordingly, the Motion is **DENIED** as to Plaintiffs' continuing trespass claim.

### F.     Negligence Claim

The crux of Plaintiffs' negligence claim is that "Defendants … owed a duty to Plaintiffs to exercise due care in handling, storing and using hazardous substances and hazardous wastes at the Property or Neighboring Properties," but that Defendants breached that duty because they "released, failed to prevent, or allowed the release of hazardous substances into the soil and subsurface at, on and under the Property or Neighboring Properties."  (5AC ¶¶ 112, 114).

As with the CERCLA claim, the Moving Defendants' sole argument in support of dismissing the negligence claim is that Plaintiffs have not adequately alleged that there has been a release of hazardous substances on/from the Luppen Property.  (*See* Mot. at 13).  As with the CERCLA claim, the Court disagrees.

Accordingly, the Motion is **DENIED** as to Plaintiffs' negligence claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 16-686-MWF (PJWx) | Date: July 13, 2018 |
| Title: Alisu Investments, Ltd., et al. v. TriMas Corporation, et al. | |

### G. Declaratory Relief Claims

Plaintiffs asserts one claim for declaratory relief under CERCLA and one common law claim for declaratory relief. (5AC ¶¶ 72-76, 116-118). In connection with both, Plaintiffs seek a declaratory judgment establishing the existence and extent of Defendants' liability for Plaintiffs' remediation and cleanup costs. (*Id.* ¶¶ 75, 117, 118).

The Moving Defendants, focusing solely upon the CERCLA declaratory relief claim, argue that Plaintiffs have not stated a viable CERCLA response-cost-contribution claim, and therefore have not stated viable declaratory relief claims. (*See* Mot. at 13-14). As discussed above, Plaintiffs have now stated a viable CERCLA response-cost-contribution claim against the Moving Defendants, so that is not a basis for dismissing the declaratory relief claims.

Accordingly, the Motion is **DENIED** as to Plaintiffs' CERCLA and common law declaratory relief claims.

### IV. CONCLUSION

For the foregoing reasons, the Motion is **DENIED** in its entirety.

The Moving Defendants shall answer the Fifth Amended Complaint by no later than **July 30, 2018**.

IT IS SO ORDERED.