1 | CROCKETT & ASSOCIATES
   Robert D. Crockett (Bar No. 105628)
2 |    *bob@bobcrockettlaw.com*
   Lisa Dearden Trépanier (Bar No. 156302)
3 |    *lisatrepanier@bobcrockettlaw.com*
   23929 Valencia Boulevard, No. 303
4 | Valencia, CA  91355
   Telephone:  (323) 487-1101
5 | Facsimile:  (323) 843-9711

6 | Attorneys for Defendants &
   Counterclaimants Metal Products
7 | Engineering, Luppe Ridgway Luppen, and
   Paula Busch Luppen

8 |

9 |                 UNITED STATES DISTRICT COURT

10 |        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11 |

12 | ALISU INVESTMENTS, LTD. and
    KARGO GROUP GP, LLC,

13 |

14 |                 Plaintiffs,

15 | v.

16 | TRIMAS CORPORATION d/b/a NI
    INDUSTRIES, INC., BRADFORD

17 | WHITE CORPORATION, LUPPE
    RIDGWAY LUPPEN, PAULA

18 | BUSCH LUPPEN, METAL
    PRODUCTS ENGINEERING,

19 |

20 | DEUTSCH/SDL, LTD., RHEEM
    MANUFACTURING COMPANY, and

21 | INFINITY HOLDINGS, LLC,

22 |                 Defendants.

23 |

24 | AND ALL COUNTERCLAIMS AND
    CROSSCLAIMS

25 |

---

CASE NO.: 2:16-cv-00686 MWF (PJWx)

**METAL PRODUCTS ENGINEERING, LUPPE LUPPEN, AND PAULA LUPPEN'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Date:  January 14, 2019
Time:  10:00 a.m.
Judge:  Honorable Michael W. Fitzgerald

Jury Trial:  August 13, 2019

CROCKETT &
ASSOCIATES
LOS ANGELES

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1

TABLE OF CONTENTS

2    I.      INTRODUCTION ............................................................................................. 1

3    II.     RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS ....................................... 2

4            A.   DTSC Did Not Authorize or Oversee the Creation or
                  Management of the Stockpiles ............................................................... 2
5
             B.   DTSC Considers Conditions at the Site to Be Hazardous ..................... 2
6
             C.   The Stockpiles were Created with Dirt from a Known
7                 Hazardous Site With No Data to Support the Absence of
                  Hazardous Substances ........................................................................... 3
8
             D.   The Stockpiles Have Not Been Consistently Covered Since
9                 October 2017 .......................................................................................... 5

10           E.   Plaintiffs Do Not Deny that Dust From Their Property Has
                  Been Blowing Onto the Luppen Property Since October 2017 ................ 6
11
     III.    ARGUMENT .................................................................................................. 6
12
             A.   Legal Standard ....................................................................................... 6
13
             B.   Metal Products Parties are Likely to Prevail on the Merits of
14                Their Claims at Trial .............................................................................. 7

15                1.   RCRA ............................................................................................ 7

16                2.   Private Nuisance ........................................................................... 9

17                3.   Public Nuisance ......................................................................... 10

18                4.   Trespass ..................................................................................... 11

19                5.   Unfair Business Practices – California Business &
                       Professions Code § 17200 ......................................................... 12
20
             C.   The Balance of Harm Tips Decidedly Toward Metal Products
21                Parties .................................................................................................. 13

22           D.   The Relief Requested is Straightforward ............................................. 15

23   IV.     CONCLUSION ............................................................................................. 16

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*All. for the Wild Rockies v. Cottrell,*

632 F.3d 1127 (9th Cir. 2011) .......................................................................... 7

*Crandall v. City & County of Denver,*

594 F.3d 1231 (10th Cir. 2010) ........................................................................ 7

*Garcia v. Google, Inc.,*

786 F.3d 733 (9th Cir. 2015) ........................................................................ 6, 7

*Hock v. Lockheed Martin Corp. (In re Burbank Envtl. Litig.),*

42 F. Supp. 2d 976 (C.D. Cal. 1998) ............................................................. 11

*Kornoff v. Kingsburg Cotton Oil Co.,*

45 Cal. 2d 265 (1955) ..................................................................................... 11

*Lambrinos v. Exxon Mobil Corp.,*

No. 1:00-CV-1734, 2004 U.S. Dist. LEXIS 19598 (N.D. N.Y. Sep. 29,

2004) .............................................................................................................. 7, 8

*Mangini v. Aero-jet General Corp.,*

12 Cal. 4th 1087 (1996) ................................................................................. 14

**STATUTES**

California Business & Professions Code section 17200 .................................... 12

California Business & Professions Code section 17203 .................................... 16

California Civil Code section 3479 .................................................................... 10

California Health & Safety Code section 41700(a) ........................................... 13

**RULES**

AQMD Rule 1466 ............................................................................................... 13

AQMD Rule 402 ................................................................................................. 13

AQMD Rule 403 ................................................................................................. 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### INTRODUCTION

Plaintiffs argue that Metal Products Parties are not entitled to a preliminary injunction because Plaintiffs' data -- which was been rejected by the DTSC -- is actually good data; dust from a site surrounded by DTSC-required "Hazardous Substance Area" signs is not really hazardous dust; Metal Products Parties have not quantified the number of dust particles blown onto their property; and a reasonable person would not be annoyed by having dust blow onto their property for over one year.

DTSC has definitively stated that it did *not* authorize, oversee, or approve the creation or management of the stockpiled dirt on Plaintiffs' property. Further, DTSC has rejected Plaintiffs' sampling of the stockpiles, stating it was not deep enough or thorough enough. Any statement by Plaintiffs that they have adequately tested the stockpiles to ensure no hazardous materials are present is wholly contradicted by DTSC.

Plaintiffs argue that they should not be forced by a mandatory injunction to remove 9,000 cubic yards of soil from their property. That is one solution to keeping Plaintiffs' dirt off the Luppen Property. Metal Products Parties in their motion suggested a number of other solutions, none of which will interfere with the testing and remediation of the hazardous materials admittedly on Plaintiffs' property. Plaintiffs complain that Metal Products Parties' requested injunction is too difficult to enforce and too vague. Metal Products Parties' request is actually quite simple: Plaintiffs must stop the dirt on their property from blowing onto the Luppen Property.

CROCKETT &
ASSOCIATES
LOS ANGELES

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

## II.

### RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

**A.      DTSC Did Not Authorize or Oversee the Creation or Management of the Stockpiles**

Plaintiffs' statement that "[s]ampling and management of the windrow stockpiles has been, and continues to be, under active DTSC oversight throughout 2018" is simply wrong.  Opposition ("Opp.") at 5.  The uncovered stockpiles were created at 4901 S. Boyle Avenue, Vernon ("Site") in October 2017.  *Id.* at 3-4.  DTSC stated:  "DTSC *has not approved any work that resulted in the creation of the soil stockpiles* on the Alisu property, and as a result there are no Best Management Practices that were required by DTSC for the management of the removed soil."  Dkt. 219-4 at 124 [July 18, 2018 letter from DTSC] (emphasis added).

The DTSC further stated:  The "data submitted by EAI on February 28, 2018 [regarding the stockpiles], and specifically the sampling density used to obtain that data . . . *was not obtained pursuant to any DTSC approved Workplan*."  Dkt. 219-4 at 123 [July 18, 2018 letter from DTSC] (emphasis added).  DTSC stated that soil samples from the stockpiles:

> were only collected from the surface of each Windrow.  Our clean fill guidance requires that samples are to be collected in a random stratified manner.

*Id.,* Exh. 25 at 112 [May 16, 2018 DTSC Comments on data submitted by EAI].

DTSC did not authorize, approve, oversee, or monitor the creation of the stockpiles or their sampling.  Plaintiffs' attempts to hide behind agency oversight fail as the DTSC has specifically disavowed any approval of Plaintiffs' stockpiled dirt.

**B.      DTSC Considers Conditions at the Site to Be Hazardous**

In February 2018, Plaintiffs posted signs along the perimeter fences at the

CROCKETT &
ASSOCIATES
LOS ANGELES

2

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1  Site which stated: "Site Contains Impacted Non-Hazardous Soil."  Dkt. 219-1 ¶¶

2  12-13, Exhs. 6-7 [Declaration of Luppe Luppen].  DTSC required Plaintiffs to

3  remove those signs and replace them with signs which state: "Caution: Hazardous

4  Substance Area."  *Id.* ¶ 13-14, Exh. 7-8 [L. Luppen Decl.].  Further, in March

5  2018, DTSC told Luppe Luppen that all persons working inside the Site, as well as

6  those working outside the Metal Products building on the Luppen Property should

7  wear personal protective equipment, including dust masks.  *Id.* ¶ 18; Dkt. 219-3 at

8  21.

9       As late as September 2018, DTSC ordered Plaintiffs to "properly dispose of

10  all hazardous waste currently on-site. . . . In particular, the stockpiles that are

11  already characterized as hazardous waste, currently stored on the ground, should be

12  containerized and properly disposed of off-site as they may constitute illegal

13  storage or disposal of a hazardous waste."  Dkt. 219-4, Exh. 24 at 102 [September

14  18, 2018 DTSC Comments on EAI's Response].

15       Plaintiffs' attempts to characterize its Site, the stockpiles, and the dirt as

16  non-hazardous is contradicted by DTSC.

17  **C.**    **The Stockpiles were Created with Dirt from a Known Hazardous Site**

18         **With No Data to Support the Absence of Hazardous Substances**

19       Plaintiffs admit the soil at the Site was found to be contaminated with

20  "arsenic, cadmium, cobalt, lead, thallium, petroleum hydrocarbons, and . . .

21  perchloroethylene ("PCE") . . . above the regulatory screening level."  Opp.

22  at 3.  Plaintiffs further admit that it is "technically true" that "soil

23  contaminated with . . . hazardous substances remains on site."  *Id.* at 6.

24       **TPH-D**:  Plaintiffs admit that soil containing TPH-D remains on site,

25  but claim as it is 12 feet underground, it "cannot be contributing to dust

26  allegedly traveling off the Property."  Opp. at 6.  Notably, Plaintiffs cite no

27  scientific authority for this proposition.  Plaintiffs cite to no evidence which

28  supports their attorney's statement that TPH-D will always remain where it

CROCKETT &
ASSOCIATES
LOS ANGELES
3
METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1   was found, and not migrate into the stockpiles.

2   **PCE**:  Plaintiffs admit that PCE was present in stockpiles which were

3   not removed from the Site *until last month*.  Opp. at 6.  In other words, PCE

4   was present in stockpiles for over one year, with contaminated soil blowing

5   off those stockpiles onto the Luppen Property.  Plaintiffs further admit that

6   other soil remains on site which contains PCE, but again they claim it is 12

7   feet below ground.  *Id.* at 7.  As discussed above, Plaintiffs offer no

8   scientific evidence that PCE will not migrate.  In fact, Plaintiffs' entire case

9   against Metal Products Parties is their allegation that PCE migrated from the

10   Luppen Property to the Site.  Dkt. 159 at 12 [Fifth Amended Complaint].

11   Plaintiffs cannot have it both ways.  They cannot insist it is safe to leave

12   PCE buried 12 feet underground at its Site, but sue Metal Products Parties

13   for allegedly having PCE in the soil at the Luppen Property (which Metal

14   Products Parties vigorously deny).

15   **Arsenic**:  Plaintiffs admit that soil containing arsenic above screening

16   levels "remains on site beneath Windrow 1."  Opp. at 7.  Again, with no

17   scientific evidence, Plaintiffs state that as the arsenic is "presently buried"

18   (at an unknown depth), it "cannot escape to the ambient air."  *Ibid.*  Plaintiffs

19   cannot claim that arsenic is buried, and is therefore safe.  If that were true,

20   they would not be remediating their Site.

21   **Cobalt:**  Plaintiffs admit that soil containing cobalt remains on site

22   "wrapped in heavy commercial grade plastic sheeting."  Opp. at 7.  Metal

23   Products Parties have seen what Plaintiffs think is "heavy commercial grade

24   plastic sheeting."  That "heavy commercial grade plastic sheeting" is in

25   actuality .25 millimeters thick, deteriorates easily, and sloughs off in shards

26   which have blown repeatedly onto the Luppen Property.  Dkt. 219-1 ¶¶ 24,

27   26, 37-38, Exhs. 18-19, 22 [L. Luppen Decl.].  Plaintiffs cite to no authority

28   that it is scientifically or otherwise acceptable to leave hazardous chemicals

CROCKETT &
ASSOCIATES
LOS ANGELES

4

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1   on their Site so long as they are wrapped in plastic.

2           Soil from the heavily contaminated Site was used to create the

3   stockpiles (Opp. at 3-4) and, as discussed above, the DTSC wholly rejected

4   Plaintiffs' sampling of the stockpiles.  To date, there is no data which

5   conclusively states what is in the stockpiles.  *Id.* at 5.  Plaintiffs admit they

6   have no properly collected data characterizing what hazardous materials are

7   in the stockpiles.  Dkt. 26-11 ¶ 10 [Declaration of Steven Bright].  All we

8   know at this point is that the stockpiles were created from a known

9   hazardous site and that TPH-D, PCE, arsenic, and cobalt remain in the soil at

10  the Site.  Plaintiffs cannot hide behind their rejected data to justify

11  stockpiling uncharacterized dirt and allowing it to blow onto the Luppen

12  Property.

13  **D.      The Stockpiles Have Not Been Consistently Covered Since October 2017**

14          Plaintiffs' statement that the windrows have been covered "with

15  heavy commercial-grade plastic sheeting, secured by sandbags, which have

16  remained through the present" (Opp. at 4) is contradicted by the numerous

17  photographs submitted by Metal Products Parties showing the stockpiles

18  repeatedly uncovered.  Dkt. 219-1 ¶¶ 6-11, 16-17, 19-23, 27, Exhs. 1-5, 10-

19  11, 13-17, 20 [L. Luppen Decl.].  Further, the photographs and testimony of

20  Mr. Luppen demonstrate the plastic sheeting is not "heavy commercial-

21  grade," but is .25 millimeters thick, essentially the consistency of household

22  trash bags.  *Id.* ¶ 37-38, Exh. 22.  Further, Plaintiffs' statement that EAI "has

23  visited the Property at twice per week since February 2018" (Opp. at 4) to

24  observe and cover the stockpiles is belied again by the numerous

25  photographs of uncovered stockpiles.  Further, several days go by between

26  Metal Products Parties' complaints about the uncovered stockpiles and

27  Plaintiffs' contractors arriving to repair holes and tears.  Dkt. 219-1 ¶ 35 [L.

28  Luppen Decl.].

CROCKETT &
ASSOCIATES
LOS ANGELES

5

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1    Plaintiffs claim that "'[t]he use of a soil stabilizer/dust suppressant . . .

2  is being evaluated to potentially replace the plastic sheeting presently being

3  used on the windrows' as a primary dust control method."  Opp. at 5.  Metal

4  Products Parties have been suggesting such a dust control method for

5  months.  The fact that Plaintiffs are currently "evaluating" this solution does

6  not equate to a solution.

7  **E.      Plaintiffs Do Not Deny that Dust From Their Property Has Been**

8  **         Blowing Onto the Luppen Property Since October 2017**

9    Metal Products Parties have submitted evidence that from October 24,

10  2017 to the present, dirt and shards of plastic sheeting from the Site has been

11  personally observed blowing onto the Luppen Property.  Dkt. 219-1 ¶¶ 5-6

12  [L. Luppen Decl.].  Metal Products Parties have submitted photographs

13  showing dirt circulating in the air from the uncovered stockpiles at the Site.

14  *Id.* ¶¶ 7-8, 11, Exhs. 1-2, 5.  They have also submitted evidence of dirt from

15  the Site clogging their air conditioning unit.  *Id.* ¶ 15, Exh. 9.

16    Plaintiffs do not dispute this evidence; they merely make the

17  unsupported statement that Mr. Luppen's personal observations are

18  insufficient and complain that Metal Products Parties have not "quantified"

19  the dust and plastic.  Opp. at 12.

20                                   **III.**

21                                 **ARGUMENT**

22  **A.     Legal Standard**

23    Plaintiffs seek to characterize the injunction sought as a "mandatory

24  injunction" which "is doubly demanding."  Opp. at 8, citing *Garcia v. Google,*

25  *Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  It is true that Metal Products Parties

26  would like to see the stockpiles completely removed from the Site, thus completely

27  solving the problem which has persisted for 15 months.  However, that is not the

28  only solution.  In the alternative, Metal Products Parties seek a "'prohibitory

CROCKETT &
ASSOCIATES
LOS ANGELES

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1   injunction' that would prohibit the responding party from taking certain action."

2   *Ibid.*  Metal Products Parties simply want to prohibit Plaintiffs from allowing their

3   dirt to blow onto the Luppen Property.  Issuing such a "prohibitory injunction"

4   carries a much lower standard.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

5   1131-1132 (9th Cir. 2011).

6   **B.      Metal Products Parties are Likely to Prevail on the Merits of Their**

7   **Claims at Trial**

8          Metal Products Parties' claim is simple: there is dirt on Plaintiffs' property

9   which is constantly blowing onto the Luppen Property.  Plaintiffs refuse to take

10  precautions to stop this from happening.  Metal Products Parties have alleged

11  several causes of action, and they assert they have met the elements of each as

12  discussed below.  However, in order for this Court to issue a preliminary injunction

13  to stop the dirt from blowing onto the Luppen Property, the Court need find Metal

14  Products Parties are likely to prevail on only one of their related causes of action.

15         **1.      RCRA**

16         Proving an "imminent and substantial endangerment to health or the

17  environment" under 42 U.S.C. section 6972(a)(1)(B) does not require a showing of

18  actual immediate harm, but only the risk of threatened harm.  *Crandall v. City &*

19  *County of Denver*, 594 F.3d 1231, 1238 (10th Cir. 2010) (solid waste presents an

20  "endangerment if harm may result absent further remedial measures.").  The fact

21  that a state agency has invested substantial resources in an investigation and does

22  plan to remediate, albeit at some unknown date, is proof of imminent and

23  substantial endangerment.  *Lambrinos v. Exxon Mobil Corp.*, No. 1:00-CV-1734,

24  2004 U.S. Dist. LEXIS 19598, *15 (N.D. N.Y. Sep. 29, 2004).  Plaintiffs and

25  DTSC have entered into an Amended Voluntary Cleanup Agreement which

26  envisions a remediation plan.  Dkt. 220, Exh. 33 [Request for Judicial Notice].

27         Plaintiffs again attempt to rely on their rejected data that the "samples taken

28  from the windrow soil to date have not shown any hazardous substance above a

CROCKETT &
ASSOCIATES
LOS ANGELES

7

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1    screening level."  Opp. at 10.  In their Opposition, Plaintiffs cite to their rejected

2    data repeatedly.  *DTSC has rejected this data.*  Plaintiffs attempt to prove a

3    negative with rejected data – that is impossible.  The data cannot prove the absence

4    of hazardous substances because the samples were too shallow and too few.

5           Plaintiffs complain that Metal Products Parties have not presented any

6    expert or scientific evidence that the windrows contain any hazardous substances.

7    Opp. at 11.  Plaintiffs have already provided that data: the stockpiles were created

8    from a known hazardous waste site with elevated levels of arsenic, cadmium,

9    cobalt, lead, thallium, petroleum hydrocarbons, and PCE.  *Id.* at 3.  Plaintiffs have

10   admitted that it is "technically true" that soil with elevated levels of TPH-D, PCE,

11   arsenic, and cobalt remains on site.  *Id.* at 6-7.  That evidence, combined with the

12   fact that DTSC "has invested substantial resources in an investigation and does

13   plan to remediate" is proof of "imminent and substantial endangerment."

14   *Lambrinos* at *15.

15          Plaintiffs state incorrectly that the only evidence Metal Products Parties

16   submitted that the Luppen Property is downwind of the Site is Mr. Luppen's

17   declaration. Opp. at 11.  That is incorrect.  Metal Products Parties also cited

18   Plaintiff's own 2015 report which states:

19          For determining wind direction, EAI went on-line to the SCAQMD

20          website to locate the closest meteorological station, which is the

21          Central LA Station.  Central LA Station data indicate the predominate

22          [sic] wind direction is southwesterly; i.e., wind blowing to the

23          northeasterly.

24   Dkt. 219-4, Exh. 27 at 138 [July 16, 2015 EAI Phase II Site Assessment].

25   Plaintiffs' own site map shows the Luppen Property is located to the north of

26   the Site.  Dkt. 226-3, Exh. 2 at 29 [Plaintiffs' Site Plan map].

27

28

CROCKETT &
ASSOCIATES
LOS ANGELES

8

**METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

## 2.      Private Nuisance

Plaintiffs seek to impose evidentiary requirements on Metal Products Parties unsupported by the law.  Plaintiffs argue that Metal Products Parties offer no evidence that dust is spreading from the Site to the Luppen Property other than "Mr. Luppen's observations and several still photographs."  Opp. at 12.  What other evidence do Plaintiffs expect Metal Products Parties to offer?  Mr. Luppen, who is at the Luppen Property five to six days per week, 50 feet from the stockpiles, has observed and photographed dust blowing from the Site onto the Luppen Property on numerous occasions from October 2017 to the present.  Dkt. 219-1 ¶¶ 5-6 [L. Luppen Decl.].  This is sufficient and undisputed evidence.

Plaintiffs further complain that Metal Products Parties have not offered evidence "quantifying the dust and plastic" which has spread to the Luppen Property.  Opp. at 12.  Legally, it is irrelevant exactly how many grains of dust or shards of plastic have blown onto the Luppen Property.  It is a nuisance regardless of the quantity.  Plaintiffs claim Metal Products Parties has not confirmed "the source of the dust and plastic."  *Ibid.*  Mr. Luppen himself watched the dust blow from the Site onto the Luppen Property.  Dkt. 219-1 ¶¶ 5-6.  He observed the thin white plastic sheeting deteriorating and sloughing off shards at the Site, which he then observed on the Metal Products roof and parking lot and on the intervening railroad tracks.  *Id.* ¶¶ 37-38, 40.  That confirms the source.

Plaintiffs claim that Metal Products Parties have not quantified the "degree of interference . . . the dust and plastic have caused to its enjoyment and use of the property."  Opp. at 12.  The law does not require such an unquantifiable showing. Metal Products Parties have submitted evidence that their contractors working outside are required by the DTSC to wear protective equipment; they are required to clean dust and plastic off their parking lot; and they are required to expend extra money maintaining their HVAC unit.  Dkt. 219-1 ¶¶ 15, 18, 37-40.  No landowner "may make an unreasonable use of his own premises to the material injury of his

1   neighbor's property." *McIntosh v. Brimmer,* 68 Cal. App. 770, 776, 778-779 [230

2   P. 203] (1924) (citing numerous cases where dust blowing onto property was held

3   to be a nuisance and trespass).

4         Plaintiffs further complain that Metal Products Parties have not

5   demonstrated that "the dust would annoy or disturb a reasonable person."  Opp. at

6   12-13.  Do Plaintiffs actually believe that a reasonable person would not be

7   annoyed or disturbed by dust blowing onto their property for over one year?  Mr.

8   Luppen is annoyed and disturbed.  Dkt. 219-1 ¶¶ 18, 40.  Plaintiffs have failed to

9   show that Mr. Luppen is not a reasonable person.

10         Plaintiffs claim Metal Products Parties have not shown the dust poses a

11   health hazard (Opp. at 13); however, that is not a requirement of proving a

12   nuisance.  The law only requires proof that Plaintiffs created a condition that is

13   injurious to health *or* offensive to the senses *or* an obstruction to the free use of

14   property.  California Civil Code § 3479.  Further, Mr. Luppen's testimony

15   demonstrates that the dust does pose a health hazard, as he experienced intense

16   burning when dust from the Site got in his eye.  Dkt. 219-1 ¶ 40.

17         Plaintiffs argue that their investigation and remediation of hazardous

18   substances is a public benefit.  Opp. at 13.  That may very well be.  However,

19   Plaintiffs are obligated to conduct their investigation and remediation in such a

20   way as to avoid creating a private or public nuisance.  DTSC has not ordered

21   Plaintiffs to stockpile dirt at the Site; that is Plaintiffs' choice.  Controlling the dust

22   from the stockpiles does not in any way interfere with Plaintiffs' investigation and

23   remediation.  They can, and should, do both.

24         **3.      Public Nuisance**

25         Dust from the Site is blowing not just onto the Luppen Property – that is

26   surely impossible.  Metal Products Parties have submitted numerous photographs

27   showing dust from the Site circulating in the air.  Such dust is being deposited not

28   only on the Luppen Property, but on neighboring properties as well.  Several food

10

1    manufacturers, including Nanka Siemen and Yi Bao Produce, are downwind of the

2    Site.  Dkt. 219-1 ¶ 30 [L. Luppen Decl.].  Metal Products Parties have put forth

3    evidence that dust from the Site is blowing onto the Burlington North railroad

4    tracks.  *Id.* ¶ 5.  Thick layers of dust from the Site lay several inches thick on the

5    railroad tracks.  *Ibid.*  Because this dust has never been removed from the railroad

6    tracks, it will continue to blow throughout the neighborhood.

7         **4.     Trespass**

8         Plaintiffs argue that *Kornoff v. Kingsburg Cotton Oil Co.*, 45 Cal. 2d 265,

9    273 [288 P. 2d 507] (1955) is inapplicable because the plaintiff was "required to

10   prove a cognizable harm."  Opp. at 14-15, citing *Kornoff*, 45 Cal. 2d at 273, 275.

11   Plaintiff's argument is inapt because Metal Products *has* proved a cognizable

12   harm. The Court in *Kornoff* stated that the:

13        coating of dust and lint and ginning waste [on plaintiffs' property]

14        was specifically found to be a trespass and an injury to the real

15        property.  The annoyance and discomfort suffered by plaintiffs as a

16        result of the injury to the real property is a natural consequence

17        thereof.

18   45 Cal. 2d at 273.  The court found that this constituted trespass.  *Id.* at 272.

19   Likewise, the court in *Hock v. Lockheed Martin Corp. (In re Burbank Envtl.*

20   *Litig.)*, 42 F. Supp. 2d 976, 984 (C.D. Cal. 1998) held that "Lockheed's demolition

21   of its plant and remediation of other contamination caus[ing] dust and debris to be

22   deposited on plaintiffs' property" could constitute trespass and nuisance.  The

23   court further held that these "claims of trespass and nuisance are abatable."  *Id.* at

24   984-985.

25        Metal Products Parties have introduced evidence of their annoyance and

26   discomfort from dust and pieces of plastic blowing onto their roof, parking lot, and

27   air conditioning unit, as well as dust from the plastic getting in Mr. Luppen's eye

28   while he was cleaning up his property.  Dkt. 219-1 ¶¶ 6, 15, 24, 26, 37-38, 40.

CROCKETT &
ASSOCIATES
LOS ANGELES

11

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1       Plaintiffs argue they were not negligent because DTSC and AQMD have

2   overseen and continue to oversee Plaintiffs' management and testing of the

3   windrows.  Opp. at 15.  As discussed above, that is not correct.  DTSC specifically

4   stated it did not approve any work which created the stockpiles and is not

5   managing the stockpiles.  Further, Plaintiffs point to no evidence that DTSC has

6   authorized dirt blowing off the stockpiles onto the Luppen Property as part of the

7   investigation and remediation process.  Plaintiffs have a duty to manage the dirt in

8   the stockpiles regardless of the status of the investigation and remediation of their

9   Site.

10      **5.**    **Unfair Business Practices – California Business & Professions**

11      **Code § 17200.**

12      Plaintiffs' admitted purpose for stockpiling the dirt at the Site is they hope to

13  use it for "clean fill" to "raise the foundation of any new building constructed on

14  the site."  Opp. at 5.  They claim it will cost them $526,000 to remove the dirt from

15  the Site. *Id.* at 6.  It is "unlawful" and "unfair" for Plaintiffs to be allowed to

16  stockpile unmanaged dirt on their property, hoping it is not hazardous, because

17  they do not want to pay to dispose of or manage the dirt and they want to use it to

18  build in the future.  If Plaintiffs want to store "clean fill" dirt at the Site, they must

19  demonstrate it is, actually, "clean fill."  And they must keep it *on their Site*.

20  Allowing the dirt to blow around the neighborhood for years, regardless of the cost

21  to contain it or remove it, is "unlawful" and "unfair."

22      The "business practice" Metal Products Parties seek to enjoin is Plaintiffs'

23  mismanagement of its stockpiles, not the investigation and remediation of the Site.

24  With or without DTSC or AQMD oversight, Plaintiffs cannot skirt the law by

25  refusing to spend the money necessary to contain their dirt.

26      The fact that Plaintiffs have not been cited for any violations does not mean

27  they are acting lawfully.  Both AQMD and DTSC have issued several orders

28  regarding the stockpiles; however, the problems continue.  Dkt. 226-7 at 2 [AQMD

CROCKETT &
ASSOCIATES
LOS ANGELES

12

1  Notice to Comply]; Dkt. 219-4 at 95 [DTSC order to re-sample the stockpiles].  As

2  this Court is well aware, municipal governments and state agencies have limited

3  resources.  Plaintiffs cite no authority that they are in compliance with California

4  Business & Professions Code section 17200 just because they have never been

5  cited for violation of law.

6       Plaintiffs are discharging "air contaminants *or other material* which cause

7  injury, detriment, nuisance, or annoyance" in violation of AQMD Rule 402 and

8  California Health & Safety Code section 41700(a).  They are also allowing

9  "emissions of fugitive dust" from an "open storage pile" in violation of AQMD

10  Rule 403.

11       Plaintiffs are in violation of AQMD Rule 1466 which contains requirements

12  for "[a]n owner or operator conducting earth-moving activities that result in the

13  development of stockpiles of any soil with applicable toxic air contaminant(s)."

14  AQMD Rule 1466(e)(4).  Plaintiffs excavated (included in the definition of "earth-

15  moving activities") soil and used it to create stockpiles.  Opp. at 3-4.  That brings

16  them within Rule 1466.  Plaintiffs cannot prove anything about the contents of the

17  stockpiles because of their rejected data.  According to Plaintiffs' own reports,

18  arsenic, cadmium, and lead were found in soil at the Site above agency screening

19  levels.  Opp. at 3.  Plaintiffs admit that arsenic "remains on-site beneath Windrow

20  1." *Id.* at 7.  As long as arsenic is in the soil, Rule 1466 applies.  Plaintiffs cannot

21  use their own negligently gathered shallow samples to take them out of Rule 1466.

22  Metal Products Parties agrees that sampling the stockpiles is excluded from Rule

23  1466's scope.  However, Plaintiffs' excavation which resulted in stockpiles which

24  admittedly have arsenic in the soil beneath, fits precisely within Rule 1466's scope.

25  **C.**    **The Balance of Harm Tips Decidedly Toward Metal Products Parties**

26       Plaintiffs argue that Metal Products' damaged HVAC equipment, the

27  Luppens' mental anguish, and the presence of "litter" are all acceptable because

28  they are "traditionally redressable with monetary damages." Opp. at 19.  In other

CROCKETT &
ASSOCIATES
LOS ANGELES

13

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1   words, Plaintiffs argue it is completely fine for them to continue to allow dust and

2   plastic from their partially uncovered stockpiles to blow onto the Luppen Property,

3   potentially for years to come until the Site is remediated and new construction

4   begins at the Site.  Plaintiffs think they can just throw some money at Metal

5   Products Parties when this is all over with and all will be well.  All is not well, nor

6   has it been since at least October 2017.  Plaintiffs cannot continue to violate

7   RCRA, nuisance and trespass laws, California statutes, AQMD rules, and City of

8   Vernon ordinances with the excuse that they will pay "monetary damages" later,

9   especially when the condition is abatable.

10         A preliminary injunction requiring Plaintiffs to keep their dirt to themselves

11   will solve this problem, stop the monetary damages already incurred, and put

12   things right between neighbors.

13         Plaintiffs attempt to characterize the "balance of equities" as some minor

14   HVAC costs, burning eyes, and mental anguish on the part of Metal Products

15   Parties versus $526,000 to remove the dirt on the part of Plaintiffs.  As stated

16   previously, removing the dirt from the Site is one choice.  There is another choice:

17   employ all necessary dust suppression methods to ensure that dust never leaves the

18   stockpiles.

19         Metal Products Parties offered several alternate solutions of dust suppression

20   methods instead of removing the stockpiles.  If the nuisance is "abatable,"

21   Plaintiffs must abate it.  *Mangini v. Aero-jet General Corp.*, 12 Cal. 4th 1087, 1098

22   [51 Cal. Rptr. 2d 272 (1996).  Plaintiffs have produced no evidence of the cost of

23   any of these alternate dust suppression methods, but surely they do not cost

24   $526,000.  Such alternatives include:  applying a soil stabilizer/dust suppressant to

25   the stockpiles (which apparently Plaintiffs are "evaluating"); applying water to the

26   stockpiles regularly; reconfiguring the stockpiles or the fencing so the stockpiles

27   are shorter than the perimeter fence; continuous ambient air monitoring;

28   completely cover the stockpiles with 10-millimeter-thick plastic sheeting that

CROCKETT &
ASSOCIATES
LOS ANGELES

14

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1   overlaps a minimum of 24 inches (not the .25 millimeter plastic sheeting currently

2   being used); and/or daily inspect the stockpiles.

3          Using one or more of these industry-standard dust suppression methods

4   would not "upend the cooperative process EAI and Plaintiffs have been engaged in

5   with" AQMD or DTSC.  Opp. at 20.  Plaintiffs have offered no evidence that any

6   of these methods would interfere in any way with the investigation and

7   remediation occurring or planned for the Site.  Even if this Court were to order the

8   removal of the stockpiles, Plaintiffs offer no proof that "such an order would

9   actually harm the public interest and override the agencies' considered plan for

10  remediating the Property."  *Id.* at 21.  Neither the original nor the amended

11  Voluntary Cleanup Agreement contains any reference to the stockpiles or their role

12  in any "considered plan for remediating the Property."  Dkt. 226-2; Dkt. 220, Exh.

13  33.  By Plaintiffs' own admission, the stockpiles are merely for their own selfish

14  interest to use as "clean fill . . . to raise the foundation of any new building

15  constructed on the site."  *Id.* at 5.

16         Further, Metal Products Parties do not want to "halt" Plaintiffs' project.  As

17  long-time residents of the neighborhood, they want the Site cleaned up as much as

18  anyone.  But Plaintiffs may not trample on all other laws and regulations in the

19  name of "investigation and remediation."  Plaintiffs cite no authority that they are

20  allowed to spread dust all over the Luppen Property and the rest of the

21  neighborhood because they are cleaning up the hazardous waste on their own

22  property.

23  **D.     The Relief Requested is Straightforward**

24         Metal Products Parties' requested relief is not vague or overbroad.  They

25  merely want Plaintiffs to stop allowing dirt from the Site to blow onto the Luppen

26  Property.  The law requires Plaintiffs to do this; however, they are not doing it.

27  Metal Products Parties therefore come to this Court requesting a simple order.

28  This Court has authority under RCRA, California Business & Professions Code

CROCKETT &
ASSOCIATES
LOS ANGELES

15

METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1 | section 17203, and the Federal Rules of Civil Procedure to grant the injunctive

2 | relief requested.

3

4 | **IV.   CONCLUSION**

5 | Metal Products Parties respectfully ask this Court to issue an injunction to

6 | stop dust from Plaintiffs' property from blowing onto the Luppen Property.

7

8 | DATED:  December 31, 2018          CROCKETT & ASSOCIATES

9

10 | By_____

11 | Robert D. Crockett

12 | Lisa Dearden Trépanier
Attorneys for Metal Products Engineering,

13 | Luppe Ridgway Luppen, and Paula Busch

14 | Luppen

4841-2075-8404, v. 1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROCKETT &
ASSOCIATES
LOS ANGELES

16

**METAL PRODUCTS, L. LUPPEN, & P. LUPPEN'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**