CROCKETT & ASSOCIATES
   Robert D. Crockett (Bar No. 105628)
   *bob@bobcrockettlaw.com*
   Lisa Dearden Trépanier (Bar No. 156302)
   *lisatrepanier@bobcrockettlaw.com*
23929 Valencia Boulevard, No. 303
Valencia, CA  91355
Telephone:  (323) 487-1101
Facsimile:  (323) 843-9711

Attorneys for Defendants &
Counterclaimants Metal Products
Engineering, Luppe Ridgway Luppen, and
Paula Busch Luppen

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALISU INVESTMENTS, LTD. and KARGO GROUP GP, LLC, <br><br>                    Plaintiffs, <br><br> v. <br><br> TRIMAS CORPORATION d/b/a NI INDUSTRIES, INC., BRADFORD WHITE CORPORATION, LUPPE RIDGWAY LUPPEN, PAULA BUSCH LUPPEN, METAL PRODUCTS ENGINEERING, DEUTSCH/SDL, LTD., RHEEM MANUFACTURING COMPANY, and INFINITY HOLDINGS, LLC, <br><br>                    Defendants. | CASE NO.: 2:16-cv-00686 MWF (PJWx) <br><br> **DECLARATION OF ROBERT D. CROCKETT** <br><br> Honorable Michael W. Fitzgerald <br><br> Jury Trial:  February 4, 2020 |
| AND ALL COUNTERCLAIMS AND CROSS-CLAIMS | |

I, Robert D. Crockett, declare as follows:

1.      I am counsel to defendants Luppe and Paula Luppen and Metal Products Engineering in this case.  I make this declaration in support of Defendants' Motion for Sanctions.  I have first-hand knowledge of all matters referenced herein.

2.      As ordered by this Court, we appeared in a mediation before Retired Judge George King on March 1, 2019.

3.      Plaintiff proposed a set of terms about an hour into the mediation. About 30 minutes later, my clients responded with counter terms.

4.      At about 2:00 p.m., Judge King called me into his office along with plaintiff's counsel, Martin Quinones.  Judge King said that Mr. Quinones had to leave.  Judge King said that Mr. Quinones' client was not present at the mediation and Mr. Quinones needed until the next Wednesday (March 6, 2019) to consult with his client to respond to our terms, which had been pending several hours.  I stated my objection to the fact that Mr. Quinones' client was not present.  This was the first time I was aware of such fact.

5.      On March 5, 2019, I wrote to Mr. Quinones and asked him to reimburse the Luppens for their attorney's fees and mediator fees.  A true and correct copy of my letter to Mr. Quinones is attached hereto as Exhibit 1.

6.      Mr. Quinones did not respond to my clients' proposal by March 6, 2019, as promised.  The next day, March 7, 2019, Mr. Quinones responded with a letter, a true and correct copy of which is attached hereto as Exhibit 2.  My client has consistently remained ready and willing to accommodate test drilling and has never stated a contrary intent.

7.      My billing rate on this matter is $550 per hour.  I spent 10 hours preparing for and attending the mediation.  On behalf of my clients, my firm paid $5450 to JAMS as the Luppens' share of the mediator's fee.

1        I declare under penalty of perjury under the laws of the United States that

2  the foregoing is true and correct and that this declaration was executed at Valencia,

3  California on March 13, 2019.

4

5                                Robert D. Crockett

6

7  4840-9719-5145, v. 2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROCKETT &
ASSOCIATES
LOS ANGELES

3

**Declaration Of Robert D. Crockett**

# Exhibit 1

# Crockett & Associates

Robert D. Crockett

23929 Valencia Boulevard No. 303
Valencia, California 91355
323-487-1101 | 323-843-9711 fax
bob@bobcrockettlaw.com

March 5, 2019

Martin D. Quinones, Esq.
Sher Edling LLP
100 Montgomery Street, Suite 1410
San Francisco, CA 94104

Re:    Alisu Investments, Ltd. v. TriMas Corp., et al.

Dear Marty:

I was dismayed to learn at 2:30 p.m. on Friday, March 1 at the mediation that your clients could not respond to our last, very reasonable counterproposal to resolve the final open points between us and reach a partial settlement because your clients "weren't there," and that you were leaving the mediation at that time.

Failure to have a party present at the mediation is not good faith, is contrary to the court's order directing the parties to mediate, and is a violation of Local Rule 16-15.5(b).

All the principals of my clients attended Friday's session with me, as did their environmental expert.

I request that your clients:

1.    Reimburse my clients for my time in the mediation and reasonable preparations for it, as well as 100% of the cost of the mediation itself, including the JAMS space, the mediator, and any associated expenses.  My time alone, at 10 hours and $550 per hour, is $5500.

2.    Dismiss my clients from your action.

Exhibit 1

Page 2
March 5, 2019

      If you are unwilling to fully reimburse my clients as outlined above, this letter constitutes the opening effort to meet and confer pertaining to our motion for sanctions and termination.  Please respond no later than March 7, 2019.

      I also enclose a draft report to file with the court for your consideration.

Very truly yours,

Robert D. Crockett
Crockett & Associates

4818-7432-4873, v. 1

Exhibit 1

# Exhibit 2

# SHER EDLING LLP

*PROTECTING PEOPLE AND THE PLANET*

March 7, 2019

_Via E-Mail and First-Class Mail_

Robert D. Crockett
Crockett & Associates
23929 Valencia Boulevard, Suite 303
Valencia, CA 91355
bob@bobcrockettlaw.com

      Re:    *Alisu Invests. Ltd. & Kargo Group GP, LLC v. Trimas Corp. et al.*
                Case No. 2:16-CV-00686 MWF (PJWx) (C.D. Cal.)

Dear Bob,

    We are surprised and dismayed by your March 5, 2019 letter, as it misrepresents facts and is directly at odds with statements made by Judge King at the mediation.

    As an initial matter, your assertion that we were not able to reach a settlement because Plaintiffs "weren't there" is especially perplexing.  As both Judge King and I stated during the mediation, I terminated the session after more than four hours because your clients' demands were unreasonable, and we did not believe further discussion at our clients' expense would be productive.  Among other things, the Luppens demanded that Plaintiffs provide onerous, detailed, and frequent reporting that is not required by either the AQMD or DTSC.  Toward the end of the mediation, the Luppens were both moving the goalposts and requesting relief to which they have no legal right.

    Your assertion that Plaintiffs mediated in such bad faith as to justify sanctions is entirely off-base. First, the court required the parties to mediate within 45 days, and March 1 was the only date the parties were able to arrange for a mediation.  Second, despite the short notice, the client was available by phone throughout the day, was apprised of the activities in the mediation, and made the final determination concerning the Luppens' last offer.  Third, Local Rule 16-15 states that the ADR procedures apply to a proceeding "unless otherwise ordered by the . . . neutral."  Here, we alerted the mediator to the fact that the client would be available by phone ahead of time.  Fourth, sanctions are not warranted for failure to personally attend, where as here, there is no evidence of any bad faith action.  *AmTrust Bank v. Didion*, No. EDCV0902307JVSANX, 2011 WL 13223896, at *2 (C.D. Cal. Jan. 28, 2011) *Drop Stop LLC v. Jian Qing Zhu*, No. CV 16-07916-AG (SSX), 2017 WL 3433695, at *2 (C.D. Cal. June 30, 2017).  For the reasons set forth herein, there is clearly no bad faith.  Additionally, at the Luppens' suggestion, the mediation was scheduled for only a half day, and we participated for the full scheduled period.  We were unable to reach a resolution by the end of that time, so we terminated the mediation.

    Finally, during the brief joint meeting between you, myself, and Judge King at approximately 2:30, you accused me and my clients of not mediating in good faith, and that the

# Exhibit 2

Robert D. Crockett
March 7, 2019
Page 2

mediation was a "subterfuge" to attempt to elicit your client's scientific or expert opinions concerning the case outside the discovery process. Judge King responded by stating he believed Plaintiffs had conducted the mediation in good faith and that we had made progress toward potential resolution.

In spite of the Luppens' unreasonable position, Plaintiffs remain willing to discuss a resolution of the Luppen's counterclaims. Such discussion must follow testing on the Luppens' property. However, Plaintiffs have served an inspection demand with which the Luppens have yet to comply in violation of their obligation under the Federal Rules of Civil Procedure. Testing on the property will be mutually beneficial to both parties and will facilitate settlement discussions.

Plaintiffs are already performing under the direction of AQMD or DTSC—e.g. stabilization to be affirmatively approved by DTSC and AQMD—satisfying many of the demands made at the mediation. We have sought one thing, which you yourself requested in open court (See e.g. July 9, 2018 Motion to Dismiss Transcript at 10:3-10:7) – inspection of your client's property pursuant to Rule 34. In sharp contrast, your client demands actions unavailable under the law and inconsistent with the government agency's instructions. To set the record straight, the mediation failed because your client's demands were outlandish. We remain willing to resolve this case against your client but not before our site inspection is completed.

Sincerely,

Martin D. Quiñones

cc:    Matthew K. Edling

Exhibit 2

