VICTOR M. SHER (SBN 96197)
vic@sheredling.com
MATTHEW K. EDLING (SBN 250940)
matt@sheredling.com
ADAM M. SHAPIRO (SBN 267429)
adam@sheredling.com
MARTIN D. QUIÑONES (SBN 293318)
marty@sheredling.com
TIMOTHY R. SLOANE (SBN 292864)
tim@sheredling.com
**SHER EDLING LLP**
100 Montgomery St., Suite 1410
San Francisco, CA 94104
Tel: (628) 231-2500
Fax: (628) 231-2929

*Attorneys for Plaintiffs ALISU INVESTMENTS, LTD, and KARGO GROUP GP, LLC*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALISU INVESTMENTS, LTD. and KARGO GROUP GP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TRIMAS CORPORATION d/b/a/ NI INDUSTRIES, INC., BRADFORD WHITE CORPORATION, LUPPE RIDGWAY LUPPEN, PAULA BUSCH LUPPEN, METAL PRODUCTS ENGINEERING, DEUTSCH/SDL, LTD., RHEEM MANUFACTURING COMPANY, and INFINITY HOLDINGS, LLC,<br><br>Defendants.<br><br>AND ALL COUNTERCLAIMS | Case No. 2:16-CV-00686 MWF (PJWx)<br><br>Honorable Michael W. Fitzgerald<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY PRE-TRIAL SCHEDULING ORDER**<br><br>Date: May 6, 2019<br>Time: 10:00 AM<br>Judge: Hon. Michael W. Fitzgerald<br><br>Jury Trial: February 4, 2020 |

**PLAINTIFFS' MOTION TO MODIFY PRE-TRIAL SCHEDULING ORDER;
CASE NO. 2:16-CV-00686 MWF (PJWX)**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on May 6, 2019, at 10:00 a.m. at 350 W. 1st Street, in Courtroom 5A, of the United States District Court for the Central District of California, before the Honorable Michael W. Fitzgerald, Plaintiffs and Counterdefendants Alisu Investments, Ltd., and Kargo Group GP, LLC, will move and hereby move to modify and amend the Court's Order re Jury Trial (Doc. 233, Jan. 4 2019), to continue the date of trial from February 4, 2020 to November 3, 2020, and adjust pre-trial dates accordingly.

This motion is made following the conference of counsel for all parties pursuant to Local Rule 7-3, which occurred between March 15, 2019 and April 2, 2019. Plaintiffs' motion is based on Plaintiffs' inability to complete fact and expert discovery within the current pre-trial schedule, due to ongoing regulatory obligations under the California Department of Toxic Substances Control that have prevented and are preventing Plaintiffs from gathering indispensable liability and damages evidence.

Dated: April 2, 2019

**SHER EDLING LLP**

By: */s/ Martin D. Quiñones*
VICTOR M. SHER
MATTHEW K. EDLING
MARTIN D. QUIÑONES
TIMOTHY R. SLOANE
ADAM M. SHAPIRO

*Attorneys for Plaintiffs ALISU INVESTMENTS, LTD, and KARGO GROUP GP, LLC*

# TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................1

II.   PROCEDURAL HISTORY ..............................................................................3

III.  RELEVANT FACTS..........................................................................................5

    a.   Three Month DTSC Approval Timeline for Foundation Slab Removal and Groundwater Monitoring Well Installation Workplan .....6

    b.   Months-Long DTSC Approval Timeline for Groundwater Monitoring Report, and Soil Sampling and Management Plan ..............7

    c.   Months-Long DTSC Approval Timeline for Supplemental Site Assessment II, and Supplemental Site Assessment III Workplan ..........8

    d.   Months-Long DTSC Approval Timeline Anticipated for Feasibility Study and Human Health Risk Assessment ...........................................9

    e.   Concurrent Off-Site Subsurface Investigation .........................................9

IV.   ARGUMENT ....................................................................................................10

    a.   Legal Standard........................................................................................10

    b.   Plaintiffs Have Diligently Prosecuted This Case and Investigated Their Property Under Agency Oversight Despite Unforeseen Delays. 11

    c.   Submission and Approval of the Human Health Risk Assessment and Feasibility Study are Critical to Presenting Plaintiffs' Liability and Damages Case...................................................................................13

V.    CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Fed. Deposit Ins. Corp. As Receiver for Butte Cmty. Bank v. Ching*,
  No. 213CV01710KJMEFB, 2016 WL 1756913 (E.D. Cal. May 3, 2016) ......... 11

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir.1992) ................................................................................ 10

*Mangini v. Aerojet-Gen. Corp.*,
  230 Cal. App. 3d 1125 (Cal. Ct. App. 1991) ...................................................... 13

*San Diego Gas & Elec. Co. v. Superior Court*,
  13 Cal. 4th 893 (1996) ........................................................................................ 13

*Sharp v. Covenant Care LLC*,
  288 F.R.D. 465 (S.D. Cal. 2012) ........................................................................ 10

*Stoddart v. Express Servs.*,
  No. 212CV01054KJMCKD, 2017 WL 3333994 (E.D. Cal. Aug. 4, 2017) ....... 10

**Statutes**

42 U.S.C. § 9607 ........................................................................................................ 1
42 U.S.C. § 9613(f)(1) ............................................................................................. 14

**Rules**

Fed. R. Civ. P. 16 ..................................................................................................... 10

## I. INTRODUCTION

Plaintiffs Alisu Investments, Ltd., and Kargo Group GP, LLC ("Plaintiffs") hereby move for a modification of the Court's Order re Jury Trial (Doc. 233, Jan. 4 2019), continuing the date of trial from February 4, 2020 to November 3, 2020, and adjusting pre-trial dates accordingly. Plaintiffs' request is based on their continuing compliance with regulatory requirements from the California Department of Toxic Substances Control ("DTSC"), which will yield indispensable damages and liability evidence upon its completion. Plaintiffs' investigatory efforts under DTSC oversight, as memorialized in the Stipulations filed on January 3, 2018 and December 24, 2018 (Doc. Nos. 131, 227), have taken substantially longer than anticipated due to the DTSC regulatory process, and cannot be completed before the current fact and expert discovery cut-off dates.

Plaintiffs are the owners of real property located at 4901 S. Boyle Ave. in Vernon, California (the "Property"), which is subject to a Voluntary Cleanup Agreement ("VCA") between Plaintiff Alisu Investments, Ltd., and DTSC. Plaintiffs have asserted claims against the Defendants under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607 ("CERCLA"), and California law, alleging that the conduct of each Defendant contributed to contamination detected at the Property, principally from volatile organic compounds ("VOCs").

As described in greater detail below, Plaintiffs have been actively investigating subsurface conditions at the Property since 2016 under DTSC oversight. Despite Plaintiffs' diligent efforts to complete the investigation and determine the scope and method of remediation required by DTSC for the Property, the regulatory process has been repeatedly delayed by features of concern discovered following the demolition of a building on the Property, and months-long wait times for DTSC to comment on and approve reports and workplans. As such, Plaintiffs have been stymied from developing critical liability and damages evidence

1 necessary for adjudication of their claims. The most important remaining steps in the regulatory process are Plaintiffs' submission and DTSC's approval of a Human Health Risk Assessment ("HHRA") and a Feasibility Study ("FS"), which will respectively determine the risk of harm to human health and the environment posed by contamination at the Property, and determine the strategy for completing the assessment and remediating that contamination. Together, approval of both documents by DTSC will provide critical, irreplaceable evidence concerning the degree of harm to Plaintiffs' Property, and the cost Plaintiffs will incur to remediate that harm.

Plaintiffs originally estimated that submission and approval of the HHRA and FS would be completed by December 2018, and later estimated that they could be submitted and approved within the first quarter of 2019. However, DTSC did not approve site assessment reports submitted in October 2018 that were necessary for the completion of the Human Health Risk Assessment and Feasibility Study until March 1, 2019. Plaintiffs have therefore been unable to submit the HHRA and FS, despite their diligent efforts. Based on its response times to date, DTSC is unlikely to approve those documents earlier than July or potentially August 2019. Under the current scheduling order, fact discovery closes June 4, 2019, and expert discovery closes on July 23, 2019. It is virtually certain Plaintiffs' submissions will be not be reviewed and approved by those dates. Plaintiffs will be prejudiced in presentation of their claims unless these regulatory steps, which they have worked with all due speed to advance, are completed and their results introduced into evidence.

Plaintiffs therefore move this Court to modify the trial and pre-trial dates in this matter according to the timetable in the accompanying Proposed Order. Plaintiffs have met and conferred with counsel for all Defendants concerning the relief requested herein. Defendant Bradford White Corp. does not oppose the motion, and Defendants' Rheem Manufacturing Corp. and Deutsch/SDL Ltd. have not taken a position; Defendants TriMas Corp., Infinity Holdings, LLC, Luppe

Ridgeway Luppen, Paula Busch Luppen, and Metal Products Engineering do not agree to Plaintiffs' requested relief.[1]

## II. PROCEDURAL HISTORY

Plaintiffs filed this action against TriMas Corp. on February 1, 2016 (Doc. 1) and filed First and Second Amended Complaints on March 24, 2016 and April 12, 2016, respectively (Doc. 12 & 16). After initiating document discovery on TriMas, Plaintiffs filed a Third Amended Complaint on September 13, 2016 (Doc. 37), adding defendant Bradford White Corp. and another defendant who has since been voluntarily dismissed. On March 6, 2017, the Court issued an Order re Jury Trial setting various pre-trial dates, setting trial for August 14, 2018. Doc. 68.

On September 13, 2017, pursuant to dates stipulated between Plaintiffs, TriMas, and Bradford White, Plaintiffs filed a Fourth Amended Complaint, adding defendants Luppe Ridgway Luppen, Paula Busch Luppen, Metal Products Engineering (the "Luppen Defendants"); Rheem Manufacturing Company; Deutsch/SDL, Ltd.; Infinity Holdings, LLC; and an additional defendant who has since been voluntarily dismissed. Doc. 82.

On January 3, 2018, the parties stipulated to modify the Order re Jury Trial, to permit the new defendants time to "meaningfully participate in discovery" and obtain a "full and fair opportunity to develop and present their defenses in this action." Doc. 131 at 2–3. The Order granting the stipulation continued trial and pre-trial deadlines approximately 12 months, and scheduled trial for August 13, 2019.

Plaintiffs represented in the January 3, 2018 stipulation that they had been diligently investigating the contamination at the Property under DTSC oversight, including the submission of a Groundwater Monitoring Well/Nested Soil Vapor Probe Report to DTSC on November 28, 2017, and that Plaintiffs would be "required

---

[1] Declaration of Martin D. Quiñones at ¶2. All exhibit numbers listed herein refer to exhibits to the Declaration of Martin D. Quiñones, submitted herewith.

to await comments from DTSC on the Groundwater Monitoring Well/Nested Soil Vapor Probe Report, then draft and submit a Human Health Risk Assessment and await comments from DTSC on that Assessment, then draft and submit a Feasibility Study and Remedial Action Plan." Doc. 131 at 2. Plaintiffs represented and believed that work could "not be completed earlier than December 2018, based on Plaintiffs' reasonable estimates of the time required to produce and submit the required reports and await comments and guidance from DTSC." *Id.* Plaintiffs further asserted and believed "that fact and expert discovery in this action cannot reasonably be completed until after Plaintiffs' Human Health Risk Assessment and Feasibility Study are completed, submitted, and approved by DTSC." *Id.* at 3.

On December 24, 2018, the parties stipulated to stay discovery for 120 days with certain carve-outs, and modify the trial and pre-trial dates such that non-expert discovery would cut off June 4, 2019, expert discovery would cut off July 23, 2019, and trial would commence February 4, 2020. Doc. 227. Plaintiffs represented that they had been diligently continuing to investigate the contamination at their Property under DTSC oversight throughout 2018, including the submission of groundwater monitoring reports, a supplemental site assessment report, and a further site assessment workplan, each of which are described in more detail below. *Id.* at 1–2. Plaintiffs agreed to produce newly generated reports and data related to the DTSC investigation during the stay, which was intended to "provide time for Plaintiffs to advance their regulatory investigation under the DTSC, and provide time for the Parties to pursue potential settlement and resolution." *Id.* at 2. Despite Plaintiffs' previous best estimate that the regulatory process would be complete by December 2018, at the time of the December 24, 2018 stipulation DTSC had required additional data collection at the site before it would accept a HHRA and FS, and those documents had not yet been submitted. *See* Parts III.a–d, *infra*.

### III. RELEVANT FACTS

During the pendency of this litigation, Plaintiffs' investigation of the contamination at their Property has been repeatedly hampered and delayed by months-long turn-around times for comments on and approval of regulatory submissions to DTSC. As a result, despite Plaintiffs best efforts and best estimates, Plaintiffs have not yet been able to submit the Human Health Risk Assessment and Feasibility Study which are vital to an adequate and accurate determination of the degree of harm to Plaintiffs' Property, Plaintiffs' remediation costs, and allocation of responsibility among the Defendants.

On August 1, 2016, Plaintiff Alisu Investments, Ltd., and DTSC executed a Voluntary Cleanup Agreement, under which Plaintiffs agreed to investigate and remediate potential contamination from volatile organic compounds in the Property's soil, soil gas, and groundwater. Ex. 1, VCA (Aug. 1, 2016).[2] Under the VCA, Alisu agreed to perform "all work required" by DTSC, with the express limitation that "[all] work performed pursuant to this Agreement is subject to DTSC's review and approval." *Id.* at §§ 6, 15. DTSC had and has the right to comment on and request modifications to any report, plan, or schedule provided by Plaintiffs before those documents are approved. *Id.* at § 15. The Agreement expressly states that "informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings" cannot take the place of written approval, which DTSC must provide for any such submissions. *Id.*

---

[2] Certain reports, approval letters, and other regulatory documents related to Plaintiffs' investigation of the Property are available at DTSC's EnviroStor website, at the following URL:
https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60002375
Where possible, URLs for specific documents are provided in the Declaration of Martin D. Quiñones, submitted herewith.

**PLAINTIFFS' MOTION TO MODIFY PRE-TRIAL SCHEDULING ORDER;**
**CASE NO. 2:16-CV-00686 MWF (PJWX)**  5

SHER EDLING LLP

Plaintiffs conducted investigatory work both prior to execution of the VCA, and throughout 2016, under DTSC oversight. As relevant to this Motion, Plaintiffs' efforts to diligently sample and characterize contamination at the Property throughout 2017 and 2018 are summarized below.

### a. Three Month DTSC Approval Timeline for Foundation Slab Removal and Groundwater Monitoring Well Installation Workplan

On December 16, 2016, Plaintiffs' environmental consultant Environmental Audit, Inc. ("EAI") submitted a workplan to DTSC proposing to install three ground water monitoring wells in addition to three wells already present on the Property, remove a large foundation slab on the Property, and conduct sampling and testing of the subsurface soil beneath the foundation slab. DTSC did not provide comments on and approve the workplan until March 10, 2017, and in its approval letter instructed EAI to sample for additional potential contaminants and investigate other potential features of concern. *See* Ex. 2 March 10, 2017 Letter from Folashade Simpson to Aliza Karney Guren. On April 6, 2017, DTSC recommended locations for the three new groundwater monitoring wells to be installed on-site. *See* Ex. 3, April 6, 2017 Email from Folashade Simpson to Steve Bright. Between June 12 and June 29, 2017, EAI and its subcontractors installed the groundwater monitoring wells pursuant to the workplan. Ex. 4, Groundwater Monitoring Wells/Nested Soil Vapor Probes Installation Report at 4–8 (Nov. 28, 2017). The groundwater monitoring wells were first sampled on July 21, 2017. *Id.* On July 17, 2017, EAI and its contractors began removal of the foundation slab and assessment of the soil beneath it and features of concern identified therein. *See* Ex. 5, Supplemental Site Assessment II at 2 (October 18, 2018). As noted above, EAI submitted a report to DTSC on November 28, 2017, entitled Groundwater Monitoring Wells/Nested Soil Vapor Probes MW-4/SVP-4, MW-5/SVP-5 and MW-7 Installation Report, that reported on groundwater contamination data gathered from the groundwater wells installed earlier in the year.

SHER EDLING LLP

**PLAINTIFFS' MOTION TO MODIFY PRE-TRIAL SCHEDULING ORDER; CASE NO. 2:16-CV-00686 MWF (PJWX)**

6

*See generally* Ex. 4, Groundwater Monitoring Wells/Nested Soil Vapor Probes Installation Report at 1–11.

Excavation of the foundation slab revealed multiple previously unknown features of concern, including underground vaults, drainage troughs, and staining indicating the potential presence of heavy metals. Because the new features of concern required substantial additional investigation and required removal of hundreds of tons of contaminated and potentially contaminated soil from the Property, the work associated with completing the workplan was not finished until November 3, 2017. *See* Ex. 6, February 28, 2018 Letter from Brian Beltz to Michael Haynes.

### b. Months-Long DTSC Approval Timeline for Groundwater Monitoring Report, and Soil Sampling and Management Plan

On February 22, 2018, EAI received a Notice to Comply from the South Coast Air Quality Management District ("AQMD") stemming from a complaint lodged by counsel for Defendants Luppe Luppen, Paula Luppen, and Metal Products Engineering, asserting that soil stockpiles generated during removal and investigation of the foundation slab were being mismanaged, and contained or could contain hazardous substances. *See* Ex. 7, February 15, 2019 Letter from Folashade Simpson to Aliza Karney Guren. DTSC indicated that it was jointly investigating the management of the stockpiles with AQMD. *See id.* at 1. The Notice to Comply requested details concerning the creation and management of the stockpiles, to which EAI responded on February 28, 2018 and provided a copy of its response to DTSC. *Id.*; Ex. 6. DTSC did not provide comments on EAI's response until May 29, 2018, requesting additional information; EAI responded on June 29, 2018 and simultaneously submitted a workplan to further test and characterize soil within the stockpiles. *See* Ex. 7 at 2. DTSC requested additional information again on September 18, 2018, and met with EAI staff October 16, 2018 to discuss the stockpile investigation workplan and the groundwater monitoring conducted to date.

*Id.* DTSC did not finally approve the workplan to complete sampling and characterization of the stockpiles until December 10, 2018. *Id.* Sampling pursuant to the workplan was conducted immediately thereafter on December 12 and 13, 2018, with representatives from DTSC and AQMD present. *Id.* EAI submitted a report on the results of that sampling on January 7, 2019, *see* Ex. 8 February 21, 2019 Letter from Brian Beltz to Folashade Simpson and Michael Haynes, which DTSC approved on February 15, 2019, finding that the stockpiles do not contain hazardous substances. Ex. 7 at 3.

      **c.    Months-Long DTSC Approval Timeline for Supplemental Site Assessment II, and Supplemental Site Assessment III Workplan**

While DTSC and AQMD conducted their year-long investigation of the soil stockpiles on the Property, EAI expeditiously sought to advance investigation of the Property's subsurface. On October 18, 2018, following the October 16 meeting described above, EAI submitted a comprehensive report to DTSC entitled Supplemental Site Assessment II, discussing and interpreting the extensive work conducted to characterize and remediate the features of concern identified during the foundation slab removal, and the groundwater and soil vapor data gathered to date on the Property. *See generally* Ex. 5, Supplemental Site Assessment II at 1–4, 76–81. On October 19, 2018, EAI submitted a workplan to DTSC to conduct an additional supplemental site assessment, titled Supplemental Site Assessment III Workplan, proposing in relevant part the installation of two additional on-site groundwater monitoring wells, and four off-site wells. *See* Ex. 9, Supplemental Site Assessment III Workplan (October 19, 2018). DTSC responded on October 26, 2018, requesting that the workplan be expanded to conduct additional soil vapor characterization work on the western portion of the Property. Ex. 10, October 26, 2018 Email and Attached Letter from Folashade Simpson to Steve Bright. EAI provided an addendum to the workplan proposing additional soil vapor to comply

with that request on November 30, 2018. Ex. 11, November 30, 2018 Letter from Steve Bright to Folashade Simpson.

DTSC did not provide comments on the Supplemental Site Assessment II, the Supplemental Site Assessment III Workplan, and the work plan addendum until February 12, 2019, Ex. 12, February 12, 2019 Email and Attached Letter from Folashade Simpson to Steve Bright, and did not finally approve the three documents until March 1, 2019. *See* Ex. 13, March 1, 2019 Email from Folashade Simpson to Steve Bright. EAI commenced work under the workplan as soon as possible thereafter, installing the new soil vapor probes and on-site groundwater monitoring wells throughout the month of March. *See* Ex. 14, Compilation of March 2019 Emails from Steve Bright to Folashade Simpson.

### d. Months-Long DTSC Approval Timeline Anticipated for Feasibility Study and Human Health Risk Assessment

The next regulatory step Plaintiffs must take is the submission of the Human HHRA and FS, as required by the VCA. *See* Ex. 15, Amendment to VCA at §§ 2, 3.2. The HHRA will specify the potential health risks posed by the intended future uses of the Property based on the extensive data gathered, and the FS will present the recommended cleanup strategy to eliminate and monitor contaminants detected on the Property. EAI plans to submit the HHRA to DTSC on or about April 9, 2019, and submit the HHRA in April 2019. Based on the timing of DTSC's responses to submissions to date, Plaintiffs anticipate DTSC will not provide comments on and approve the Human HHRA and FS earlier than July 2019, after both fact discovery and expert discovery under the current scheduling order have closed.

### e. Concurrent Off-Site Subsurface Investigation

Concurrent with the on-site testing described above, EAI is preparing to conduct soil gas and groundwater sampling at four off-site locations east and northeast of the Property, beneath Boyle Avenue and Leonis Boulevard. As noted above, the Supplemental Site Assessment III Workplan proposed installing

groundwater monitoring wells and nested soil vapor probes, subject to approval of a licensing agreement with the City of Vernon since the wells would be installed beneath active city streets. *See* Ex. 9, Supplemental Site Assessment III Workplan at 4. Installation of those wells is scheduled to occur during three of in April 2019 and one weekend in May 2019, with a first round of sampling to be completed by the end of May. The location of those wells was selected based on the current direction of groundwater flow, such that data gathered from those wells will likely show the concentration of contaminants flowing toward the Property via regional groundwater flow.

## IV. ARGUMENT

### a. Legal Standard

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) (citing Fed. R. Civ. P. 16 advisory committee notes (1983 amendment)). Good cause may be found where the moving party shows that "it is unable to comply with the scheduling order's deadlines due to matters not reasonably foreseeable at the time the scheduling order issued, and that it was diligent in seeking a modification once it became apparent it could not comply with the scheduling order." *Sharp v. Covenant Care LLC*, 288 F.R.D. 465, 467 (S.D. Cal. 2012). The existence or degree of prejudice to the party opposing the modification may be considered, but it is secondary to the moving party's reasons for seeking modification. *Johnson*, 975 F.2d at 609; *see also Stoddart v. Express Servs.*, No. 212CV01054KJMCKD, 2017 WL 3333994, at *2 (E.D. Cal. Aug. 4, 2017) (granting motion to modify pre-trial scheduling order where movant demonstrated good faith and diligence in discovery,

1  and opposing parties would not be prejudiced). Motions to modify scheduling orders
2  are more favored when "the need to amend arises from some unexpected or outside
3  source." *Fed. Deposit Ins. Corp. As Receiver for Butte Cmty. Bank v. Ching*, No.
4  213CV01710KJMEFB, 2016 WL 1756913, at *2 (E.D. Cal. May 3, 2016).

   **b.    Plaintiffs Have Diligently Prosecuted This Case and Investigated Their Property Under Agency Oversight Despite Unforeseen Delays.**

At each stage of this litigation, Plaintiffs have worked expeditiously to advance the investigation of its Property pursuant to its VCA with DTSC, but has been unable to complete portions of the investigation that are critical to presenting evidence of both liability and damages. In particular, Plaintiffs have been unable to submit the HHRA and FSA due to additional investigation ordered by DTSC concerning the soil stockpiles on-site that required nearly a year to complete, and because DTSC has repeatedly taken months to comment on and approve reports submitted by EAI.

At the time of the January 3, 2018 stipulation that scheduled trial for February 2019, EAI had completed removal of the foundation slab and analysis of the features of concern discovered thereunder, and had installed groundwater monitoring wells to monitor soil gas and groundwater contamination in the Property's subsurface. Plaintiffs anticipated at that time that investigation of the Property and the accompanying regulatory processes would be completed by December 2018. Due to the joint DTSC and AQMD investigation of the soil stockpiles that began in February, 2018, however, EAI was required to provide substantial additional information and conduct additional analysis, to demonstrate that the soil stockpiles were non-hazardous and were being appropriately managed. As noted above, DTSC took three months to respond to the information EAI provided regarding the windrows in February 2018, and another three months to respond to supplemental information EAI provided in May 2018.

Importantly, because the investigation of the stockpiles is part and parcel of the same investigation EAI is conducting into the Property's subsurface, all of which is subject to the VCA, Plaintiffs were substantially delayed in advancing the overall investigation of the Property until the supplemental investigation of the stockpiles was complete. Under the terms of the VCA, no work may be completed and Plaintiffs and EAI may not move to a new stage of the investigation without DTSC approval. *See* Ex. 1, VCA at §15. Because DTSC took more than three months to comment on information provided by EAI concerning the stockpiles (between February and May 2018), and an additional three months to comment again on EAI's responses (between June and September 2018), EAI could not submit the Supplemental Site Assessment II and Supplemental Site Assessment III Workplan until mid-October, 2018, and could not submit the requested Supplemental Site Assessment III Workplan Addendum until November 30, 2018. The substantial additional work required concerning the soil stockpiles was not foreseeable at the time of the January 2018 stipulation, nor were the prolonged response times from DTSC for EAI's various submissions.

At the time of the December 24, 2018 stipulation continuing the pre-trial deadlines and staying discovery, DTSC had been in possession of the Supplemental Site Assessment II and Supplemental Site Assessment III Workplan for nearly two months, and the Supplemental Site Assessment III Workplan Addendum for nearly a month. Plaintiffs reasonably believed at that time that DTSC would timely respond to and approve those documents, and that EAI would soon thereafter be able to submit the required HHRA and FS, which could then be reviewed and approved within the remaining time for fact discovery, i.e. before June, 2019. However, DTSC did not approve those documents until March 1, 2019, and EAI has therefore been unable to submit the HHRA and FS until April, despite diligently conducting all work approved by DTSC to date. As such, it is unlikely that DTSC will review and approve the HHRA and FS prior to July 2019, based on its timeline for responding

to reports and submissions to date. In sum, the nearly four months DTSC took to approve the Supplemental Site Assessment II and Supplemental Site Assessment III Workplan, and the resulting delays were not foreseeable at the time of the December 2018 stipulation.

    **c. Submission and Approval of the Human Health Risk Assessment and Feasibility Study are Critical to Presenting Plaintiffs' Liability and Damages Case.**

Plaintiffs represented in the January 2018 stipulation their belief "that fact and expert discovery in this action cannot reasonably be completed until after Plaintiffs' Human Health Risk Assessment and Feasibility Study are completed, submitted, and approved by DTSC." Doc. 131 at 3. That remains true. The HHRA will determine the degree of risk the contamination presents to human health and the environment, which is critical to Plaintiffs' presentation of their claims, in particular as to their nuisance and trespass claims. That is, Plaintiffs' nuisance and trespass claims both require a showing of the degree of interference to Plaintiffs' use and enjoyment of the Property,[3] and DTSC's approval of the HHRA will provide essential evidence concerning the degree to which use of the Property has been impacted or limited by subsurface contamination that Plaintiffs allege was caused by Defendants' conduct. Absent this evidence, all parties' fact and expert discovery will be severely hampered.

Similarly, DTSC's approval of the FS will be critical to determining the scope of Plaintiffs' remediation costs that may be recoverable under their CERCLA claims. That is, Plaintiffs may recover under CERCLA costs incurred in response to contamination at the Property not inconsistent with the national contingency plan,

---

[3] *See, e.g.*, *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 937 (1996) (private nuisance claim requires "proof of interference with the plaintiff's use and enjoyment of [plaintiff's] property"); *Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125, 1141 (Cal. Ct. App. 1991) (trespass requires proof of "unlawful interference with possession of property").

SHER EDLING LLP

**PLAINTIFFS' MOTION TO MODIFY PRE-TRIAL SCHEDULING ORDER;**
**CASE NO. 2:16-CV-00686 MWF (PJWX)**

13

and may also be entitled to a declaratory judgment on liability for future costs for such response. *See id.* at §§ 9607(a)(4)(B), 9613(2)(B). The FS, once approved, will provide critical evidence concerning the costs Plaintiffs will incur in responding to contamination at the Property, because it will determine the form and scope of remediation Plaintiffs will be required to perform on the Property's soil, soil gas, and potentially groundwater. Approval of the FS will cordon the reasonable range of costs Plaintiffs will ultimately be required to expend, which will both critically inform Plaintiffs' presentation of their case and provide important certainty to settlement discussions. The VCA expressly provides that "[a]ll DTSC approvals and decisions regarding submittals and notifications will be communicated to [Plaintiffs] in writing," and that "[n]o informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by [Plaintiffs] shall be construed to relieve [Plaintiffs] of the obligation to obtain such written approvals." Ex. 1, VCA at §15. Accordingly, Plaintiffs cannot reasonably determine, or estimate with precision, the scope of their likely remediation costs until the Feasibility Study is approved.

Additionally, the off-site groundwater sampling to be conducted beneath Boyle Avenue and Leonis Boulevard will substantially inform the contribution to contamination at the Property from off-site sources. That is, because those groundwater monitoring wells are sampling from locations that are believed to be upgradient in terms of regional groundwater flow, the differential between data gathered from them and data gathered on the Property will show whether contaminants are more highly concentrated upgradient (tending to indicate that contaminants are flowing onto the Property), or more highly concentrated on the Property (tending to indicate that contamination originated on-site). This data will be important to determining the allocation of responsibility among any responsible parties under Plaintiffs' CERCLA claims. *See* 42 U.S.C. § 9613(f)(1). As noted above, data from those wells is unlikely to be gathered before late May, making such

data extremely difficult for the parties to incorporate into their expert analysis during expert discovery in June 2019.

In sum, Plaintiffs and their consultant have worked as diligently and swiftly as possible to investigate the contamination in the Property's subsurface, but have been repeatedly and unforeseeably delayed by additional investigatory requests from DTSC, and repeated delays in DTSC's responding to Plaintiffs' and EAI's reports and submissions. For these reasons, Plaintiffs will be unable to present critical liability and damages evidence before the close of fact and expert discovery, until the HHRA and FS are submitted, reviewed, and approved by DTSC. Likewise, Plaintiffs will be unable to gather critical off-site evidence going to allocation of responsibility among the parties before mid- to late-May, which will not provide sufficient time for the parties to incorporate that data into their expert analyses. The proposed modifications to the Court's Order re Jury Trial will provide the necessary time to complete those regulatory steps, taking into account the potentiality that DTSC will take longer than anticipated to respond the EAI's submission.

## V. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court's Order re Jury Trial be modified to continue the trial and pre-trial dates in this matter according to the dates listed in the Proposed Order submitted herewith.

Dated: April 2, 2019          **SHER EDLING LLP**

By: */s/ Martin D. Quiñones*
    VICTOR M. SHER
    MATTHEW K. EDLING
    MARTIN D. QUIÑONES
    TIMOTHY R. SLOANE
    ADAM M. SHAPIRO

*Attorneys for Plaintiffs ALISU INVESTMENTS, LTD, and KARGO GROUP GP, LLC*