

**Alisu Invests. Ltd. & Kargo Group GP, LLC v. Trimas Corp. et al., Case No.
2:16-CV-00686 MWF (PJWx)**

Marty Quiñones   to: pjw_chambers@cacd.uscourts.gov          03/21/2019 04:34 PM
Cc:  Matt Edling, Adam Shapiro, Lisa Trepanier, Robert Crockett

| | |
|---|---|
| From: | Marty Quiñones <marty@sheredling.com> |
| To: | "pjw_chambers@cacd.uscourts.gov" <pjw_chambers@cacd.uscourts.gov> |
| Cc: | Matt Edling <matt@sheredling.com>, Adam Shapiro <adam@sheredling.com>, Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>, Robert Crockett <bob@bobcrockettlaw.com> |

History:          This message has been replied to.

2 attachments



2018-09-24 Metal Products' Response Ps' Inspection Demand.pdf

2018-08-21 DEMAND FOR ENTRY SET ONE METAL PROD AND LUPPEN.pdf

Your Honor,

Plaintiffs Alisu Investments Limited and Kargo Group GP, LLC ("Plaintiffs") and Defendants Luppe Luppen, Paula Busch Luppen, and Metal Products Engineering ("Defendants") have reached an impasse on a discovery dispute in the above-captioned matter, and request your guidance. Counsel for the parties have met and conferred according to Your Honor's Procedures concerning Discovery Motions, and Plaintiffs request a telephonic conference with counsel for Plaintiffs, counsel for Defendants, and Your Honor to attempt to resolve the dispute without the need for motion to compel. Counsel for Defendants have been copied on this email.

The dispute arises from a Demand for Inspection that Plaintiffs served on Defendants on August 21, 2018. The Demand and Defendants' Objections are attached hereto. Plaintiffs and Defendants are the owners of adjoining real properties in Vernon.  Plaintiffs allege that certain operations at the property owned by Defendants have caused environmental contamination at Plaintiffs' property for which Plaintiffs allege Defendants are liable under the Comprehensive Environmental Response, Compensation, and Liability Act 42 U.S.C. § 9601 et seq. ("CERCLA") and multiple California laws. Plaintiffs' property is currently vacant, pending redevelopment.  Defendants' property is currently being used as a metal-stamping manufacturing facility. Independent of the litigation, Plaintiffs' property is being investigated under a voluntary cleanup agreement with the California Department of Toxic Substances Control ("DTSC"). Because subsurface environmental testing has never been conducted at Defendants' property, Plaintiffs' Demand for Inspection sought testing of soil, soil gas, and groundwater at various locations on Defendants' property, investigation of sewer lines at Defendants' property and investigation of a particular piece of equipment on Defendants' property, known as the "Safety-Kleen Machine." Defendants have taken and maintain the position that no representative or agent of Plaintiffs may enter their property at any time, despite repeated requests and offered assurances from Plaintiffs.

After lengthy meet and confer, spelled out in more detail in the attached correspondence between counsel, Defendants consented to testing of soil and soil gas at their property (but declined to allow groundwater testing), inspection of sewer lines, and inspection of a relevant piece of machinery and the

floor beneath it. At Defendants' request, Plaintiffs agreed to have the testing done by a third-party environmental consultant selected by Defendants, but at Plaintiffs' expense. Defendants required that Plaintiffs' environmental consultant prepare a work plan to conduct the sampling and testing, which the third-party consultant would then comment on and implement. In deference to Defendants' objections, Plaintiffs agreed that its expert environmental consultant, Environmental Audit Inc. ("EAI"), would not enter Defendants' property during sampling or testing, although Plaintiffs' counsel could be present. The parties' agreement also contemplated that the final work plan would be submitted to DTSC for comment and approval, with a caveat that if DTSC did not respond within thirty days of submission, the third-party consultant could begin work immediately. The general scope of the work plan has been written and provided to the third-party consultant and the parties have drafted but not executed an access agreement.

The crux of the parties' dispute is whether an environmental consultant of Plaintiffs' choosing (but not EAI) may be present during a preliminary site inspection of Defendants' property before the work plan is finalized and submitted to DTSC. The anticipated site inspection would entail a visual inspection within the building at Defendants' property for: (1) stained, cracked and repaired concrete; (2) the locations of any possible subsurface release points, including current and former wastewater piping, floor drains, sumps, or similar features of potential concern; and (3) photographing any such features that are discovered, as well as the Safety-Kleen Machine. Plaintiffs' position is that, because neither they nor any agent of theirs has been permitted access to Defendants property at any time, the draft work plan may exclude relevant features that would be identified during the site inspection of which they are currently unaware. For example, cracked or patched cement could indicate potential sources of release of chemicals to the subsurface. As would the discovery of previously unknown piping or sewer connections. Defendants have averred that no such features are present, but Plaintiffs contend a site inspection is essential before work commences to confirm those assertions, and to ensure that the draft workplan is adequate and fulsome. Moreover, because the work plan will be submitted to DTSC before execution, a site inspection is essential to ensure that the testing will comply with DTSC requirements and recommendations for sampling. Plaintiffs estimate that the site inspection would take one hour to complete.

Defendants' position, as counsel for Plaintiffs' understand it, is that the agreed third-party consultant may conduct a visual inspection of the inside of the building, but Plaintiffs have waived any right to have any agent other than counsel present on Defendants' property at any time, including during any site inspection. As discussed in the attached meet-and-confer correspondence, counsel for Plaintiffs contends Plaintiffs never waived any such right. The terms of access negotiated by counsel for the parties and incorporated into the as-yet-unexecuted access agreement limit access to the property during the investigation and work conducted by the third-party consultant after a work plan is finalized and cannot be interpreted to prohibit access to determine the precise scope of work that is essential for the reasons discussed above. Defendants have also expressed concerns that a site inspection by Plaintiffs' agents would risk the disclosure of confidential information concerning their operations and products.

In light of the above, Plaintiffs request an order granting the following relief:

- That an environmental consultant of Plaintiffs' choosing, other than EAI, be permitted to be present at the 3050 Leonis Blvd. property, accompanied by the agreed upon third-party consultant, for a preliminary site inspection to identify and record features of concern before the third-party consultant conducts subsurface investigation activities at the property, including

the anticipated sewer investigation.

- If necessary, Plaintiffs will consider entering into a mutually acceptable confidentiality agreement concerning any proprietary or client-confidential information or activities that might be observed by Plaintiffs' environmental consultant during such inspection.

As noted above and pursuant to your procedures concerning Discovery Motions, Plaintiffs request a telephonic conference with Your Honor regarding this dispute. Thank you for your time and attention.

Regards,

Martin D. Quiñones

**Martin D. Quiñones**
Associate

**SHER EDLING llp**
100 Montgomery St., Ste. 1410
San Francisco CA 94104
(628) 231-2530 | sheredling.com

**CONFIDENTIAL NOTICE**
This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Sher Edling LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

----- Message from Marty Quiñones <marty@sheredling.com> on Wed, 20 Mar 2019 23:06:27 +0000 -----
        **To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
  **Subject:** RE: Sewer and Site Inspection

Lisa,
In our final meet and confer call yesterday concerning Plaintiffs' inspection demand for your clients' property, you raised concerns about client confidentiality, which informed your clients' position that an environmental consultant on Plaintiffs' behalf may not be present during any inspection or sampling at the Luppens' property, in addition to your position—with which we disagree—that Plaintiffs waived the right to have a designated environmental consultant present at any time, including during an inspection of the property. Our final proposal is as follows:

- An environmental consultant other than Environmental Audit, Inc. will be present at the 3050 Leonis property for a preliminary site inspection to identify and record features of concern before the agreed third-party environmental consultant The Reynolds Group conducts subsurface investigation activities at the property. Because the access agreement and work plan contemplate review and approval by the DTSC, and for the reasons stated in our previous correspondence, a site inspection is necessary *before* sampling commences to ensure that the data gathered from the subsurface investigation is adequate and fulsome.
- Plaintiffs are willing to enter into a confidentiality agreement concerning any proprietary

information that might be observed by Plaintiffs' environmental consultant during the inspection.

Please inform me by March 21, 2019, whether your clients agree to the above proposal, so that we may clearly present the issues and parties' positions to the Magistrate.

Thank you,

Marty

Martin D. Quiñones
Associate

**SHER EDLING llp**

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Monday, March 18, 2019 9:11 PM
**To:** Marty Quiñones <marty@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Marty:

I am free after 10:30am on Tuesday to talk.

For the inspection issues, I propose the following:

1. We proceed with what has been currently agreed to (sewer inspection, soil & soil vapor testing, Safety-Kleen machine inspection).  We finalize language to that effect in the Access Agreement and get both our clients to sign it.  We add the Safety-Kleen machine inspection to the Work Plan and finalize that.  We send Ed off an running on those tasks at least.  That way, we can at least get some work moving.
2. In the meantime, we can discuss your request for a general inspection of Metal Products with the magistrate.

My clients also propose we have an in person meeting with principals and attorneys to discuss the dust issues (no mediation, just a meeting).

Lisa

Lisa Dearden Trépanier | **Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com

**From:** Marty Quiñones <marty@sheredling.com>
**Sent:** Monday, March 18, 2019 5:07 PM

**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Subject:** RE: Sewer and Site Inspection

Lisa,

Please let me know when you are free to talk tomorrow morning about the motion for summary judgment and our anticipated motion to compel. We would like to schedule a call with the Magistrate so we can stop haggling and get the work done.

Marty

Martin D. Quiñones
Associate

**SHER EDLING llp**

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Saturday, March 16, 2019 10:41 AM
**To:** Marty Quiñones <marty@sheredling.com>
**Cc:** Robert Crockett <bob@bobcrockettlaw.com>; Matt Edling <matt@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Marty:

I will be in a deposition on Monday and therefore not available.

You are trying to rewrite history.

We will be in touch with our clients' response.


Lisa Dearden Trépanier | Crockett & Associates
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com


**From:** Marty Quiñones <marty@sheredling.com>
**Sent:** Saturday, March 16, 2019 8:13 AM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Robert Crockett <bob@bobcrockettlaw.com>; Matt Edling <matt@sheredling.com>
**Subject:** RE: Sewer and Site Inspection


Dear Lisa,

In deference to your clients' concerns, we agreed to hire and pay for a third party – The Reynolds Group – to conduct testing on the property, and we agreed with your clients' firm condition that EAI staff not

be allowed on-site.  But some expert consultant must first be allowed on the property on Plaintiffs' behalf to participate in a site inspection.  Otherwise, we will have no way of meaningfully assessing the Luppens' contention that hazardous substances have not been released on the property.

Contrary to your assertions, we never agreed that any and all consultants for Plaintiffs would be barred from the property or from participating in a site inspection.  You have taken the position that the Access Agreement precludes any expert consultant on Alisu's behalf from entering the property.  But that is simply not the case.

As an initial matter, the Access Agreement is ineffective because it is in draft form and was never signed. Your assertion that it is enforceable because we orally agreed to it subject to finalization strains credulity.  There are large holes in the agreement, including the scope of work, which has yet be finalized, and an incomplete paragraph which was to summarize the "purpose" of the agreement and the testing to be performed on-site.  In the absence of definite terms, there was nothing for us to agree to.  Moreover, the proposed agreement itself contains an integration clause, stating that it supersedes all prior negotiations and agreements, "whether written or oral."  (§ 14.)

In any event, as you conceded on the phone, the terms of the site inspection had never been previously discussed.  While you later tried to walk this back, the plain language of the draft Access Agreement confirms that excluding all expert consultants working on Plaintiffs' behalf from a site inspection was never part of any proposed deal:

- The Access Agreement never once uses the term "site inspection."  By its very terms, the Access Agreement pertains only to testing, sampling, and data gathering on the property, not to the site inspection that necessarily precedes those activities.

- Section 6 of the Access Agreement, the only section that limits access, pertains to "Activities," which are defined as those activities set forth in the Scope of Work.  The Reynolds Group has repeatedly stated that the scope of work is limited and does not include site inspections.

Accordingly, we had every reason to believe that some acceptable non-EAI consultant would be permitted on the property on EAI's behalf to perform or participate in a site inspection so we could reasonably assess the scope of work that is to be performed by The Reynolds Group.  Perhaps the Luppens intended to add more explicit language concerning access when the agreement was finalized. But we would never agree to such terms.  That is why the Agreement is not effective unless it is finalized and signed.

You are essentially asking us to agree to a scope of work without allowing us to determine what we should be looking for.  This is a non-starter.  We have served a proper inspection demand, and we have a legal right to examine the property.  We have no intention of waiving that right, nor have we. Unfortunately, this is part of a larger pattern.  We have been trying to gain access to the property for months, and the Luppens have thrown up road blocks every step of the way.  If we cannot reach an agreement on this issue, we will be forced to move to compel.

Please let me know times you're available on Monday to discuss this and your clients' anticipated motion for summary judgment, so that we may meet and confer on both.

Thank you,

Marty

Martin D. Quiñones
Associate

**SHER EDLING llp**

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Thursday, March 14, 2019 8:00 PM
**To:** Matt Edling <matt@sheredling.com>
**Cc:** Marty Quiñones <marty@sheredling.com>; Robert Crockett <bob@bobcrockettlaw.com>
**Subject:** RE: Sewer and Site Inspection

Matt:

I did not agree the site inspection had not been discussed.  I said I did not remember.  Neither did Marty.
I had forgotten until we talked today that the limited site inspection was included in the Access
Agreement.  After we talked, I checked the Access Agreement and was reminded that the limited site
inspection is indeed included in the scope of work for The Reynolds Group.  I do not think I am expected
to have the Access Agreement memorized.  EAI neglected to put the limited site inspection in the Work
Plan, but that can be remedied now as it was clearly agreed to in the Access Agreement.  Ed Reynolds
did not know about the limited site inspection because EAI did not put it in the Work Plan.  Again, that is
now being remedied.

I knew that the Access Agreement prohibited your engineer from coming onto the Luppen Property.  I
agreed to ask my client about your engineer as an exception to the Access Agreement in a spirit of
compromise.  However, my clients will not agree to change the terms of the previously agreed-to Access
Agreement.  Nor are they required to.

The Access Agreement has not yet been signed because it is waiting finalization of the Work Plan to be
included as an attachment.  Marty and I clearly agreed, in November 2018, on behalf of our respective
clients, to the terms of the Access Agreement.  It is an oral agreement which needs no signature.  You
have an ethical obligation to stand by the agreements entered into by your law firm on behalf of your
clients.


Lisa Dearden Trépanier | **Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com


**From:** Matt Edling <matt@sheredling.com>
**Sent:** Thursday, March 14, 2019 7:47 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Marty Quiñones <marty@sheredling.com>; Robert Crockett <bob@bobcrockettlaw.com>

**Subject:** Re: Sewer and Site Inspection

Lisa - we just spoke on the phone at 3:00 and you agreed the site inspection had not been discussed. Further, the Reynolds Group had no idea what I was talking about when I raised it with you on the phone.

You agreed to ask your client about my engineer.  Why would you do that if it was decided? Further, nothing is signed.

You are literally writing the opposite what you said on the phone.

It is baffling. Lesson learned.

We will sort it out with the Court.

Matt Edling
Sher Edling LLP

On Mar 14, 2019, at 7:42 PM, Lisa Trepanier <lisatrepanier@bobcrockettlaw.com> wrote:
Matt:

I think you are confusing the Work Plan and the Access Agreement.  The Access Agreement (see attached) was finalized on November 29, 2018.  Since then, we have been negotiating the Work Plan, which is all but final (with the addition described below).  As of November 29, 2018, Sher Edling explicitly agreed that Alisu's expert consultant would be excluded from the property.  The "inspection" was never a general inspection, but is limited as set forth in the Access Agreement.  Alisu can still determine whether potential contaminants were released at the Luppen's property through the work/inspection to be done by The Reynolds Group.  Your statement: "We agree it won't be EAI but we will not agree to the absence of an expert consultant" is irrelevant at this point because **you already agreed to the absence of your expert consultant**.  That is why we jointly retained The Reynolds Group as a neutral third party expert consultant.

We objected to your Inspection Demand served in August 2018, met and conferred extensively, and finally worked out the Access Agreement and Work Plan (subject to modification below).  There is no general "site inspection" because Metal Products has confidential and proprietary products it manufactures and it cannot allow unlimited access and photographing in violation of its customer contracts.  As such, the parties met and conferred on Alisu's inspection demand and narrowed the inspection to the following:  soil boring and testing, vapor probe installation and testing, sewer inspection, and Safety-Kleen inspection.  (Access Agreement, page 2)  Pursuant to the Access Agreement, The Reynolds Group will conduct this, and only this inspection/work.  (Access Agreement, page 2)  The Reynolds Group **was** retained for the limited site inspection agreed to by the parties.  The Access Agreement allows Alisu's attorneys access to the Luppen property to observe the work performed by The Reynolds Group. (Access Agreement, page 2)  **The Access Agreement does not allow ANY non-attorney representative of Plaintiffs to enter the Luppen Property**.  The Access Agreement states:  "Other than Neighbors' attorneys, no employee, independent contractor, or agent of Neighbors shall be allowed to enter the Property at any time."  (Access Agreement, paragraph 6)  Marty Quinones agreed to the exclusion of your expert consultant.  (11.29.18 email from Quinones agreeing to Access

Agreement).

Attached please find a new red-lined draft of the Work Plan which adds language for The Reynolds Group to conduct an inspection of the Safety-Kleen machine and surrounding floor. That will bring the Work Plan into compliance with the entirety of the scope of work set forth on page 2 of the Access Agreement.

The Access Agreement was finalized on November 29, 2018.  It is far too late in the process to begin rewriting it now.  You have been with Sher Edling throughout this process and never stated any objections to the Access Agreement.  Marty negotiated it, agreed to it, and now Sher Edling and Alisu are bound by it.


Lisa Dearden Trépanier | **Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com



**From:** Matt Edling <matt@sheredling.com>
**Sent:** Thursday, March 14, 2019 5:52 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Marty Quiñones <marty@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Lisa –
As just discussed, the Reynolds Group was never retained for the site inspection, but instead to implement an agreed scope of work. Regardless, if your clients want them there that is fine, but not to the exclusion of our expert consultant.  Our inspection demand expressly requested that our expert consultant participate. Plaintiffs have the separate right to do a site inspection pursuant to Rule 34(a)(2) and to limit our ability to have our expert present defeats the entire purpose of the inspection – to determine whether potential contaminants were released at your clients' property.  We agree it won't be EAI but we will not agree to the absence of an expert consultant. Our back and forth on the access agreement has been torturous and is memorialized in Marty's emails of March 7, 2019 and March 11, 2019.  I urge you and your clients to reconsider so that we can get on with this. Pursuant to Magistrate Walsh's procedures, Defendants must respond within five (5) days of receipt this email, setting forth their position on the disputed matters. No later than five (5) days thereafter, counsel are required to meet and confer in person or telephonically to attempt to resolve the dispute. If counsel are unable to reach a resolution, a conference call with the Magistrate will be arranged and, if necessary, briefing will be scheduled. Magistrate Walsh's procedures and schedule may be found on the court website here.


Matt Edling
Sher Edling LLP

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Thursday, March 14, 2019 4:00 PM
**To:** Matt Edling <matt@sheredling.com>
**Cc:** Marty Quiñones <marty@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Counsel:

My clients are not willing to allow Plaintiffs' environmental consultant (EAI or not) access to their facility.  They feel that was the whole point of going through the hassle of retaining Ed Reynolds as a 3rd party neutral consultant.  My clients have a number of concerns about Plaintiffs' conduct throughout this litigation, as well as concerns about the confidentiality of their clients and clients' products being manufactured in the building.

Ed Reynolds is fully empowered to implement the Work Plan as agreed to and will fully document all his work and data collection in a manner that both sides can use.  There is no reason to deviate from the Access Agreement finalized months ago.

Lisa Dearden Trépanier | **Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com

**From:** Matt Edling <matt@sheredling.com>
**Sent:** Thursday, March 14, 2019 3:50 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Marty Quiñones <marty@sheredling.com>
**Subject:** Sewer and Site Inspection

Lisa -
Thank you for the call. We would like Russel Juncal to be present for the sewer and site inspection.  I understand that might take an hour.  He is available any day next week expect for 3/21.  I appreciate you asking your clients.

**Matthew K. Edling**
SHER EDLING LLP
100 Montgomery St., Ste. 1410
San Francisco CA 94104
(628) 231-2520 | sheredling.com

**CONFIDENTIAL NOTICE**
**This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.   The information is intended only for the use of the individual or**

entity named above.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Sher Edling LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

<18.11.29 FINAL Access Agreement.docx>
<19.03.14 DRAFT Work Plan.docx>
<18.11.29 Quinones email approving Access Agreement.pdf>
----- Message from Lisa Trepanier <lisatrepanier@bobcrockettlaw.com> on Wed, 20 Mar 2019 23:43:53 +0000 -----

**To:** Marty Quiñones <marty@sheredling.com>

**Subject:** RE: Sewer and Site Inspection

Marty:

No, we will not agree to your proposal.

In your October 2, 2018 email, you clearly stated that your clients "limit their inspection demand to the following subjects: 1) reasonable access to the concrete floor on which the Safety-Kleen unit has allegedly been sitting since 1996; 2) reasonable access to sewer lines, floor drains, and other drainage fixtures that were in use at the property prior to April 1987; 3) reasonable access to the parking lot on the western portion of the property and reasonably accessible soil underlying it, including collection of soil and soil gas samples from the subsurface of Defendants' Property; and 4) reasonable inspection of the Safety-Kleen machine."  We agreed to that.

You further agreed (in that same email) that "Plaintiffs will agree to have sampling and testing perfoemd [sic] a mutually agreed, third party environmental consultant to perform soil borings, install soil vapor probes, and perform other necessary inspections pursuant to Plaintiffs' inspection demand."  We agreed that Ed Reynolds could conduct the work/inspections in the four categories above.

Since October 2018 (and extensive ensuing negotiations), your clients have never stated any desire to broaden the agreed limitations on the site inspection demand to a "preliminary site inspection to identify and record features of concern."  Such an inspection was not included in any draft of the Access Agreement or the Work Plan.  You never suggested it until last week.  You waived any such demand in October 2018.

Further, even if you somehow were able to resurrect a demand for a "preliminary site inspection," we would renew the objections we made last September to your inspection demand.  It is a fishing expedition.  My clients have been in this case for 18 months and in that time, the only evidence you have of any potential perchlorate present at 3050 Leonis is one City of Vernon permit showing a shed which stored sodium nitrate located either in the current Metal Products parking lot or possibly on the Nanka Siemen property.  We already agreed you could obtain soil borings in the parking lot and you are welcome to contact Nanka Siemen for an inspection of their property.  The only evidence you have of any PCE present at the property is the Safety-Kleen manifests which we have explained are an overly conservative nationwide estimate of waste streams, and are in no way indicative of the Metal Products

waste stream.  There never was any PCE present at the Metal Products property.  Period.  In any event, we agreed to allow Ed Reynolds to conduct an inspection of the Safety-Kleen machine and the concrete floor on which it sits.  You have no justification for a general inspection of the entire building.

Lisa Dearden Trépanier **| Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com


**From:** Marty Quiñones <marty@sheredling.com>
**Sent:** Wednesday, March 20, 2019 4:06 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Subject:** RE: Sewer and Site Inspection

Lisa,

In our final meet and confer call yesterday concerning Plaintiffs' inspection demand for your clients' property, you raised concerns about client confidentiality, which informed your clients' position that an environmental consultant on Plaintiffs' behalf may not be present during any inspection or sampling at the Luppens' property, in addition to your position—with which we disagree—that Plaintiffs waived the right to have a designated environmental consultant present at any time, including during an inspection of the property. Our final proposal is as follows:

- An environmental consultant other than Environmental Audit, Inc. will be present at the 3050 Leonis property for a preliminary site inspection to identify and record features of concern before the agreed third-party environmental consultant The Reynolds Group conducts subsurface investigation activities at the property. Because the access agreement and work plan contemplate review and approval by the DTSC, and for the reasons stated in our previous correspondence, a site inspection is necessary *before*  sampling commences to ensure that the data gathered from the subsurface investigation is adequate and fulsome.
- Plaintiffs are willing to enter into a confidentiality agreement concerning any proprietary information that might be observed by Plaintiffs' environmental consultant during the inspection.

Please inform me by March 21, 2019, whether your clients agree to the above proposal, so that we may clearly present the issues and parties' positions to the Magistrate.

Thank you,

Marty

Martin D. Quiñones
Associate

**SHER EDLING llp**

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>

**Sent:** Monday, March 18, 2019 9:11 PM
**To:** Marty Quiñones <marty@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Marty:

I am free after 10:30am on Tuesday to talk.

For the inspection issues, I propose the following:

1. We proceed with what has been currently agreed to (sewer inspection, soil & soil vapor testing, Safety-Kleen machine inspection).  We finalize language to that effect in the Access Agreement and get both our clients to sign it.  We add the Safety-Kleen machine inspection to the Work Plan and finalize that.  We send Ed off an running on those tasks at least.  That way, we can at least get some work moving.
2. In the meantime, we can discuss your request for a general inspection of Metal Products with the magistrate.

My clients also propose we have an in person meeting with principals and attorneys to discuss the dust issues (no mediation, just a meeting).

Lisa

Lisa Dearden Trépanier | **Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com

**From:** Marty Quiñones <marty@sheredling.com>
**Sent:** Monday, March 18, 2019 5:07 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Subject:** RE: Sewer and Site Inspection

Lisa,

Please let me know when you are free to talk tomorrow morning about the motion for summary judgment and our anticipated motion to compel. We would like to schedule a call with the Magistrate so we can stop haggling and get the work done.

Marty

Martin D. Quiñones
Associate

**SHER EDLING llp**

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Saturday, March 16, 2019 10:41 AM
**To:** Marty Quiñones <marty@sheredling.com>
**Cc:** Robert Crockett <bob@bobcrockettlaw.com>; Matt Edling <matt@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Marty:

I will be in a deposition on Monday and therefore not available.

You are trying to rewrite history.

We will be in touch with our clients' response.


Lisa Dearden Trépanier | **Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com


**From:** Marty Quiñones <marty@sheredling.com>
**Sent:** Saturday, March 16, 2019 8:13 AM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Robert Crockett <bob@bobcrockettlaw.com>; Matt Edling <matt@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Dear Lisa,

In deference to your clients' concerns, we agreed to hire and pay for a third party – The Reynolds Group – to conduct testing on the property, and we agreed with your clients' firm condition that EAI staff not be allowed on-site.  But some expert consultant must first be allowed on the property on Plaintiffs' behalf to participate in a site inspection.  Otherwise, we will have no way of meaningfully assessing the Luppens' contention that hazardous substances have not been released on the property.

Contrary to your assertions, we never agreed that any and all consultants for Plaintiffs would be barred from the property or from participating in a site inspection.  You have taken the position that the Access Agreement precludes any expert consultant on Alisu's behalf from entering the property.  But that is simply not the case.

As an initial matter, the Access Agreement is ineffective because it is in draft form and was never signed. Your assertion that it is enforceable because we orally agreed to it subject to finalization strains credulity.  There are large holes in the agreement, including the scope of work, which has yet be finalized, and an incomplete paragraph which was to summarize the "purpose" of the agreement and the testing to be performed on-site.  In the absence of definite terms, there was nothing for us to agree to.  Moreover, the proposed agreement itself contains an integration clause, stating that it supersedes

all prior negotiations and agreements, "whether written or oral." (§ 14.)

In any event, as you conceded on the phone, the terms of the site inspection had never been previously discussed. While you later tried to walk this back, the plain language of the draft Access Agreement confirms that excluding all expert consultants working on Plaintiffs' behalf from a site inspection was never part of any proposed deal:

- The Access Agreement never once uses the term "site inspection." By its very terms, the Access Agreement pertains only to testing, sampling, and data gathering on the property, not to the site inspection that necessarily precedes those activities.

- Section 6 of the Access Agreement, the only section that limits access, pertains to "Activities," which are defined as those activities set forth in the Scope of Work. The Reynolds Group has repeatedly stated that the scope of work is limited and does not include site inspections.

Accordingly, we had every reason to believe that some acceptable non-EAI consultant would be permitted on the property on EAI's behalf to perform or participate in a site inspection so we could reasonably assess the scope of work that is to be performed by The Reynolds Group. Perhaps the Luppens intended to add more explicit language concerning access when the agreement was finalized. But we would never agree to such terms. That is why the Agreement is not effective unless it is finalized and signed.

You are essentially asking us to agree to a scope of work without allowing us to determine what we should be looking for. This is a non-starter. We have served a proper inspection demand, and we have a legal right to examine the property. We have no intention of waiving that right, nor have we. Unfortunately, this is part of a larger pattern. We have been trying to gain access to the property for months, and the Luppens have thrown up road blocks every step of the way. If we cannot reach an agreement on this issue, we will be forced to move to compel.

Please let me know times you're available on Monday to discuss this and your clients' anticipated motion for summary judgment, so that we may meet and confer on both.

Thank you,

Marty

Martin D. Quiñones
Associate

**SHER EDLING llp**

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Thursday, March 14, 2019 8:00 PM
**To:** Matt Edling <matt@sheredling.com>
**Cc:** Marty Quiñones <marty@sheredling.com>; Robert Crockett <bob@bobcrockettlaw.com>
**Subject:** RE: Sewer and Site Inspection

Matt:

I did not agree the site inspection had not been discussed.  I said I did not remember.  Neither did Marty.  I had forgotten until we talked today that the limited site inspection was included in the Access Agreement.  After we talked, I checked the Access Agreement and was reminded that the limited site inspection is indeed included in the scope of work for The Reynolds Group.  I do not think I am expected to have the Access Agreement memorized.  EAI neglected to put the limited site inspection in the Work Plan, but that can be remedied now as it was clearly agreed to in the Access Agreement.  Ed Reynolds did not know about the limited site inspection because EAI did not put it in the Work Plan.  Again, that is now being remedied.

I knew that the Access Agreement prohibited your engineer from coming onto the Luppen Property.  I agreed to ask my client about your engineer as an exception to the Access Agreement in a spirit of compromise.  However, my clients will not agree to change the terms of the previously agreed-to Access Agreement.  Nor are they required to.

The Access Agreement has not yet been signed because it is waiting finalization of the Work Plan to be included as an attachment.  Marty and I clearly agreed, in November 2018, on behalf of our respective clients, to the terms of the Access Agreement.  It is an oral agreement which needs no signature.  You have an ethical obligation to stand by the agreements entered into by your law firm on behalf of your clients.

Lisa Dearden Trépanier **| Crockett & Associates**
23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com

**From:** Matt Edling <matt@sheredling.com>
**Sent:** Thursday, March 14, 2019 7:47 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Marty Quiñones <marty@sheredling.com>; Robert Crockett <bob@bobcrockettlaw.com>
**Subject:** Re: Sewer and Site Inspection

Lisa - we just spoke on the phone at 3:00 and you agreed the site inspection had not been discussed.  Further, the Reynolds Group had no idea what I was talking about when I raised it with you on the phone.

You agreed to ask your client about my engineer.  Why would you do that if it was decided? Further, nothing is signed.

You are literally writing the opposite what you said on the phone.

It is baffling. Lesson learned.

We will sort it out with the Court.

Matt Edling
Sher Edling LLP

On Mar 14, 2019, at 7:42 PM, Lisa Trepanier <lisatrepanier@bobcrockettlaw.com> wrote:
Matt:

I think you are confusing the Work Plan and the Access Agreement.  The Access Agreement (see attached) was finalized on November 29, 2018.  Since then, we have been negotiating the Work Plan, which is all but final (with the addition described below).  As of November 29, 2018, Sher Edling explicitly agreed that Alisu's expert consultant would be excluded from the property.  The "inspection" was never a general inspection, but is limited as set forth in the Access Agreement.  Alisu can still determine whether potential contaminants were released at the Luppen's property through the work/inspection to be done by The Reynolds Group.  Your statement: "We agree it won't be EAI but we will not agree to the absence of an expert consultant" is irrelevant at this point because **you already agreed to the absence of your expert consultant**.  That is why we jointly retained The Reynolds Group as a neutral third party expert consultant.

We objected to your Inspection Demand served in August 2018, met and conferred extensively, and finally worked out the Access Agreement and Work Plan (subject to modification below).  There is no general "site inspection" because Metal Products has confidential and proprietary products it manufactures and it cannot allow unlimited access and photographing in violation of its customer contracts.  As such, the parties met and conferred on Alisu's inspection demand and narrowed the inspection to the following:  soil boring and testing, vapor probe installation and testing, sewer inspection, and Safety-Kleen inspection.  (Access Agreement, page 2)  Pursuant to the Access Agreement, The Reynolds Group will conduct this, and only this inspection/work.  (Access Agreement, page 2)  The Reynolds Group **was** retained for the limited site inspection agreed to by the parties.  The Access Agreement allows Alisu's attorneys access to the Luppen property to observe the work performed by The Reynolds Group. (Access Agreement, page 2)  **The Access Agreement does not allow ANY non-attorney representative of Plaintiffs to enter the Luppen Property**.  The Access Agreement states:  "Other than Neighbors' attorneys, no employee, independent contractor, or agent of Neighbors shall be allowed to enter the Property at any time."  (Access Agreement, paragraph 6)  Marty Quinones agreed to the exclusion of your expert consultant.  (11.29.18 email from Quinones agreeing to Access Agreement).

Attached please find a new red-lined draft of the Work Plan which adds language for The Reynolds Group to conduct an inspection of the Safety-Kleen machine and surrounding floor.  That will bring the Work Plan into compliance with the entirety of the scope of work set forth on page 2 of the Access Agreement.

The Access Agreement was finalized on November 29, 2018.  It is far too late in the process to begin rewriting it now.  You have been with Sher Edling throughout this process and never stated any objections to the Access Agreement.  Marty negotiated it, agreed to it, and now Sher Edling and Alisu are bound by it.

Lisa Dearden Trépanier | Crockett & Associates

23929 Valencia Boulevard, Suite 303, Valencia, CA 91355
323.487.1101, ext. 105
www.bobcrockettlaw.com

**From:** Matt Edling <matt@sheredling.com>
**Sent:** Thursday, March 14, 2019 5:52 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Marty Quiñones <marty@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Lisa –
As just discussed, the Reynolds Group was never retained for the site inspection, but instead to implement an agreed scope of work. Regardless, if your clients want them there that is fine, but not to the exclusion of our expert consultant.  Our inspection demand expressly requested that our expert consultant participate. Plaintiffs have the separate right to do a site inspection pursuant to Rule 34(a)(2) and to limit our ability to have our expert present defeats the entire purpose of the inspection – to determine whether potential contaminants were released at your clients' property.  We agree it won't be EAI but we will not agree to the absence of an expert consultant. Our back and forth on the access agreement has been torturous and is memorialized in Marty's emails of March 7, 2019 and March 11, 2019.  I urge you and your clients to reconsider so that we can get on with this. Pursuant to Magistrate Walsh's procedures, Defendants must respond within five (5) days of receipt this email, setting forth their position on the disputed matters. No later than five (5) days thereafter, counsel are required to meet and confer in person or telephonically to attempt to resolve the dispute. If counsel are unable to reach a resolution, a conference call with the Magistrate will be arranged and, if necessary, briefing will be scheduled. Magistrate Walsh's procedures and schedule may be found on the court website here.


Matt Edling
Sher Edling LLP

**From:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Sent:** Thursday, March 14, 2019 4:00 PM
**To:** Matt Edling <matt@sheredling.com>
**Cc:** Marty Quiñones <marty@sheredling.com>
**Subject:** RE: Sewer and Site Inspection

Counsel:

My clients are not willing to allow Plaintiffs' environmental consultant (EAI or not) access to their facility.  They feel that was the whole point of going through the hassle of retaining Ed Reynolds as a 3rd party neutral consultant.  My clients have a number of concerns about Plaintiffs' conduct throughout this litigation, as well as concerns about the confidentiality of their clients and clients' products being manufactured in the building.

Ed Reynolds is fully empowered to implement the Work Plan as agreed to and will fully document all his work and data collection in a manner that both sides can use.  There is no reason to deviate from the Access Agreement finalized months ago.

Lisa Dearden Trépanier | **Crockett & Associates**

23929 Valencia Boulevard, Suite 303, Valencia, CA 91355

323.487.1101, ext. 105

www.bobcrockettlaw.com

**From:** Matt Edling <matt@sheredling.com>
**Sent:** Thursday, March 14, 2019 3:50 PM
**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
**Cc:** Marty Quiñones <marty@sheredling.com>
**Subject:** Sewer and Site Inspection

Lisa -
Thank you for the call. We would like Russel Juncal to be present for the sewer and site inspection.  I understand that might take an hour.  He is available any day next week expect for 3/21.  I appreciate you asking your clients.

**Matthew K. Edling**
**SHER EDLING LLP**
100 Montgomery St., Ste. 1410
San Francisco CA 94104
(628) 231-2520 | sheredling.com

**CONFIDENTIAL NOTICE**
**This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.   The information is intended only for the use of the individual or entity named above.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Sher Edling LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.**

<18.11.29 FINAL Access Agreement.docx>
<19.03.14 DRAFT Work Plan.docx>
<18.11.29 Quinones email approving Access Agreement.pdf>
----- Message from Marty Quiñones <marty@sheredling.com> on Fri, 8 Mar 2019 00:48:04 +0000 -----

**To:** Lisa Trepanier <lisatrepanier@bobcrockettlaw.com>
  **cc:** Matt Edling <matt@sheredling.com>, Adam Shapiro <adam@sheredling.com>
  **Subject:** Alisu v. TriMas et al.

Lisa,

I write to reinitiate our prior meet and confer regarding Defendants Metal Products Engineering and Luppe Ridgway Luppen's Response to Plaintiffs' Demand for Inspection of Real Property dated September 24, 2018 ("Response").  Please be informed that unless we are able to immediately agree upon a date certain when work will commence under the party's agreed workplan, Plaintiffs intend to move to compel compliance with Plaintiffs' First Demand for Inspection of Real Property to Defendants Metal Products Engineering and Luppe Ridgway Luppen dated August 1, 2018 ("Demand"). We have now been negotiating terms for access and testing for nearly six months.  Since discovery cut off is fast approaching, we must reach agreement on a schedule for access, to which Plaintiffs are entitled under the Federal Rules of Civil Procedure, or Plaintiffs will seek relief from the Court.

This email serves to continue and conclude the process required by Magistrate Judge Walsh, who is overseeing discovery matters in this case, prior to filing discovery motions. Pursuant to Magistrate Walsh's procedures, Defendants must respond within five (5) days of receipt this email, setting forth their position on the disputed matters. No later than five (5) days thereafter, counsel are required to meet and confer in person or telephonically to attempt to resolve the dispute. If counsel are unable to reach a resolution, a conference call with the Magistrate will be arranged and, if necessary, briefing will be scheduled. Magistrate Walsh's procedures and schedule may be found on the court website here.

Defendants have baldly asserted that there is no soil or groundwater contamination at 3050 Leonis Blvd. ("Defendants' Property") that could or did migrate to Plaintiffs' adjacent property at 4901 S. Boyle Avenue ("Plaintiffs' Property"). You contend instead that contamination for Plaintiffs' Property migrated to Defendants' Property, or migrated to Plaintiffs' Property from elsewhere. However, Defendants have never produced any test results showing that contaminants are not present on Defendants' Property or suggested that such testing has ever occurred.  In fact, you have represented to the Court that testing at the Defendants' Property would exonerate Defendants. Absent such information, Plaintiffs ability to prove their claims and defend Defendants counterclaims is prejudiced. For that reason, we have negotiated limited and minimally burdensome soil and soil vapor sampling to occur on the Defendants' Property at Plaintiffs' expense, to be conducted by a third party environmental consultant who you selected. Despite our extensive discussions and payment of a deposit to the third party consultant at your insistence, we still do not have a date certain when testing will commence.

_Background and Nature of Dispute_
Plaintiffs allege in the Fifth Amended Complaint ("Complaint") that hazardous substances, in particular tetrachloroethylene ("PCE") and perchlorate, have been released at and from Defendants' Property. The Complaint further alleges that those hazardous substances have flowed from Defendants' Property onto and under Plaintiffs' Property following the local groundwater gradient flow from east-northeast to the west-southwest. _See_  Complaint, Doc. 159 at ¶¶ 19–23, 36–42. Plaintiffs allege that perchlorate was discharged into the subsurface of Defendants' Property from a storage shed containing sodium nitrate that a former tenant and operator of that property (Norris Industries, Inc.) used between the late 1960s and mid to late 1980s. Plaintiffs allege that the sodium nitrate stored therein was contaminated with perchlorate, and that contaminant seeped into the ground and flowed to

Plaintiffs' Property. Complaint at ¶¶ 16, 37–38. Plaintiffs further allege that PCE entered the subsurface through regularly releasing solution, intentionally or unintentionally, from the proprietary "Safety-Kleen" tool cleaning unit that it has operated at Defendants' Property since approximately 1994, which solution contains PCE. *Id.* at ¶¶ 40–41.

Defendants filed a Counterclaim against Plaintiffs, alleging in relevant part that groundwater data gathered from nearby properties not involved in the litigation shows "groundwater flowing from the east-southeast to the west-northwest" and, as such, "[g]roundwater from the [Plaintiffs' Property] poses a threat to the [Defendants' Property] unless and until definitive testing proves otherwise." *See* Defendants' First Amended Counterclaim, Doc. 190 at ¶ 23 (Aug. 6, 2018). Defendants also filed claims against other defendants alleging in relevant part that the sodium nitrate storage shed described above was at all times situated at a location that is not part of Defendants' Property, but was instead on a portion of a shared parking lot that is now part of the neighboring property at 3030 Leonis Blvd. *See* Defendants' First Amended Crossclaim, Doc. 191 at ¶¶ 35–36. The Crossclaim also alleges in relevant part that the Safety-Kleen unit "has been on-site at the Luppen Property sitting on a concrete floor on the north side of the Luppen Property from 1996 to the present." *Id.* at ¶ 63.

In order to determine whether the sodium nitrate storage shed could have contaminated the environment with perchlorate, and to determine the contribution of up-gradient sources of PCE to potential contamination at both Plaintiffs' and Defendants' Property, Plaintiffs issued their Demand on August 21, seeking groundwater, soil, and soil vapor testing at Defendants' Property for volatile organic compounds including PCE, and perchlorate. Extensive meet and confer ensued. On August 28, you sent an email posing five (5) logistical questions regarding soil, soil-gas, and groundwater sampling. I responded with answers to those questions on September 4. You replied on September 5, posing thirteen (13) additional questions and comments. Our office responded on September 6, stating that it would likely be easier to resolve your thirteen questions by having Plaintiffs' environmental consultant meet with Defendants' environmental consultant to discuss the logistics directly. You have refused to allow Plaintiffs' environmental consultants any access to the property, however, and refused to permit them to even enter the property to view the surroundings and resolve logistics questions.

We ultimately agreed to hold a teleconference on Friday, September 21 to discuss your logistical and substantive concerns. On September 20, I sent written responses to each of your thirteen (13) concerns, to "serve as the starting point for our discussion" the following day. On the morning of September 21, you unilaterally cancelled the teleconference, purportedly based on my brief written responses. On September 24, your office served the Response, posing seventeen (17) objections and denying and access to Defendants' Property. On September 27, I sent you an email initiating the meet and confer process under Magistrate Walsh's rules to compel compliance with the Demand and responding to your clients' seventeen objections and other concerns.

After additional meet and confer, Plaintiffs agreed on October 2, 2018, in relevant part, to forego the groundwater sampling they originally requested, and instead conduct only soil and soil vapor testing. Plaintiffs further agreed to have all sampling conducted by a third party environmental consultant since Defendants have refused Plaintiffs' consultants any access to Defendants' Property, and agreed that any workplan would be submitted to the Department of Toxic Substances Control ("DTSC") for review before any work would begin.

After additional substantial meet and confer, we agreed on October 23, 2018 to use Ed Reynolds of The Reynolds Group as the third party consultant to conduct the testing,

pursuant to a workplan drafted by Plaintiffs' environmental consultant, on which The Reynolds Group would comment. Plaintiffs paid a $2,000 retainer to The Reynolds Group and agreed to pay all costs associated with The Reynolds Group's work. We further negotiated the terms of an Access Agreement and agreed that once the workplan was submitted to DTSC, if DTSC did not respond within 30 days of receipt, The Reynolds Group could commence work without explicit DTSC approval.

Plaintiffs provided a workplan drafted by its environmental consultant on November 16, 2018, along with associated figures. You provided preliminary comments on November 26, 2018, but we did not receive final comments from your clients until January 16, 2019. After additional edits and meet and confer, we reached final agreement and jointly submitted the workplan to The Reynolds Group on March 5, 2019. As soon as The Reynolds Group concurs with the contents of the workplan, it will be submitted to DTSC for review.

Based on the extensive meet and confer to date, the time has come to set a date certain for testing to commence, so that the parties have sufficient time to incorporate the results of that testing into any expert analysis the parties may generate, or to resolve the matter before expert discovery costs are incurred.

As stated above, please respond within five days of this correspondence with your clients' position on a potential motion to compel. Thereafter, we will schedule a telephonic or in-person meet and confer to hopefully resolve these disputes. Plaintiffs will and determine whether motion practice is necessary.

Regards,

Marty

**Martin D. Quiñones**
Associate

**SHER EDLING llp**
100 Montgomery St., Ste. 1410
San Francisco CA 94104
(628) 231-2530 | sheredling.com

**CONFIDENTIAL NOTICE**
This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Sher Edling LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.