RONALD CAMHI (SBN 156316)
 Rcamhi@mrllp.com
WARREN KOSHOFER (SBN 213350)
 Wkoshofer@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, CA  90024
Telephone:   (310) 299-5500
Facsimile:    (310) 299-5600

Attorneys for Defendants, Cross-Claimants and Counterclaimants:
METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN,
AND PAULA BUSCH LUPPEN

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| ALISU INVESTMENTS, LTD. and KARGO GROUP GP, LLC,<br><br>                    Plaintiffs,<br><br>v.<br><br>TRIMAS CORPORATION d/b/a NI INDUSTRIES, INC., BRADFORD WHITE CORPORATION, LUPPE RIDGWAY LUPPEN, PAULA BUSCH LUPPEN, METAL PRODUCTS ENGINEERING, DEUTSCH/SDL, LTD., RHEEM MANUFACTURING COMPANY, and INFINITY HOLDINGS, LLC,<br><br>                    Defendants.<br>_____<br><br>METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, and PAULA BUSCH LUPPEN,<br><br>                    Counterclaimants,<br><br>v. | CASE NO.: 2:16-cv-00686 MWF (PJWx)<br><br>**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM AGAINST PLAINTIFFS**<br><br>Fifth Amended Complaint Filed:  April 23, 2018<br><br>Jury Trial:  November 3, 2020<br><br>Date:   March 16, 2020<br>Time:  10:00 a.m.<br>Dept:   Courtroom 5A |

1

ALISU INVESTMENTS, LTD. and
KARGO GROUP GP, LLC,

                Counter-Defendants.

METAL PRODUCTS
ENGINEERING, LUPPE RIDGWAY
LUPPEN, and PAULA BUSCH
LUPPEN,

                Cross-Claimants,

v.

TRIMAS CORPORATION d/b/a NI
INDUSTRIES, INC., BRADFORD
WHITE CORPORATION,
DEUTSCH/SDL, LTD., RHEEM
MANUFACTURING COMPANY,
INFINITY HOLDINGS, LLC, and
SAFETY-KLEEN SYSTEMS, INC.

                Cross-Defendants.

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 16, 2020 at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Michael W. Fitzgerald, in Courtroom 5A of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Defendants / Counterclaimants Metal Products Engineering, Luppe Ridgway Luppen, and Paula Busch Luppen (collectively, the "Metal Product Parties") will move the Court for leave to file a Third Amended Counterclaim.

Since the filing of the Second Amended Counterclaim in December 2018, substantial environmental testing has been conducted on the subject real property of

Plaintiffs / Counter-Defendants Alisu Investments, Ltd. and Kargo Group GP, LLC (collectively, the "Alisu Parties") located at 4901 S. Boyle Avenue, Vernon, California ("Plaintiffs' Property"), as well as on the subject real property of the Metal Product Parties located at 3050 Leonis Boulevard, Vernon, California ("Metal Product Property"). Such environmental testing, and the reports made to the California Department of Toxic Substances ("DTSC") and comments made by the DTSC relating to same, has shown that the soil, soil gas, and groundwater at, beneath, and emanating from Plaintiffs' Property is heavily contaminated by, among other harmful chemicals, tetracholorethylene ("PCE"), trichloroethylene ("TCE"), trichlorofluoromethane ("Freon 11"), benzene and chloroform, and that such contaminants have, are, and continue to migrate to the Metal Product Property causing and/or substantially contributing to the harm, damage and losses suffered by the Metal Product Parties.

Through the recent environmental testing at Plaintiffs' Property and the Metal Product Property, the Metal Product Parties have learned and confirmed that, among other things, they have been and are continuing to be exposed to: (a) the inhalation of contaminants within soil particulates blowing in the ambient air from the Plaintiffs' Property to the Metal Product Property; and (b) the intrusion of soil gas vapors emanating from Plaintiffs' Property and migrating to and into the indoor air of the building at the Metal Product Property.

An extraordinary amount of environmental testing and data production has occurred within the past five months.  For example:

(1) Plaintiffs submitted a Human Health Risk Assessment to the DTSC dated September 4, 2019 (which the DTSC criticized and otherwise commented on by way of correspondence dated November 8, 2019);

(2) Plaintiffs submitted a Supplemental Site Assessment III and Second Semi-Annual 2019 Groundwater Monitoring Report to the DTSC dated October

1      17, 2019 (which the DTSC criticized and otherwise commented on by way

2      of correspondence dated December 31, 2019);

3   (3) Plaintiffs, with the consent and cooperation of the Metal Product Parties,

4      conducted soil sampling on the Metal Product Property on October 19, 2019,

5      which largely came back non-detect at all sampling locations for all

6      contaminants;

7   (4) The Metal Product Parties, with the consent and cooperation of Plaintiffs,

8      conducted soil gas sampling on Plaintiffs' Property on October 25, 2019,

9      which revealed extraordinarily high levels of, among other contaminants,

10     PCE, TCE, Freon 11 and Chloroform;

11  (5) Plaintiffs, with the consent and cooperation of the Metal Products Parties,

12     conducted soil gas sampling on the Metal Product Property on November 2,

13     2019, which largely came back non-detect for the contaminants tested for,

14     with limited exceptions being PCE, TCE and Freon 11, which were

15     nominally found in some locations at levels slightly above detection limits,

16     but orders of magnitude less than what was concurrently found on Plaintiffs'

17     Property which is immediately south of the Metal Product Property;

18  (6) The DTSC, in commenting on Plaintiffs' Human Health Risk Assessment

19     on November 8, 2019, stated "*highly elevated concentrations of PCE and*

20     *TCE exist in soil gas beneath the [Plaintiffs'] Site. Other VOCs have*

21     *elevated concentrations in some samples, but the soil gas data cannot be*

22     *adequately evaluated at several sample locations/depths for the risk to*

23     *indoor air for benzene, chloroform and carbon tetrachloride because of high*

24     *detection limits due to the highly elevated concentrations of PCE and TCE.*

25     *Even so, it is apparent there is a risk of vapor intrusion from VOCs, along*

26     *with a risk to indoor commercial/industrial workers …*"; and

27

28

(7) The DTSC, in commenting on Plaintiffs' Supplemental Site Assessment III and Second Semi-Annual 2019 Groundwater Monitoring Report on December 31, 2019, stated "*Soil vapor data indicate a significant VOC plume exists beneath the [Plaintiffs'] Site. The plume extends offsite to the north, northeast, ... and northwest*.

Due to the above (and additional testing not specifically referenced), the Metal Product Parties' are concerned over the migration of contaminants from the Plaintiffs' Property to the Metal Product Property and relatedly, the health of the individuals who work at Metal Products (including Paula and Ridge Luppen). Indeed, the Metal Product Parties also recently discovered that the indoor air of the building on their property has elevated levels of PCE and Chloroform; two of the chemicals that extensively exist in the soil gas at Plaintiffs' Property and has migrated to and intruded into the building at the Metal Product Property.

Accordingly, the Metal Product Parties now diligently seek leave to amend to their counterclaim against Plaintiffs to, among other things, add: (1) new factual allegations as further support for and additional grounds for the previously plead causes of action; and (2) a new cause of action for negligent infliction of emotional distress. Respectfully, Plaintiffs will suffer no prejudice due to the filing of the Metal Product Parties Third Amended Counterclaim.

This motion seeks entry of an Order granting Metal Product Parties' Motion for Leave to Amend in its entirety and is based upon this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Warren Koshofer in support, the filings and record in this case, arguments of counsel, and such other evidence as may be allowed at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 7, 2020, and again on February 13, 2020.

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S
MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

1   DATED:  February 14, 2020                Respectfully submitted,

2                                            **MICHELMAN & ROBINSON, LLP**

3

4                                By:         _____

5                                            Ronald Camhi
                                             Warren Koshofer
6                                            ***Attorneys for Metal Products Engineering,
                                             Luppe Luppen, and Paula Luppen***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S
MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

It is out of an abundance of caution that this Motion for Leave to File a Third Amended Counterclaim ("Motion") is filed. When the trial date and pre-trial schedule for this case was modified by way of Order dated May 10, 2019 granting Plaintiffs' Motion to Modify Pre-Trial Scheduling Order ("May 2019 Scheduling Order"), the trial and other dates were continued, but the last day to amend pleadings was not mentioned.  Thus, this Motion sets forth the good faith bases for the Metal Product Parties' Motion.

Recently conducted environmental testing on the subject real property of Plaintiffs / Counter-Defendants Alisu Investments, Ltd. and Kargo Group GP, LLC (collectively, the "Alisu Parties") located at 4901 S. Boyle Avenue, Vernon, California ("Plaintiffs' Property"), as well as on the subject real property of the Metal Product Parties located at 3050 Leonis Boulevard, Vernon, California ("Metal Product Property"), warrants the amending of the Metal Product Parties' counterclaim against Plaintiffs. Indeed, over the last five months an extraordinary amount of environmental testing and data production has occurred, including, but not limited to: (1) Plaintiffs' Human Health Risk Assessment dated September 4, 2019 ("Plaintiffs' HHRA"), (2) Plaintiffs' Supplemental Site Assessment III and Second Semi-Annual 2019 Groundwater Monitoring Report dated October 17, 2019 ("EAI October 2019 Report"), (3) soil sampling on the Metal Product Property on October 19, 2019, (4) soil gas sampling on Plaintiffs' Property on October 25, 2019, (5) soil gas sampling on the Metal Product Property on November 2, 2019, (6) the California Department of Toxic Substances' ("DTSC") November 8, 2019 comments to Plaintiffs' HHRA ("DTSC November 8 Letter"), and (7) the DTSC's December 31, 2019 comments to Plaintiffs' Supplemental Site Assessment III and Second Semi-Annual 2019 Groundwater Monitoring Report ("DTSC December 31 Comments").

1

1    Based upon the wealth of new data, the Metal Product Parties have learned and

2  confirmed, among other things: (1) that Plaintiffs' allegations against the Metal

3  Product Parties as asserted in the fourth and fifth amended complaints filed in this

4  action were, and are, devoid of evidentiary support; (2) that directly contrary to

5  Plaintiffs' allegations against the Metal Product Parties, it is extensive contamination

6  from the Plaintiffs' Property that has been migrating to the Metal Product Property

7  and damaging the Metal Product Parties by, among other things, impacting the value

8  and marketability of the Metal Product Property; (3) that the Metal Product Parties

9  have been and are continuing to be exposed to the inhalation of contaminants within

10  soil particulates blowing in the ambient air from the Plaintiffs' Property to the Metal

11  Product Property, and within soil gas vapors emanating from Plaintiffs' Property and

12  migrating to and intruding into the indoor air of the building at the Metal Product

13  Property.

14    Due to this newly learned information, the Metal Product Parties are entitled

15  to amend to their counterclaim to, among other things, add: (1) new factual

16  allegations as further support for and additional grounds for the previously plead

17  causes of action; and (2) a new cause of action for negligent infliction of emotional

18  distress. As explained below, respectfully, the Court should modify the Order dated

19  May 10, 2019 granting Plaintiffs' Motion to Modify Pre-Trial Scheduling Order

20  ("May 2019 Scheduling Order") to permit the Metal Product Parties' filing of the

21  Third Amended Counterclaim attached to this Motion.

22    Respectfully, the Motion is supported by good cause and Plaintiffs will not be

23  prejudiced by the Court's granting of the Motion. Indeed, under Federal Rules of

24  Evidence Rule 16(b)'s good cause standard, courts routinely grant parties leave to

25  amend if the party diligently seeks to amend its complaint after discovering new facts

26  through discovery.  That is precisely what is occurring here. Further, Plaintiffs have

27  no legitimate grounds to challenge the filing of the Metal Product Parties' proposed

28

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S
MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

Third Amended Counterclaim.  The Metal Product Parties did not act with undue delay, bad faith or dilatory motive. Indeed, the new facts were, in large part, obtained from Plaintiffs recent supplemental document productions. Moreover, Plaintiffs have plenty of time to prepare for trial against the Metal Product Parties' new factual allegations and claim. Accordingly, there is no prejudice to Plaintiffs to warrant denial of the Motion.

## II.   PERTINENT FACTUAL BACKGROUND

### A. Fifth Amended Complaint

After three prior iterations of a complaint against the operators of the Plaintiffs' Property, Plaintiffs amended this action via a fourth amended complaint that vexatiously added the Metal Product Parties as defendants through assertion of purported factual contentions that were when made, and have now definitively been proven to be, utterly lacking in evidentiary support. Simply put, the new data that has been generated over the past five months definitively shows that Plaintiffs' bald claims that the Metal Product Parties are responsible in part for the extensive contamination present in the soil, soil gas and groundwater at Plaintiffs' Property are meritless.  That same new data definitively shows that the extensive contamination present on Plaintiffs' Property has and continues to migrate to the Metal Product Property, causing great harm to the Metal Product Parties; far moreso than was known when the Metal Product Parties filed their Second Amended Counterclaim against Plaintiffs a little more than a year ago.

### B. Environmental Testing at Plaintiffs' Property

On or before June 2013, Plaintiffs retained Environmental Audit, Inc. ("EAI") to perform an environmental assessment of the Plaintiffs' Property, including testing the soil, soil gas, and groundwater for volatile organic compounds and metals.  EAI's assessment and testing from June 2013 to February 2018 showed that the soil, soil gas, and groundwater at Plaintiffs' Property was heavily contaminated by, among

3

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S
MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

1   other harmful chemicals, tetracholorethylene ("PCE"), trichloroethylene ("TCE"),

2   trichlorofluoromethane ("Freon 11"), benzene and chloroform.

3          According to data tables provided by EAI, including ones provided to the DTSC

4   in the EAI October 2019 Report, soil contaminated with PCE above regulatory

5   screening levels (some as more than 1000 times such levels) was found extensively

6   throughout Plaintiffs' Property.  Indeed, per the EAI data table included with the EAI

7   October 2019 Report, 113 of the 123 locations sampled on Plaintiffs' Property (92%)

8   has levels of, among other hazardous substances, PCE in the soil that are well above

9   the applicable 0.005 mg/kg regulatory screening level for PCE. These findings were

10  made despite adequate sampling.  Indeed, for example, on July 18, 2018, the DTSC

11  stated it "*has not approved any work that resulted in the creation of soil stockpiles on*

12  *the Alisu property*."  The DTSC further stated that the "*sampling density used to obtain*

13  *[the] data [submitted by EAI on February 28, 2018] was not obtained pursuant to any*

14  *DTSC approved Workplan*."  Simply put then, the sampling density EAI used to

15  sample the soil at Plaintiffs' Property did not comply with industry standards and was

16  not representative of the contamination that lurked in the soil at Plaintiffs' Property.

17  To this end, the DTSC, in the DTSC December 31 Comments, stated that the "*DTSC*

18  *will require a new data set for the soil and soil vapor in the area where the Widrows*

19  *were located*."

20         As reported in the EAI October 2019 Report, EAI also found, among other

21  things, PCE, TCE, chloroform and perchlorate in groundwater samples taken from

22  beneath the Plaintiffs' Property. All such chemicals were used and released on

23  Plaintiffs' Property. None of these chemicals were used or released at the Metal

24  Product Property. Further, in numerous written reports to the DTSC, Plaintiffs and

25  EAI admit that data from the ongoing cleanup of TCE at the Pechiney Cast Plate

26  property located at 3200 Fruitland Avenue, Vernon, California, two blocks south of

27  Plaintiffs Property, shows the groundwater flowing from the east-southeast to the

28

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S
MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

west-northwest; *to wit*, from Plaintiffs Property to the Metal Product Property. Indeed, in the DTSC December 31 Comments, DTSC stated that groundwater is flowing … "*to the northeast in the northeast portion of the [Plaintiffs] Site.*"

Further, as reported in both Plaintiffs' HHRA and the EAI October 2019 Report, EAI has consistently found extraordinarily high levels of, among other things, PCE, TCE, Freon 11 and chloroform in soil gas samples taken from beneath Plaintiffs' Property. Indeed, in the DTSC November 8 Letter, the DTSC stated "*Highly elevated concentrations of PCE and TCE exist in soil gas beneath the [Plaintiffs] Site. Other VOCs have elevated concentrations in some samples, but the soil gas data cannot be adequately evaluated at several sample locations/depths for the risk to indoor air for benzene, chloroform and carbon tetrachloride because of high detection limits due to the highly elevated concentrations of PCE and TCE. Even so, it is apparent there is a risk of vapor intrusion from VOCs, along with a risk to indoor commercial/industrial workers … Due to the high concentrations of PCE and TCE in the soil gas, the soil gas samples had to be diluted, which raised the detection limit for all other constituents.*" None of the referenced chemicals were used or released at the Metal Product Property. However, they all were used and released at Plaintiffs' Property. Indeed, in confirming "who is contaminating who", the DTSC stated, in the DTSC December 31 Comments, that "*Soil vapor data indicate a significant VOC plume exists beneath the [Plaintiffs] Site. The plume extends offsite to the north, northeast, … and northwest.* Of course, it is the Metal Product Property that is immediately north of Plaintiffs' Property.

**C. Metal Products Parties' Counterclaim**

Long before the aforementioned data was obtained, the Metal Product Parties filed a counterclaim against Plaintiffs on July 30, 2018 for: (1) contribution under CERCLA; (2) injunctive relief and costs under RCRA; (3) continuing nuisance; (4) continuing trespass; (5) negligence; and (6) declaratory relief. Similarly, and again

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

before the foregoing data was developed, the Metal Product Parties filed their operative Second Amended Counterclaim on December 21, 2018. The Second Amended Counterclaim remained factually consistent to the original counterclaims. As illustrated above, in the year since the filing of the Second Amended Counterclaim, substantial environmental testing and reporting have been completed. That new evidence informs and confirms that, among other things: (1) contaminants within soil particulates have been and continue to blow in the ambient air from the Plaintiffs' Property to the Metal Product Property; and (2) soil gas vapors emanating from Plaintiffs' Property have been and continue to migrate to and into the indoor air of the building at the Metal Product Property. Due to the new data and testing described herein. and additional evidence, data and testing not specifically referenced in this Motion, the Metal Product Parties' concerns over the migration of contaminants from the Plaintiffs' Property to the Metal Product Property are heightened and relatedly, new concerns have emerged over the health of the individuals who work at the Metal Product Property.

### D. Meet and Confer with Plaintiffs

Pursuant to the above, the Metal Product Parties are diligently seeking leave to amend to their counterclaim.  To this end, on February 7, 2020, and again on February 13, 2020, counsel for Plaintiffs and the Metal Product Parties met and conferred regarding the filing of this Motion. Plaintiffs counsel indicated that, while preserving all rights concerning the allegations in the proposed Third Amended Complaint, that they had no objection to the filing of the Motion.

### III.   ARGUMENT

"A party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15. Generally, courts "should liberally allow a party to amend its pleading." *Sonoma Cty. Ass'n of Retired Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013); Fed. R. Civ. P. 15. ("The court should freely

6

give leave when justice so requires."). As such, leave to amend pleadings is freely given unless the opposing party makes a showing of undue prejudice, or bad faith, or dilatory motive on the part of the moving party. *Foman v. Davis*, 371 U.S. 178, 181 (1962); *Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1391 (5th Cir. 1991) (noting the grounds for denying leave to amend are limited).

In the event the deadline for amending pleadings has passed on the court's Scheduling Order, the party seeking leave to amend must modify the scheduling order to permit the amendment. Fed. R. Civ. P. 16. "Federal Rule of Civil Procedure 16(b) 'provides that a district court's scheduling order may be modified upon a showing of 'good cause,' an inquiry which focuses on the reasonable diligence of the moving party.'" *Baskin v. San Diego County*, 2010 WL 4009663 at *1 (S.D. Cal. 2010) (citing *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 (9th Cir. 2007)). "Federal Rules of Evidence Rule 16(b)'s standard primarily considers the diligence of the party seeking the amendment." *Fru-Con Const. Corp. v. Sacramento Mun. Utility Dist.*, 2006 WL 3733815 at *5 (E.D. Cal. 2006).

Respectfully, the Court can and should modify the May 2019 Scheduling Order to permit the Metal Product Parties' filing of a Third Amended Counterclaim as: (1) the Motion is supported by good cause, and (2) Plaintiffs will not be prejudiced.

## A.  Metal Product Parties' Have Demonstrated Good Cause

Good cause supports modifying the May 2019 Scheduling Order.  As fully described above, substantial new evidence and data has been obtained by the Metal Product Parties over the past five months.  Substantial testing has occurred on both the Plaintiffs' Property and the Metal Product Property, which uncovered further support for the Metal Product Parties' claims that Plaintiffs were and are contaminating the Metal Product Property. To that end, recent testing and revelations, including statements by the DTSC, have uncovered health concerns for the individuals who work at the Metal Product Property stemming from the migration of

contaminants from Plaintiffs Property to the Metal Product Property.  Once the Metal Product Parties' learned such information, they diligently prepared this Motion and met and conferred with Plaintiffs over the proposed Third Amended Counterclaim. Accordingly, the Court should permit modification of the May 2019 Scheduling Order and allow the Metal Product Parties to file their Third Amended Counterclaim.

Courts routinely hold that the discovery of new facts serves as good cause for amending of a pleading after the deadline for leave to amend has passed.  In *Navarro v. Eskanos & Alder*, 2006 WL 3533039 *1 (N.D. Cal. Dec. 7, 2006), the plaintiff missed the deadline for filing an amended complaint by five months.  *Id*. at *2. Plaintiff argued that she could not have discovered the basis for her new allegations until she had deposed defendants' employees.  *Ibid*.  The court agreed with plaintiff. The court reasoned that "Plaintiff could not have obtained the information about the role of Eskanos & Alder's staff attorneys in collection practices until after conducting discovery and deposing the employees."  *Ibid*.  The court held that "plaintiff has shown good cause to amend her complaint" because she showed "diligence by seeking leave to amend her complaint upon learning of the basis for her new claims." *Ibid*.

Similarly, in *Ivy v. Mayet*, 2015 WL 8641144 *1 (N.D. Cal. Dec. 14, 2015), the Court granted plaintiff leave to amend a complaint after the plaintiffs missed the Court-imposed deadline of July 1, 2015 by over four months.  *Id*. at *1.  Despite the fact plaintiffs missed this deadline, the Court reasoned "Plaintiffs have established good cause for failing to amend the complaint before the Court's deadline."  The Court reasoned that there was "no evidence that Plaintiffs could have obtained the information concerning HPM Investments until after conducting discovery."  *Id*. at *2.  Based on this reasoning the Court granted plaintiffs' motion for leave to file a second amended complaint.  *Ibid*.  *See also Fru-Con Const. Corp., supra,* 2006 WL at *5 (granting motion for leave to amend and reasoning that *"[a]llowing parties to*

*amend based on information obtained through discovery is common and well established*") (emphasis added).

The reasoning of *Navarro*, *Ivy*, and *Fru-Con Const. Corp.* apply with equal force to the current circumstances. As explained in detail above, the Metal Product Parties learned of additional facts and evidence during discovery obtained from October 2019 through January 2020. After learning of such facts and evidence, the Metal Product Parties diligently filed this Motion. Indeed, the Metal Product Parties shared a copy of the proposed Third Amended Counterclaim with Plaintiffs' counsel during the parties' meet and confer discussions.

## B.   Plaintiffs Will Suffer No Prejudice If the Motion is Granted

No legitimate grounds exist to deny the Metal Product Parties' Motion. Trial is over nine months away. Discovery remains open. The new evidence and data obtained by the Metal Product Parties that gives rise to the Motion was generated by Plaintiffs and only recently produced by Plaintiffs to the Metal Product Parties. Further, the Metal Product Parties are only adding one new cause of action, and thus, although far more supported by irrefutable data than before, the fundamental basis of the Metal Product Parties' counterclaim has not changed.

California courts have found that a fast approaching trial date or the close of discovery is not enough to establish prejudice. *Ross v. Pioneer Life Ins. Co*., 545 F. Supp. 2d 1061, fn. 2 (C.D. Cal. 2008) (granting plaintiff's motion for leave to amend the complaint four months after the discovery cut-off date and a mere two months prior to trial); *See also Lazuran v. Kemp*, 142 F.R.D. 466, 468, 470 (W.D. Wash. 1991) (granting leave to amend the complaint despite the fact that discovery was closed and trial was "only two and a half months away"); *Fru-Con Const. Corp., supra,* 2006 WL at *5. In *Fru-Con Const. Corp.*, the non-moving party argued that it would be prejudiced by the addition of two additional parties because the discovery deadline would have to be extended and the trial would be made substantially more

1   complicated. *Fru-Con Const. Corp*. at *5.  The court disagreed reasoning that most

2   of the facts had "already been revealed in discovery.  Moreover, information about

3   how the three entities are related is information which Bilfinger and Fru-Con Holding

4   possess."  *Ibid*.  Finally, the court reasoned that the "fact the amended counterclaim

5   may cause more work does not constitute prejudice." *Ibid*.

6        As in *Fru-Con Const. Corp.*, Plaintiffs will suffer no prejudice if the Court

7   permits the Metal Products Parties to amend their counterclaim.  First, the new facts

8   and evidence were obtained, in large part, from Plaintiffs. Second, Plaintiffs still have

9   plenty of time to prepare for trial against the Metal Product Parties' new factual

10  allegations and singular new claim.  Indeed, discovery is still open and trial in this

11  action is not set to occur for another nine months.  In sum, Plaintiffs cannot claim any

12  undue prejudice by the filing of the Metal Product Parties' proposed Third Amended

13  Counterclaim.

14  **IV.    CONCLUSION**

15       For the foregoing reasons, the Metal Product Parties respectfully request that

16  the Court grant leave to file the proposed Third Amended Counterclaim.

17

18  DATED:  February 14, 2020          Respectfully submitted,

19                          **MICHELMAN & ROBINSON, LLP**

20

21             By: _____

22                          Ronald Camhi
                            Warren Koshofer

23                          ***Attorneys for Metal Products Engineering,***

24                          ***Luppe Ridgway Luppen, and Paula Busch***
                            ***Luppen***

25

26

27

28

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

## DECLARATION OF WARREN KOSHOFER

I, Warren Koshofer, declare as follows:

1.      I am an attorney licensed to practice law before all courts of the State of California and am a partner at Michelman & Robinson, LLP, counsel for Defendants and Counterclaimants Metal Products Engineering, Luppe Luppen, and Paula Luppen (the "Metal Product Parties") in this action. The following facts are within my personal knowledge and, if called as a witness herein, I could and would competently testify thereto.

2.      Attached hereto as "Exhibit A" is a true and correct copy of the Metal Product Parties' proposed Third Amended Counterclaim.

3.      Attached hereto as "Exhibit B" is a true and correct copy of the redline changes from the Metal Product Parties' currently operative Second Amended Counterclaim and proposed Third Amended Counterclaim.

4.      On February 7, 2020, and again on February 13, 2020, I met and conferred with counsel for Plaintiffs / Counter-Defendants Alisu Investments, Ltd. and Kargo Group GP, LLC ("Plaintiffs") regarding the proposed Third Amended Counterclaim and the filing of the Metal Product Parties' within Motion for Leave to file same.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.


Executed this 14th day of February 2020 in New York, New York.

_____
Warren Koshofer

**METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM**

## PROOF OF SERVICE

STATE OF CALIFORNIA   )
                         ) ss:
COUNTY OF ORANGE        )

I am employed in the County of Orange, State of California. I am over the age of 18, and not a party to the within action. My business address is 17901 Von Karman Avenue, 10th Floor, Irvine, CA 92614.

On February 14, 2020, I served the foregoing document(s) described as: **METAL PRODUCTS ENGINEERING, LUPPE RIDGWAY LUPPEN, AND PAULA LUPPEN'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COUNTERCLAIM AGAINST PLAINTIFFS,**

on the interested parties by placing a true copy thereof in a sealed envelope(s) addressed as follows:

### - SEE ATTACHED SERVICE LIST -

☐ (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at Irvine, California. I am readily familiar with the practice of Michelman & Robinson LLP for collection and processing of correspondence for mailing, said practice being that in the ordinary course of business, mail is deposited in the United States Postal Service the same day as it is scheduled for collection. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit;

☒ (BY ELECTRONIC FILING WITH THE U.S. DISTRICT COURT) I certify that on February 14, 2020, I electronically transmitted the attached document to the United States District Court and/or the US District Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants/recipients registered with the United States District Court according to Federal District Court Rules requirements.

☐ (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by ASAP Corporate Services to receive documents to be delivered on the same date. A proof of service signed by the authorized courier is maintained in this office and available for inspection upon reasonable demand.

☐ (BY ELECTRONIC MAIL) By personally transmitting to the above-named person(s), who has previously agreed to receive documents via electronic mail, to the e-mail address as shown above, on the date and time listed below, originating

from the Michelman & Robinson, LLP's electronic mail address, pursuant to the C.R.C. 2060 and Government Code § 11440.20. A true copy of the above-described document(s) was transmitted by electronic transmission through the Michelman & Robinson, LLP's mail server, which did not report any error in sending the transmission.

☐ (BY OVERNIGHT MAIL) I am readily familiar with the practice of Michelman & Robinson LLP for the collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express/United Postal Service/Overnite Express in Irvine, CA for overnight delivery;

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (FEDERAL) I declare under penalty of perjury that the above is true and correct.

Executed on February 14, 2020, at Irvine, California.

Christina Reyes
_____
Christina Reyes

## SERVICE LIST

*Alisu Investments, et al. v. Trimas Corporation, et al.*
*USDC, C.D. Cal. Case No.:  2:16-CV-00686-MWF (PJWx)*

| | |
|---|---|
| Martin Quiñones, Esq.<br>Matthew K Edling, Esq.<br>**SHER EDLING LLP**<br>100 Montgomery St., Ste. 1410<br>San Francisco, CA 94104<br>Tel: 628-231-2500<br>Email: marty@sheredling.com | *Attorneys for Plaintiffs and Cross-Defendants*<br>ALISU INVESTMENTS, LTD. and KARGO GROUP GP, LLC |
| John J Allen. Esq.<br>Tim C Hsu, Esq.<br>**ALLEN MATKINS LECK GAMBLE MALLORY AND NATSIS LLP**<br>865 South Figueroa Street, Suite 2800<br>Los Angeles, CA 90071-2543<br>Tel: 213-622-5555; 213-620-8816 (fax)<br>jallen@allenmatkins.com | *Attorneys for Defendants* A.O. SMITH and *Cross-Complainant* BRADFORD WHITE CORPORATION |
| Charles H Pomeroy, IV, Esq.<br>Michael J. Stiles, Es.<br>**STILESPOMEROY LLP**<br>301 East Colorado Bloulevard Suite 600<br>Pasadena, CA 91101<br>Tel: 626-243-5599;  626-389-0599 (fax)<br>cpomeroy@stilespomeroy.com | *Attorneys for Defendant*<br>DEUTSCH/SDL, LTD. |
| A David Youssefyeh<br>**ADY LAW GROUP PC**<br>1925 Century Park East Suite 1380<br>Los Angeles, CA 90067<br>Tel: 310-772-2872; 310-772-0020 (fax)<br>david@adylaw.com | *Attorneys for Defendant*<br>INFINITY HOLDINGS, LLC |
| Douglas A Henderson, Esq.<br>Matthew Liam Hofer, Esq.<br>**KING AND SPALDING LLP**<br>1180 Peachtree Street NE Suite 1600<br>Atlanta, GA 30309<br>Tel: 404-572-2769; 404-572-5100 (fax)<br>dhenderson@kslaw.com | *Attorneys for Defendant*<br>RHEEM MANUFACTURING COMPANY |

| | |
|---|---|
| Ernest John Hahn, Esq.<br>**MILHOUSE HAHN LLP**<br>2945 Townsgate Road Suite 200<br>Westlake Village, CA 91361-5803<br>Tel: 805-719-2795; 805-230-2281 (fax)<br>ehahn@millhousehahn.com | *Attorneys for Cross-Defendant*<br>SAFETY-KLEEN SYSTEMS, INC. |
| Henry J Drapalski, Esq.<br>Norton Rose Fulbright LLP<br>555 South Flower Street 41st Floor<br>Los Angeles, CA 90071<br>Tel: 213-892-9200; 213-892-9494 (fax)<br>joseph.drapalski@nortonrosefulbright.com | *Attorneys for Defendant*<br>TRIMAS CORPORATION |

**SERVICE LIST**